

☒ Priority
☒ Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3

FILED

MAR - 1 2004

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

FRED PIERCE, et al.,                )    Case No. SA CV 01-981-GLT(MLGx)
                                    )
          Plaintiffs,               )
                                    )
     vs.                            )    ORDER ON DEFENDANTS' MOTIONS
                                    )
COUNTY OF ORANGE, et al.,           )
                                    )
          Defendants.               )
────────────────────────────────────)

DOCKETED ON CM

MAR - 4 2004

BY _____ 039

Defendants' motions are GRANTED IN PART and DENIED IN PART.

I.   BACKGROUND

     Plaintiffs, pre-trial detainees at four Orange County jails,

brought class action claims under 42 U.S.C. § 1983 against Defendants

Orange County and Sheriff Michael Carona alleging violations of

Plaintiffs' civil rights, rights established under Stewart v. Gates, 450

F.Supp. 583 (C.D. Cal. 1978), constitutional rights, and the Americans

with Disabilities Act ("ADA").  Plaintiffs allege Defendants, in

violation of Stewart, impermissibly denied to Plaintiffs seats in

holding cells, outdoor exercise, day room and telephone access, fifteen

309

minute meal breaks, visitation, and also violated the ADA and the United
States and California constitutions.  Plaintiffs seek injunctive relief
and monetary damages.

In October 2003, the Court certified Plaintiffs as a Rule 23(b)(2)
equitable relief class and as a Rule 23(b)(3) damages class.  The Court
defined the class as "all pre-trial detainees held in Orange County
jails after October 21, 2001 who were denied various rights under
Stewart and the ADA."

Defendants now move for summary judgment or summary adjudication
on the following: (1) all of Plaintiffs' claims pursuant to  Monell v.
New York City Dept. of Social Services, 436 U.S. 658, 694 (1978); (2)
Plaintiffs' emotional and mental damages claims; (3) all claims based
upon a failure to exhaust administrative remedies; (4) Plaintiff
Ellerston's "insufficient meal time" claim; (5) Plaintiff Valenzuela's
"access to visitors" claim; (6) Plaintiffs Valenzuela and Conn's
"rooftop exercise" claim; (7) Plaintiffs Pierce and Valenzuela's "lack
of seats" claim; (8) Plaintiffs Conn, Ellerston, and Valenzuela's "day
room access" claim; (9) Plaintiffs' non-class claims against Defendant
Carona; (10) Plaintiffs' state law claims; and (11) Plaintiff Conn's ADA
and equal protection claims.  Defendants also move to decertify the
class.[1]

## II.   DISCUSSION

Summary judgment is proper if "there is no genuine issue as to any
material fact and the moving party is entitled to a judgment as a

[1]These 12 separate motions contain repetitive statements of
law and fact that could have easily been contained in a few
motions.  The parties are strongly urged to consolidate motions
and avoid repetition in future motions.

1  matter of law." Fed.R.Civ.Pro. 56(c).  A fact is material if it "might

2  affect the outcome of the suit under the governing law." Anderson v.

3  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is

4  genuine "if the evidence is such that a reasonable jury could return a

5  verdict for the nonmoving party." Id.  If the evidence of a genuine

6  issue of material fact is "merely colorable" or of insignificant

7  probative value, summary judgment is appropriate. Id. at 249-50.

8      The moving party in a summary judgment motion bears the initial

9  burden of showing the absence of a genuine issue of material fact.

10 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving

11 party makes this initial showing, the burden shifts to the nonmoving

12 party to "designate specific facts showing that there is a genuine issue

13 for trial." Id. at 324 (citation omitted).  In other words, the non-

14 moving party must produce evidence that could cause reasonable jurors to

15 disagree as to whether the facts claimed by the moving party are true.

16     In making a summary judgment determination, the Court must view

17 the evidence presented in the light most favorable to the non-moving

18 party, drawing "all justifiable inferences ... in his favor." Anderson

19 at 255.  If the non-moving party fails to present a genuine issue of

20 material fact, the Court must grant summary judgment. Celotex at 323-24.

21     The moving party is entitled to judgment as a matter of law when

22 the nonmoving party fails to make a showing sufficient to establish the

23 existence of an essential element to that party's claim. Id.  Where the

24 non-moving party fails to offer evidence establishing the existence of

25 an essential element, "there can be no genuine issue of material fact

26 since a complete failure of proof concerning an essential element of the

27 non-moving party's case necessarily renders all other facts immaterial."

28 Id.  In such a case, the moving party is entitled to a judgment as a

1  matter of law "because the nonmoving party has failed to make a

2  sufficient showing on an essential element of her case with respect to

3  which she has the burden of proof." Id.

4      A.   Monell and Supervisory Liability

5      It is well settled that there is no respondeat superior liability

6  under 42 U.S.C. § 1983.  Municipal liability under § 1983 can only be

7  imposed for injuries inflicted pursuant to a widespread and long-

8  standing official government policy or custom, Monell, supra, 436 U.S.

9  at 694, including a policy of being deliberately indifferent to the

10 rights of individuals, City of Canton v. Harris, 489 U.S. 378, 389

11 (1989).  The "policy" at issue need not be a rule or regulation

12 promulgated by a legislative body; a decision made by the governmental

13 agency's authorized decision-maker may constitute official policy.

14 Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality

15 opinion).  As for custom, "proof of random acts or isolated events are

16 insufficient to establish custom." Thompson v. City of Los Angeles, 885

17 F.2d 1439, 1444 (9th Cir. 1989).  A supervisory individual, such as

18 Sheriff Carona,[2/] may be liable under § 1983 only if a plaintiff can

19 prove either: (1) the supervisor's personal involvement in the

20 constitutional deprivation, or (2) a sufficient causal connection

21 between the supervisor's wrongful conduct and the constitutional

22 violation. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001) (citing

23 Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991)(en

24 _____

25      [2/] It is undisputed Defendant Carona is an authorized
     decision-maker of Orange County on the issue of jails.  In his
26   role as sheriff, Carona is responsible for the written rules of
     the Orange County Jail, as well as ensuring compliance with state
27   and federal law. Carona Depo. at 5:10-18, 9:11-10:9; Davis Depo.
     at 19:12-20:9.  Carona is an authorized policymaker for Monell
28   purposes.

1 | banc)).

2 |     Defendants move for summary adjudication of Plaintiffs' § 1983

3 | claims against Orange County and Sheriff Carona, contending Plaintiffs

4 | can point to no evidence of (1) a policy or custom causing the alleged

5 | constitutional violations or (2) personal involvement by Defendant

6 | Carona or a causal connection between Carona and the alleged

7 | constitutional violations.  Defendants also contend there is evidence to

8 | the contrary, and point to the declaration of Lt. Timothy Board.

9 | Plaintiffs oppose, arguing there is ample evidence of a widespread and

10 | long-standing policy or custom of denying pre-trial detainees the

11 | minimum standards set forth in Stewart and the ADA, and evidence of

12 | Carona's deliberate indifference to the alleged constitutional

13 | violations.

14 |     1.   Claims Against Defendant Orange County

15 |     To support their contention of systemic day room and rooftop

16 | access violations, Plaintiffs first offer a selection of daily inmate

17 | logs from December 2001 through March 2003, and the declaration of Judd

18 | Gartenberg, a legal assistant of Plaintiffs' counsel who reviewed many

19 | hundreds of these logs. See Plaintiffs' Evidence, Volume I at 52-95.

20 | The value of Mr. Gartenberg's declaration may be limited by the best

21 | evidence and hearsay rules.  However, the records accompanying Mr.

22 | Gartenberg's declaration, when viewed in the light most favorable to

23 | Plaintiffs, indicate many detainees in various levels of custody and in

24 | different areas within the Orange County jails may have been denied

25 | daily access to the day room and weekly access to rooftop exercise over

26 | a period of many years.

27 |     This indication is corroborated by the deposition testimony and

28 | declarations of the named Plaintiffs and other pre-trial detainee class-

1  members. See Plaintiffs' Statement of Genuine Issues - Monell ("PSGI")

2  2, 4, 6, 8, 10, 12, 14, 16.  These declarations and depositions raise

3  questions of long-standing and systemic denials of sufficient meal time,

4  access to visitors, access to religious services, and a failure to

5  equally and adequately accommodate disabled detainees. Id.

6      There is a triable issue whether there is a policy or custom of

7  Stewart and constitutional violations over a long period of time.

8  Defendant Orange County's motion for summary judgment on these issues is

9  DENIED.

10          2.   Claims Against Defendant Carona

11      To support their claim of deliberate indifference or personal

12  involvement by Defendant Carona, Plaintiffs point to Carona's deposition

13  testimony and the testimony of other jail command staff.  Plaintiffs

14  argue this testimony indicates that, although Carona has been aware of

15  Stewart for many years, he has taken no steps to assess compliance with

16  it or delegate to others the responsibility of compliance.  Plaintiffs

17  also argue the jail commanders testified they could recall little or no

18  familiarity with Stewart and its requirements.

19      Defendants contend Plaintiffs have taken bits of testimony out of

20  context, and the Court agrees.  The deposition of Sheriff Carona, when

21  read as a whole, indicates: (1) he is aware of Stewart's requirements

22  regarding the rights at issue in this case; (2) he has mandated

23  compliance with Stewart by all jail staff; and (3) he monitors

24  compliance with the orders in Stewart in a variety of different ways.

25  The portions cited by Plaintiffs do not create a triable issue on

26  Carona's personal involvement or deliberate indifference, or a causal

27  connection between Carona and the alleged constitutional violations.

28      Defendant Carona's motion for summary adjudication of Plaintiffs'

1  § 1983 claims against him is GRANTED.[3/]

2      B.   Emotional & Mental Damages

3      Defendants contend Plaintiffs' claim for emotional and mental

4  damages is barred by the Prison Litigation Reform Act ("PLRA").  This

5  claim is correct.

6      The PLRA states, in relevant part,

7           No Federal civil action may be brought by a prisoner

8           confined in a jail, prison, or other correctional

9           facility, for mental or emotional injury suffered while

10          in custody without a prior showing of physical injury.

11  42 U.S.C. § 1997e(e).  This physical injury must be more than *de*

12  *minimis*.  Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) (holding

13  back and leg pain caused by sitting on a cement floor, undefined

14  injuries from being assaulted by another prisoner, and a painful canker

15  sore were *de minimis* injuries insufficient to satisfy physical injury

16  requirement under 42 U.S.C. § 1997e(e)).

17      Plaintiffs correctly note the PLRA's physical injury requirement

18  does not apply to First Amendment claims.  See Canell v. Lightner, 143

19  F.3d 1210, 1213 (9th Cir. 1998) ("The deprivation of First Amendment

20  rights entitles a plaintiff to judicial relief wholly aside from any

21  physical injury he can show, or any mental or emotional injury he may

22  have incurred.  Therefore, § 1997e(e) does not apply to First Amendment

23  Claims regardless of the form of relief sought.").  However, while the

24  First Amendment may be implicated by a very broad reading of several of

25

26

27  ─────────────────────

28      [3/] Plaintiff's motion for Rule 56(f) relief as it applies to
their claims against Sheriff Carona individually is DENIED.

1   Plaintiffs' claims,[4/] the Fourth Amended Complaint ("FAC") only mentions

2   the First Amendment in two discrete instances, and only in passing.   The

3   FAC does not state a cause of action based on a First Amendment

4   violation.   At this late stage, Plaintiffs could not amend their

5   complaint to add First Amendment violations.[5/]

6       Plaintiffs next contend § 1997e(e) does not apply to their ADA

7   claims.   This issue has not been addressed by the Ninth Circuit.[6/]   The

8   ────────────────

9       [4/] The First Amendment is implicated in the following
    claimed <u>Stewart</u> violations: (1) the denial of religious services
10   or access to a chaplain, <u>see</u> <u>Johnson v. Moore</u>, 948 F.2d 517, 520
    (9th Cir. 1991) ("While it is clear that inmates retain First
11   Amendment protections, we have previously held that the
    Constitution does not necessarily require prisons 'to provide
12   each inmate with the spiritual counselor of his choice.'"); (2)
    the denial of day room access, where the day room contains the
13   telephones, <u>see</u> <u>Strandberg v. City of Helena</u>, 791 F.2d 744, 747
    (9th Cir. 1986) (recognizing arrestees have a First Amendment
14   right to telephone access, but noting this right is "subject to
    rational limitations in the face of legitimate security interests
15   of the penal institution"); and (3) the denial of visitation, <u>see</u>
16   <u>Feeley v. Sampson</u>, 570 F.2d 364, 372 (1st Cir. 1978) ("Visitation
    rights, besides having to meet the previously described due
17   process standard, reflect first amendment values, most clearly
    the right of association."); <u>Brenneman v. Madigan</u>, 343 F.Supp.
18   128, 141 (N.D. Cal. 1972) (class of pre-trial detainees has a
19   First Amendment right to visitation); <u>but</u> <u>see</u> <u>Morrow v. Harwell</u>,
20   768 F.2d 619, 625 (5th Cir. 1985) (indicating pre-trial detainees
    have no First Amendment right to visitation, but not reaching the
21   issue).

22       [5/] Plaintiffs also correctly contend § 1997e(e) does not
23   limit compensatory, nominal or punitive damages. See <u>Oliver</u>,
    <i>supra</i>, 289 F.3d at 630 ("To the extent that appellant has
24   actionable claims for compensatory, nominal or punitive damages —
    premised on violations of his Fourteenth Amendment rights, and
25   not on any alleged mental or emotional injuries — we conclude the
    claims are not barred by § 1997e(e)"). Because these damages
26   cannot flow from mental or emotional injuries, Plaintiffs'
27   contention is beyond the scope of Defendants' motion.

28       [6/] Plaintiffs contend the Ninth Circuit's decision in

(continued...)

1  Seventh and D.C. Circuits have both held § 1997e(e) limits ADA claims by

2  prisoners. <u>Cassidy v. Indiana Dept. of Corrections</u>, 199 F.3d 374 (7th

3  Cir. 2000); <u>Davis v. District of Columbia</u>, 158 F.3d 1342 (D.C. Cir.

4  1998).   These cases are persuasive.   Section 1997e(e) "unambiguously

5  states that 'No Federal civil action' shall be brought for mental or

6  emotional damages without a prior showing of physical injury." <u>Cassidy</u>,

7  199 F.3d at 376.   "In light of this plain language, [the Court] will

8  not carve out exceptions for which Congress did not provide." <u>Id.</u>

9       Plaintiff Pierce admits to suffering no physical injury.

10 Defendants' motion for summary adjudication of Pierce's claim for mental

11 and emotional damages is GRANTED.

12      Plaintiff Ellerston contends she suffered (1) stomach pain and

13 discomfort as a result of not having 15 minutes to eat; (2) back pain

14 and joint stiffness from not having day room access; (3) momentary

15 disorientation, tightness and pain in her chest, and lightheadedness

16 from the guards' alleged failure to timely provide Ellerston with her

17 asthma inhaler; and (4) bruising from overcrowded cells.   These injuries

18 are *de minimis*.   Defendants' motion for summary adjudication of

19 Ellerston's claim for emotional and mental damages is GRANTED.

20      Plaintiff Venezuela contends he was assaulted by several

21 correctional officers, who allegedly punched him two to four times in

22 the kidney, lower back, and sides.   This particular alleged injury is

23

24

[6]/ (...continued)

25 <u>Armstrong v. Davis</u>, 318 F.3d 965 (9th Cir. 2003), indicates the
   Ninth Circuit would likely hold § 1997e(e) does not apply to ADA
26 claims.   Plaintiffs' reliance on this case is misplaced because
   there is no indication in <u>Armstrong</u> whether the prisoners were
27 physically injured, and thus able to bypass § 1997e(e).   The
   court in <u>Armstrong</u> also dealt only with the narrow issue of
28 attorney's fees.

1   greater than de minimis, but is beyond the scope of the class

2   allegations in the Fourth Amended Complaint.   Defendants' motion for

3   summary adjudication of Valenzuela's claim for mental and emotional

4   damages is GRANTED.

5       Plaintiff Conn contends he suffered (1) recurrent bladder

6   infections; (2) inability to defecate for several hours; (3) pain from

7   having to use a "shower seat" instead of a wheelchair; (4) bed sores;

8   (5) cuts; and (6) injuries arising from an accident in a transport van

9   in which Conn was allegedly placed in an improper and unsecured

10  wheelchair.[7]  Aside from the injuries arising from the van accident,

11  Conn's claimed injuries are de minimis.   Conn can recover only for

12  mental and emotional damages arising directly from his van accident.

13      C.   Failure to Exhaust Administrative Remedies

14      Defendants move to dismiss Plaintiffs' complaint under Rules 12(b)

15  and 12(c), or in the alternative for summary judgment of all claims, for

16  failure to exhaust administrative remedies under the PLRA.   This

17  argument fails.

18      Exhaustion of administrative remedies must be raised as a motion

19  to dismiss, and is not properly brought as a motion for summary

20  judgment. Ritza v. International Longshoremen's and Warehousemen's

21  Union, 837 F.2d 365, 368 (9th Cir. 1988); see also Inlandboatmens Union

22  of Pacific v. Dutra Group, 279 F.3d 1075, 1083 (9th Cir. 2002) ("failure

23  to exhaust non-judicial remedies must be raised in a motion to dismiss,

24  and should be treated as' such even if raised as part of a motion for

25  summary judgment.").   Defendants' motion for summary judgment on failure

26  _____

27      [7] As a result of this accident, Conn contends he was
    confined to bed for two weeks.  He further contends these
28  injuries continue to cause him such extreme pain and muscle
    spasms that he is still in a doctor's care.

1 to exhaust administrative remedies is DENIED.

2     It is well-settled in the Ninth Circuit that Rule 12(b) dismissal

3 motions must be raised before the responsive pleading is filed. Aetna

4 Life Ins. Co. v. Alla Medical Services, Inc., 855 F.2d 1470, 1474 (9th

5 Cir. 1988) (citing Bechtel v. Liberty National Bank, 534 F.2d 1335,

6 1340-41 (9th Cir. 1976)).  Defendants' Rule 12(b) motion is untimely and

7 is DENIED.[8/]

8     As for Rule 12(c) dismissal, Defendants and defense counsel know

9 and understand the exhaustion requirements of the PLRA, which are

10 frequently an issue at the beginning stages of almost all prison-related

11 cases.  Defendants have litigated this case for several years, and have

12 long been aware of its operative facts.  Defendants have twice filed

13 motions to dismiss, neither of which raised this issue.  In light of

14 these facts and Thomas v. Baca, supra, the Court finds Defendants have

15 waived this affirmative defense, and Defendants' motion is DENIED.[9/]

16

17

---

18    [8/] Defendants' reliance on Wyatt v. Terhune, 315 F.3d 1108
19 (9th Cir. 2003), is misplaced.  First, the court in Wyatt did not
hold an unenumerated 12(b) motion, such as Defendants' current
20 motion, is not bound by the timing requirements of other 12(b)
motions.  Second, even assuming Wyatt changed the well-settled
21 rule in the Ninth Circuit, which it apparently did not, Wyatt was
published over a year ago.  Defendants offer no sufficient
22 explanation why they failed to raise this motion sooner.  The
Court's conclusion this motion is untimely is further supported
23 by Thomas v. Baca, et al., 2003 WL 504755 (C.D. Cal. 2003), in
which the court rejected the same timeliness arguments advanced
24 by the same defense counsel.

25

26    [9/] Failure to exhaust under the PLRA is an affirmative
defense which the defendant must affirmatively plead. Wyatt v.
27 Terhune, supra, 315 F.3d at 1119.  Defendants incorrectly contend
the failure to exhaust is jurisdictional. See id. at 1117 n.9
28 ("As we have held previously, however, the PLRA exhaustion
requirement does not affect our subject matter jurisdiction.").

D.   <u>Stewart Claims</u>

Defendant Orange County contends Plaintiffs' <u>Stewart</u> claims --
insufficient meal time, access to visitors, rooftop exercise, lack of
seats, and day room access -- must be summarily adjudicated in the
County's favor because, even assuming these claims are true: (1) these
claims do not amount to actionable constitutional violations, and (2)
Plaintiffs cannot base their § 1983 claims on <u>Stewart</u>.  Plaintiffs
contend they properly rely on the holding in <u>Stewart</u>, in which the court
determined the denial of these items was unconstitutional.[10/]

Plaintiff's reliance on <u>Thompson v. City of Los Angeles</u>, *supra*,
885 F.2d at 1448-49, is misplaced.  In <u>Thompson</u>, the Ninth Circuit
looked to an earlier court order regarding the Los Angeles County jail
to demonstrate a custom or practice, not on the plaintiff's ability to
state a claim.  <u>Id.</u> at 1449.  The court held plaintiff had properly
stated a claim under the Fourteenth Amendment, but did so by citing the
numerous cases holding the failure to provide pre-trial detainees with a
bed was unconstitutional.  <u>Id.</u> at 1448.

The County cites authority for their contention Plaintiffs may not

---

[10/] In the Fourth Amended Complaint, Plaintiffs contend these
<u>Stewart</u> claims violate the Fourth, Fifth, Sixth and Fourteenth
Amendments.  Defendants properly contend these claims can only
amount to violations of Plaintiffs' due process rights under the
Fourteenth Amendment.  Plaintiffs did not oppose this point.
Defendants' motion for summary adjudication of the Fourth, Fifth,
and Sixth Amendment claims is GRANTED.
In their oppositions to Defendants' motions, Plaintiffs
contend they raise both procedural and substantive Fourteenth
Amendment due process claims in the Fourth Amended Complaint
("FAC").  The FAC gives no indication of any procedural due
process violations, nor does it raise any claims for relief on
procedural due process violations.  Plaintiffs have provided no
evidence of such.  Plaintiffs may not amend the FAC to add such
claims.

1   rely on <u>Stewart</u>.  These authorities are not helpful because they are not

2   particularly on point.  The cases the County cites almost uniformly deal

3   with remedial consent decrees, which do not define the bounds of

4   constitutional violations and often contain restraints greater than

5   those required by law, or involve prisoners who have different (and

6   fewer) rights than pre-trial detainees.  In contrast to a consent

7   decree, the court in <u>Stewart</u> determined certain actions and practices

8   within the Orange County jails were unconstitutional, such as providing

9   pre-trial detainees less than 15 minutes to eat.[11/]

10      Absent from either parties' brief is any on-point authority from

11   either the Supreme Court or the Ninth Circuit.  It appears neither court

12   has ruled on this specific issue, i.e., whether a plaintiff can base a

13   § 1983 claim on the alleged violation by the defendant of an earlier

14   court order finding certain practices at the defendant's facility

15   unconstitutional.  Also absent is mention of any controlling cases

16   abrogating the constitutional violations identified in <u>Stewart</u>.[12/]

17   _____

18      [11/] The court in <u>Stewart</u> did not directly rule that all five
    of Plaintiffs' claimed violations were unconstitutional.  The
19   court held: (1) less than 15 minutes to eat was unconstitutional;
    (2) a lack of seats was unconstitutional; (3) two hours and
20   twenty minutes of rooftop exercise per week was "barely"
    constitutional; and (4) the arbitrary denial of visitation,
21   rooftop exercise, day room access, and chapel visits to inmates
    in administrative segregation was unconstitutional. 450 F.Supp.
22   at 588, 589-90.  On the last holding, the court set minimum
    frequencies that the Orange County jails were to provide, i.e.,
23   two hours of day room access per day. <u>Id.</u> at 590.  There is no
    direct indication in <u>Stewart</u> that providing to inmates less than
24   two hours of day room access would be unconstitutional, but that
25   holding is implied.
26
      [12/] Defendants contend the holding in <u>Stewart</u> was necessarily
27   superceded by <u>Bell v. Wolfish</u>, 441 U.S. 520, 539 (1979), in which
28   the Supreme Court held particular conditions or restrictions of

                                                        (continued...)

1    In the absence of controlling precedent to the contrary, the Court

2  holds Plaintiffs' reliance on <u>Stewart</u> is proper to the extent Plaintiffs

3  are basing their claims not only on the <u>Stewart</u> order, but on its

4  underlying determinations, i.e., that certain practices at the Orange

5  County jails are unconstitutional.[13/]  As the Fifth Circuit has noted,

6  "remedial court orders *per se*, apart from independent constitutional

7  grounds affirmed there, cannot serve as a substantive basis for a § 1983

8  claim for damages because such orders do not create 'rights, privileges,

9  or immunities secured by the Constitution and laws.'" <u>Green v. McKaskle</u>,

10  788 F.2d 1116, 1123 (5th Cir. 1986) (citing 42 U.S.C. § 1983).

11  Therefore, while Plaintiffs may not properly rely on the remedial

12  language of <u>Stewart</u> order alone, it appears Plaintiffs may rely on the

13  underlying constitutional violations.

14    Defendants' contention that the Eighth Amendment's "deliberate

15  indifference" standard governs claims by pre-trial detainees is

16  contradicted by Supreme Court precedent and the most recent Ninth

17  Circuit authority on the issue. <u>See</u> <u>Oregon Advocacy Center v. Mink</u>, 322

18  F.3d 1101, 1120 (9th Cir. 2003).  As explained by the court in <u>Mink</u>,

19  ————————————

20    [12/](...continued)
pretrial detainees are constitutional if they are "reasonably
21  related to a legitimate governmental objective," and conversely,
"if a restriction or condition is not reasonably related to a
22  legitimate goal — if it is arbitrary or purposeless — a court
permissibly may infer" it is unconstitutional.  The Court
23  disagrees.  In <u>Stewart</u>, the court found, in effect, the rights at
issue were being arbitrarily denied or were not reasonably
24  related to the jail's security interests.

25

26    [13/] Although outside of the Ninth Circuit, this conclusion is
supported by <u>Tasker v. Moore</u>, 738 F.Supp. 1005, 1013 (S.D. W.Va.
27  1990), in which the court held; "With respect to orders issued to
remedy constitutional rights violations, the party aggrieved by
28  refusal of an official to comply with such orders may bring an
action against the official pursuant to section 1983."

1  the Eighth Amendment's "deliberate indifference" standard creates only a

2  minimum level of protection for pre-trial detainees and prisoners alike,

3  id. at 1120-21 & n.11, but the Fourteenth Amendment's "purpose of

4  punishment" standard set forth in Bell v. Wolfish governs claims by pre-

5  trial detainees, Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir.

6  2002).

7      Defendant Orange County's motion for summary adjudication of

8  Plaintiffs' Stewart claims is DENIED.

9      E.   Non-Class Claims

10     Defendant Carona moves for summary adjudication on the following §

11  1983 claims brought against him in his individual capacity: (1)

12  Plaintiffs Valenzuela and Ellerston's claims for verbal abuse; (2)

13  Valenzuela and Ellerston's claims for unsanitary jail conditions; (3)

14  Plaintiffs Conn and Ellerston's claims for denial of telephone access;

15  (4) Ellerston's claim she was denied hygienic necessities; (5)

16  Ellerston's claims for invasion of privacy; and (6) Conn's claim for

17  inadequate medical care.

18     These claims are brought against Defendant Carona under § 1983,

19  however, Plaintiffs have failed to offer evidence indicating a triable

20  issue on: (1) Carona's personal involvement in or deliberate

21  indifference to these alleged violations, or (2) any causal connection

22  between Carona and these alleged violations. See Jeffers, supra, 267

23  F.3d at 915.  Defendant Carona's motion for summary adjudication of

24  these claims is GRANTED.

25     F.   State Law Claims

26     Defendant Carona moves for summary adjudication of Plaintiffs'

27  state law claims, contending he is immune under state law.  This claim

28  is correct.

California Government Code § 845.2 states,

> neither a public entity nor a public employee is liable
> for failure to provide a prison, jail or penal or
> correctional facility or, if such facility is provided,
> for failure to provide sufficient equipment, personnel
> or facilities therein.

Plaintiffs' rest their claims, both state and federal, on Defendants' failure to provide adequate, i.e., constitutional, jail facilities.

Plaintiffs contend Carona is not immune under § 845.2 because of Government Code § 844.6(d), which provides, "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission." By its plain language, however, this subsection applies only to § 844.6 itself,[14/] not to other immunity provisions.

Plaintiff's point to no case law supporting their position, and the Court was unable to find a case citing to both § 845.2 and § 844.6(d), or finding the latter was an "exception" to the former. The case law supports immunity. See <u>Taylor v. Buff</u>, 172 Cal.App.3d 384, 387-88 (1985) (holding trial court correctly determined sheriff was immune under § 845.2 from claim by inmates for allegedly insufficient jail facilities, staff, and equipment).

At the hearing, Plaintiffs argued Defendant Carona could not be immune under § 845.2 because he has a mandatory duty to follow the law and provide adequate jail facilities. This argument fails for three reasons. First, the Government Code section Plaintiffs cite to support their argument, § 815.6, applies only to public entities, not individual

---

[14/] Section 844.6 immunizes a public entity from liability for physical injuries to prisoners.

1  defendants such as Carona.  Second, nowhere in the language of § 845.2

2  is there an exception for mandatory duties, and Carona is immune under

3  the plain language of § 845.2. Third, although Carona has a duty to

4  follow the law and provide adequate jail facilities, denying immunity on

5  this ground would make § 845.2 meaningless.

6      Defendant Carona's motion for summary adjudication of Plaintiffs'

7  state law claims is GRANTED.

8      G.   <u>Motion to Decertify the Class</u>

9      In its October 2003 order, the Court certified an equitable relief

10 class under Rule 23(b)(2) and a damages class under Rule 23(b)(3).

11 Defendants move to decertify the class, contending the class is not

12 "presently ascertainable" and is otherwise unmanageable.  Defendants are

13 correct as to the damages class, but are incorrect as to the equitable

14 relief class.

15      1.   <u>Equitable Relief Class – Rule 23(b)(2)</u>

16 Defendants contend decertification is required because the claims

17 of individual class members must be tried separately.  As to the

18 equitable relief class, this claim fails.

19      Plaintiffs' action rests on proving a systemic violation of

20 constitutional rights.  As discussed above, Plaintiffs plan to prove

21 liability through (1) Defendants' records and (2) the testimony of

22 identified class members.  At trial, Defendants will have the

23 opportunity to test the validity and sufficiency of both of these

24 categories.  In establishing a systemic violation and seeking only

25 equitable relief, there is no need to test the individual claims of any

26 class members other than those providing evidence.  If Plaintiffs are

27 unable to prove a systemic violation by the preponderance of the

28 evidence, their claims for relief fail.

1    Regarding the ability to sufficiently ascertain the class,

2  Defendants confuse the definition of the class, which is set forth in

3  the Court's earlier orders, and the ability to identify members of that

4  class.  "[T]he class does not have to be so ascertainable that every

5  potential member can be identified at the commencement of the action."

6  7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal</u>

7  <u>Practice and Procedure</u> § 1760 at 117 (2d ed. 1986).  As long as "the

8  general outlines of the membership of the class are determinable at the

9  outset of the litigation, a class will be deemed to exist." <u>Id.</u> at 118.

10  "Thus, a class will be found to exist if the description of the class

11  is definite enough so that it is administratively feasible for the court

12  to ascertain whether an individual is a member." <u>O'Connor v. Boeing</u>

13  <u>North American, Inc.</u>, 180 F.R.D. 359, 367 (C.D. Cal. 1997) (citing <u>Aiken</u>

14  <u>v. Obledo</u>, 442 F.Supp. 628, 658 (E.D. Cal. 1977)).

15    The "general outlines of membership" is determinable here, in that

16  the class is defined by a membership in a certain group of individuals

17  (pre-trial detainees), during a specific time period (October 21, 2001

18  to the present), at a concentrated location (the Orange County jails),

19  and having common claims (the denial of certain specific rights).

20    Class certification under Rule 23(b)(2) is proper. <u>See</u> 8 Alba

21  Conte and Herbert B. Newberg, <u>Newberg on Class Actions</u> (4th Ed.) § 25:20

22  ("Rule 23(b)(2) was drafted specifically to facilitate relief in civil

23  rights suits... A precise class definition is less important in Rule

24  23(b)(2) actions than in those brought under Rule 23(b)(1) or (3).").

25  Defendants' motion to decertify the Rule 23(b)(2) equitable relief class

26  is DENIED.

27        2.   <u>Damages Class - Rule 23(b)(3)</u>

28    As noted above, the Court earlier certified a damages class,

1    finding that questions of law or fact common to the members of the
2    class predominate over individual questions.  At the time, this
3    conclusion seemed proper.  With the benefit of discovery having gone
4    forward, and after having considered the parties' new arguments and
5    showings on the matter, it now appears a Rule 23(b)(3) class is not
6    proper.

7        Plaintiffs contend the damages class is proper because the Court
8    could use "aggregated damages" and statistical sampling to determine the
9    proper amount of damages.  In support of this claim, Plaintiffs cite
10   Hilao v. Estate of Marcos, 103 F.3d 767 (9th Cir. 1996).  The court in
11   Hilao ruled only on the use of statistical sampling for determining
12   liability. 103 F.3d at 784.  The defendant waived any claim to challenge
13   the validity of aggregating damages or statistical sampling to determine
14   the quantum of damages. Id. at n.11.  However, in that case a respected
15   trial judge did use statistical sampling to determine damages in an
16   important case.

17       The concurring opinion in Hilao indicates that, although the court
18   did not reach the issue of using this aggregate method to compute
19   damages, it likely creates serious due process concerns for a defendant
20   by foreclosing the ability to test the causation and damages alleged by
21   each class member. Id. at 787-88 (Rymer, J., concurring in part and
22   dissenting in part).  "Even in the context of a class action,
23   individual causation and individual damages must still be proved
24   individually." Id. at 788.  As in Hilao, allowing Plaintiffs to use
25   statistical sampling and the like to prove a systemic violation appears
26   appropriate, but allowing such a method for determining damages in a
27   Rule 23(b)(3) damages class denies Defendants the opportunity to
28   challenge "the question [of] which people, and how much." Id.

1    Plaintiffs primarily seek equitable relief, and damages are
2 ancillary to that equitable relief.  Rule 23(b)(2) is generally
3 accepted as the most appropriate vehicle for such actions. 8 <u>Newberg on</u>
4 <u>Class Actions</u> § 25:20.  Rule 23(b)(3) is generally inappropriate in
5 civil rights cases. <u>Id.</u> § 25:21 ("Civil rights class actions for
6 damages [under Rule 23(b)(3)] have been relatively rare in the criminal
7 justice field, as courts have been reluctant to award monetary damages
8 on a class basis in cases involving such fluid and indefinite class
9 membership.").

10   The Court finds use of a damages class under Rule 23(b)(3) is not
11 appropriate under the facts of this case.  Class membership here would
12 be highly fluid and indefinite.  Issues of damages proof would be highly
13 individualized, and poorly addressed through a sampling.  There are too
14 many damages variables.  The real issue is an injunction and individual
15 damages would be *de minimis*, in contrast to <u>Hilao</u> where a damages class
16 was a practical necessity because huge individual damages were the
17 entire issue and an injunction would have been of no use.

18   Defendant's motion to decertify the Rule 23(b)(3) damages class is
19 GRANTED.

20              III.   <u>DISPOSITION</u>

21   Defendant Orange County's motions for summary adjudication of
22 Plaintiffs' § 1983 claims are DENIED.  Defendant Carona's motion for
23 summary adjudication of Plaintiffs' § 1983 claims is GRANTED.
24 Defendants' motion for summary adjudication of Plaintiffs' mental and
25 emotional claims is GRANTED on all claims, except those arising from
26 Plaintiff Conn's transport van accident.  Defendants' motion to dismiss
27 or summarily adjudicate Plaintiffs' claims based upon a failure to
28 exhaust is DENIED.  Defendant Carona's motion for summary adjudication

1 | of Plaintiffs' non-class claims is GRANTED.   Defendant Carona's motion
2 | for summary adjudication of Plaintiffs' state law claims is GRANTED.
3 | Defendants' motion for decertification of the class is GRANTED as to the
4 | Rule 23(b)(3) damages class, but DENIED as to the Rule 23(b)(2)
5 | equitable relief class.
6 |
7 | DATED: February 27, 2004
8 |
9 |
10 | GARY L. TAYLOR
   | UNITED STATES DISTRICT JUDGE
11 |