Dan Stormer, Esq. [S.B. #101967]
Virginia Keeny, Esq. [S.B. #139568]
HADSELL STORMER KEENY
    RICHARDSON & RENICK LLP
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103-3645
Telephone: (626) 585-9600
Facsimile: (626) 577-7079

Barry S. Litt, Esq. [S.B. # 65717]
LITT, ESTUAR, HARRISON,
MILLER & KITSON, LLP
1055 Wilshire Blvd., Suite 1880
Los Angeles, CA 90017
Telephone: (213) 386-3114
Facsimile: (213) 380-4585

Richard P. Herman, Esq. [S.B. #53743]
Law Office of Richard P. Herman
5001 Birch Street
Newport Beach, California 92660
Telephone: (714) 547-8512
Facsimile: (714) 547-6975

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

FRED PIERCE, TIMOTHY LEE CONN, MAX SANDERS, FERMIN VALENZUELA, LAURIE D. ELLERTSON, Individually, and as Class Representatives, and all those similarly situated,

Plaintiffs,

vs.

COUNTY OF ORANGE, a Governmental Entity; MICHAEL S. CARONA, Individually, and DOES 1 through 200, Inclusive,

Defendants.

Case No: SACV 01-981 ABC (MLGx)

[Assigned to the Honorable Audrey Collins – Roybal Courtroom 680]

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES PURSUANT TO 42 U.S.C. SECTION 1988 AND C.C.P. SECTION 1021.5; DECLARATIONS AND EXHIBITS IN SUPPORT THEREOF**

Date: October 6, 2008
Time: 10:00 a.m.
Crtm: 680

Discovery Cut-off: August 5, 2004
Pre-Trial Conf.: November 5, 2004
Trial Date: November 30, 2004

PLAINTIFFS' MTN FOR ATTORNEYS FEES                    1

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.    PLAINTIFFS ARE AS PREVAILING PARTIES
             UNDER § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       B.    PLAINTIFFS ARE ALSO PREVAILING PARTIES
             UNDER § 1021.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       C.    THE AMOUNT OF HOURS WORKED ARE
             REASONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       D.    THE HOURLY RATES ARE REASONABLE . . . . . . . . . . . . . . . 13

       E.    THE LODESTAR CALCULATION PROPERLY
             ELIMINATES WORK PERFORMED ON NON-
             CONSTITUTIONAL CLAIMS AND DISCOUNTS
             TOTAL FEES CLAIMED TO REFLECT DEGREE
             OF SUCCESS ON THE MERITS . . . . . . . . . . . . . . . . . . . . . . . . . 16

       F.    PLAINTIFFS' LITIGATION EXPENSES ARE
             RECOVERABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alyeska Pipeline Service Co. v. Wilderness Society*
    421 U.S. 240 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Barjon v. Dalton*
    132 F.3d 496 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Blum v. Stenson*
    465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Calderon v. Witvoet*
    112 F.3d 275 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of Riverside v. Rivera*
    477 U.S. 561 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Connor v. Winter*
    519 F.Supp. 1337 (S.D. Miss. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Copeland v. Marshall*
    641 F.2d 880 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Crawford Fitting Co. v. J. T. Gibbons, Inc.*
    482 U.S. 437 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dang v. Cross*
    422 F.3d 800 (9th Cir. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Davis v. City and County of San Francisco*
    976 F.2d 1536 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Davis v. Mason County*
    927 F.2d 1473 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fernando v. Hotel Nikko Saipan*
    1992 U.S.Dist. LEXIS 10228 (D.N. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gates v. Deukmejian*
    987 F.2d 1392 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Harris v. Marhoefer*
    24 F.3d 16 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hensley v. Eckerhart*
    461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

*Herold v. Hajoca Corp.*
    864 F.2d 317 (4th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hudson v. Dennehy*
    2008 U.S.Dist. LEXIS 29754 (D. Mass., April 11, 2008) . . . . . . . . . . . . . . . 14

*InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*
    369 F.3d 16 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Keith v. Volpe*
    643 F.Supp. 37 (C.D. Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Missouri v. Jenkins*
    491 U.S. 274, 109 S.Ct. 2463, [105 L.Ed.2d 229] (1989)  . . . . . . . . . . . . . . 11, 20

*Moreno v. City of Sacramento*
    No. 06-15-21, 2008 U.S.App. LEXIS 15951 (9th Cir. July 28, 2008) . . . . . . . 8, 13

*In  re Mulberry Phosphates, Inc.*
    151 B.R. 948 (Bankr. M.D. Fla. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*
    478 U.S. 546 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Perkins v. Mobile Housing Board*
    847 F.2d 735 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pierce v. County of Orange*
    526 F.3d 1190 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10

*Rode v. Dellarciprete*
    892 F.2d 1177 (3rd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Shaw v. City of Sacramento*
    250 F.3d 1289 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stanford Daily v. Zurcher*
    64 F.R.D. 680 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stewart v. Gates*
    450 F.Supp. 583 (C.D. Cal. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Thornberry v. Delta Airlines, Inc.*
    676 F.2d 1240 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United Steelworkers of America v. Phelps Dodge Corp.*
    896 F.2d 403 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wehr v. Burroughs Corp.*
    619 F.2d 276 (3rd Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**STATE CASES**

*Folsom v. Butte County Association of Governments*
    32 Cal.3d 668 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Graham v. Daimler Chrysler Corp.*
    34 Cal.4th 553 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Greene v. Dillingham Construction N.A.*
    101 Cal.App.4th 418 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Katzberg v. Regents of University of Cal.*
    29 Cal.4th 300 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Northwest Energetic Services LLC v. California Franchise Board*
    159 Cal.App.4th 841 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Olson v. Automobile Club of Southern California*
    42 Cal.4th 1142 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Press v. Lucky Stores, Inc.*
    34 Cal.3d 311 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tipton-Whittingham v. City of Los Angeles*
    34 Cal.4th 604 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vo v. Las Virgenes Municipal Water District*
    79 Cal.App.4th 440 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Woodland Hills Resident[s] Association, Inc. v. City Council*
    23 Cal.3d 917 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**FEDERAL STATUTES**

42 U.S.C. §1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1920 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 54(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

S.Rep. No. 94-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATE STATUTES**

C.C.P. Section 1021.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 6, 2008, 2008, at 10:00 a.m. or as soon thereafter as the matter may be heard in Department 680, in the courtroom of the Honorable Audrey Collins of the above-entitled court, located at 255 E. Temple Street, Los Angeles, California, Plaintiffs will move for an order awarding attorneys' fees and costs against Defendant County of Orange.  The motion will be based on the Federal Rules of Civil Procedure, 42 U.S.C. Section 1988 and California Code of Civil Procedure 1021.5, the foregoing notice, points and authorities, and declarations and exhibits filed concurrently herewith, and the pleadings, records and files in this action. This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 3, 2008.  (Declaration of Virginia Keeny ("Keeny Decl."), ¶51.)

Respectfully Submitted,

DATED: September 8, 2008

HADSELL STORMER KEENY
 RICHARDSON & RENICK, LLP

By_____/s/-Virginia Keeny_____
        Virginia Keeny
Attorneys for Plaintiffs

PLAINTIFFS' MTN FOR ATTORNEYS FEES                    1

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By this motion plaintiffs in this class action seek to recover their attorneys' fees and litigation expenses pursuant to 42 U.S.C. Section 1988 and C.C.P. Section 1021.5 with respect to their successful exposure of unconstitutional conditions in the Orange County jails for detainees in administrative segregation and protective custody.   This lengthy and hard fought litigation was initiated in 1991 to challenge several unconstitutional conditions in the massive jail system operated by Orange County.  After protracted discovery battles, voluminous discovery including the production of nearly 40,000 pages of documents and more than 65 depositions, six motions to dismiss, twelve separate motions for summary judgment, a bench trial and a successful published appellate decision, plaintiffs established that defendants were continuing to violate the constitutional requirements for detainees in restrictive custodial settings with respect to outdoor exercise and religious observance.  The Ninth Circuit found that plaintiffs had established ongoing violations by the jail with respect to these two fundamental rights and directed the district court to enter an injunction against the County, prohibiting such treatment in the future.  On August 26, 2008, this court entered a permanent injunction against the County, directing that the County provide expanded access to outdoor exercise to such detainees and guaranteeing access to religious services and counselors. Plaintiffs now seek attorneys' fees and litigation expenses pursuant to Section 1988 and C.C.P. Section 1021.5 for the legal work performed to obtain this relief on behalf of this sub-class of detainees.[1] The total amount sought at this time is $1,283,663.74 in attorneys' fees and $70,583.60 in litigation expenses.  (Keeny Decl., ¶ 48 and 50.)

## II.   STATEMENT OF FACTS

This case was filed originally on October 18, 2001.  (Keeny Decl., attached

---

[1] Plaintiffs are not seeking as part of the instant motion any fees for work done on behalf of plaintiff Tim Conn or the class of mobility and dexterity impaired detainees under the ADA, as those claims have not been finally resolved and a fee application would be premature at this point.

PLAINTIFFS' MTN FOR ATTORNEYS FEES                    1

hereto, ¶26.)  In response to various motions to dismiss, Plaintiffs were required to file several amended complaints, culminating in the final operative pleading, the Fifth Amended Complaint. (Keeny Decl., ¶26.)   Ultimately, Defendants filed six motions to dismiss, most of which were denied in large part. (Keeny Decl., ¶26.)

This case was extremely hard fought.  Defendants took an extremely aggressive litigation posture throughout this case to which plaintiffs were required to spend countless hours responding.  For example, defendants brought a failed motion to disqualify plaintiffs' counsel, to which plaintiffs had to respond at the outset of the case. They also brought numerous motions to compel, many of which could have been resolved through the meet and confer process.  For example, in February 2003, defendants brought four separate motions to compel further discovery responses.  In May 2003, they brought extensive motions for sanctions, based primarily on the failure to provide a verification to a set of discovery responses.  (Keeny Decl.,  ¶ 28.)

Plaintiffs ultimately brought a motion for class certification for damages and injunctive relief, which was granted on October 15, 2003. That motion required extensive briefing and evidentiary support, including declarations from many pre-trial detainees.  Although the court subsequently *sua sponte* reversed the decision to grant a class for purposes of damages, the court maintained class certification for all injunctive relief claims.  (*Id*., at  ¶ 29.)

Because plaintiffs needed to communicate with class members and had to obtain information for trial regarding constitutional and ADA violations within the five Orange County jails, plaintiffs had to devise a expedient process for gaining access to class members. It was impossible to call into the jail and extremely expensive to send an attorney from Los Angeles to Orange County to wait in the attorney visiting hours for an individual detainee to be called and brought to the visiting area for an interview. Ultimately, plaintiffs' counsel obtained leave of court to allow law clerks and legal assistants to visit the jail.  Because the district court had indicated that it might be receptive to a survey of jail conditions, plaintiffs' counsel went further to have an outside

expert from UCLA devise a survey instrument, which was then used by a team of trained legal assailants and law clerks to interview over 400 pretrial detainees over a period of several months.  That survey data was then analyzed and provided to plaintiffs' jail conditions experts and formed a basis for their opinion that the jails were failing to comply with federal law.  (*Id*., at  ¶30.)

        The parties engaged in extensive discovery in this case.  Plaintiffs ultimately served 18 separate document requests on defendants and at least seven separate sets of interrogatories, which required endless meet and confers to force compliance by defendants.  Defendants served 27 separate sets of special interrogatories on plaintiffs; 14 separate document requests; and numerous requests for admission.  Together the parties took over **65 depositions** of witnesses, most of which were noticed and taken by plaintiffs.  Several of the plaintiffs had to be deposed in prisons throughout the state of California.   Defendants produced over 38,000 pages of documents, multiple cassettes of recorded conversations with inmates, as well as hours of video tapes of holding cells and other parts of the jail. (*Id*., at  ¶ 31.)

        Expert disclosures and discovery were extensive as well.  Plaintiffs ultimately had three experts, an ADA expert, Peter Robertson, a correctional expert, Patrick McManimon, and a survey expert, Nadereh Pourat from UCLA.  Plaintiffs' experts conducted extensive inspections of the jails; prepared lengthy reports, and traveled to the Los Angeles area for deposition and for trial.   In addition, plaintiffs had to engage in written discovery and take the depositions of defendants' experts, Peter Morrison and Gary Deland.  (*Id*., at  ¶32.)

        In January 2004, defendants brought twelve separate motions for summary judgment, which Hadsell & Stormer and the law office of Litt, Estuar et al. took the laboring oar in opposing.  To defeat these motions, plaintiffs had to amass and analyze vast amounts of jail records (dayroom, outdoor exercise and other logs), video tapes of holding cells traffic, voluminous prison policy manuals, as well as declarations and other evidence.  Plaintiffs also had to respond to complex legal arguments on such issues as

PLAINTIFFS' MTN FOR ATTORNEYS FEES                3

*Monell* liability; exhaustion under the Prison Litigation Reform Act; the ADA; constitutional law and other issues.  Defendants also sought to have the injunctive relief class decertified at the same time.  Nearly all of the motions for summary judgment were denied.  The motion to decertify the class was denied as well, after extensive briefing and hearings.  (*Id*., at ¶33.)

After the motions were denied, the district court sua sponte consolidated this action with *Stewart v. Gates*, 450 F.Supp. 583 (C.D.Cal. 1978), a long standing injunction against the Orange County jails.  The court ordered briefing by both parties on the current status of the constitutional principles underlying the *Stewart* injunctive relief order. Ultimately, the parties submitted lengthy briefs on the current legal validity of those  orders. (*Id*., at ¶34.)

Once the case was set for trial, plaintiffs' counsel began the arduous task of preparing for the presentation of evidence.  This task was complicated by the fact that plaintiffs represented a class of thousands of detainees, none of whom they could contact directly (as all were currently incarcerated in the jail); one named plaintiff who was in prison in Northern California (and required maximum security precautions to transport back to Orange County); one named plaintiff in Chino (who as a quadriplegic required special transport to be able to attend trial in Orange County); and one named plaintiff who had been released from jail and could not be located.  Writs of Habeas Corpus had to be obtained from the district court to obtain the presence of plaintiffs and other witnesses.  Plaintiffs' counsel were required to seek intervention on several occasions from Magistrate Goldman to obtain access to detainees in the jail and to prevent defendants from listening in on communications or retaliating against detainees who were interviewed.  The entire process was a logistical nightmare.  Plaintiffs were ultimately forced to depose scores of detainees prior to trial. (*Id.*, at ¶35.)

In September 2004, defendants brought a renewed motion for summary judgment/adjudication, which was again denied, after extensive briefing by plaintiffs' counsel.  As part of the pre-trial preparations, the parties both brought numerous motions

*in limine*, which required briefing on novel issues of law. Because the court also required that plaintiffs submit direct testimony by written statement, plaintiffs' counsel had to make numerous visits to the jail to prepare and obtain signatures on sworn direct testimony from class members. The court also permitted extensive designation of deposition testimony by both sides, which required review of scores of depositions for relevant testimony and designation. (*Id.*, at ¶36.)

At the end of 2004, the case was tried before the Honorable Gary Taylor. (Keeny Decl., ¶37.) The claims tried to the court included claims brought on behalf of all detainees with mobility and dexterity impairments under the ADA; claims on behalf of class representative Tim Conn, a quadriplegic detainee, who had suffered multiple injuries as a result of the failure to accommodate his disability for which he sought damages under the ADA; and claims on behalf of non-disabled detainees under state and federal constitutional theories. The latter claims centered on jail standards first announced in *Stewart v. Gates,* and involved an analysis by the court as to whether the jail was meeting minimal constitutional standards and whether there existed a continuing need for an injunction against the jail. (See Keeny Decl. ¶37 and Plaintiffs' Closing Trial Brief, at 15.)

At trial and throughout discovery in this case, the parties focused nearly exclusively on five of the fourteen injunctions set forth in *Stewart.* The parties to this action actively litigated only five of them: 1) Seating/Holding Cells; 2) Mealtime; 3) Access to Religious Services; 4) Access to Day Room and 5) Outdoor Exercise. (Fifth Amended Complaint, p. 8.) There was virtually no evidence presented by either side with respect to the other nine subparts of the original injunction. (Keeny Decl., ¶ 38.) Indeed, during trial the county's attorney requested that the court maintain the injunction on overcrowding, based merely on defense counsel's statement that it was needed without any evidence of the actual jail population. (Keeny Decl., ¶38.)

While the trial court opined that it would consider evidence on the other issues, none was presented by either party. For example, access to law books, blankets,

telephone access, internal communications with jailhouse lawyers and sleep rules were simply never raised by *anyone* at the trial of this matter. No discovery was conducted on these issues and only minimal briefing was ever submitted, generally laying out the state of the law with respect to these issues. (Keeny Decl., ¶ 39.) Plaintiffs cannot now be held to have *"lost"* these issues, since they never contended they were at issue. (The Ninth Circuit's opinion in this matter noted as much, indicating that nine of the *Stewart* orders were not even contested by plaintiffs. *Pierce v. County of Orange*, 526 F.3d 1190, 1206 (9th Cir. 2008).)

After a bench trial lasting six days, on April 27, 2005, the court ruled in Defendants' favor on all claims, finding that Plaintiffs had not established any ongoing violations under either state or federal constitutional principles, that there was no ongoing need for any aspect of the *Stewart v. Gates* injunction; that the class of disabled detainees were not entitled to relief under the ADA and that plaintiff Conn was precluded by the PLRA's requirement of a "physical injury" from pursuing damages for injuries he had suffered during his confinement due to the inaccessibility and lack of accommodations for disabled detainees. (See Findings of Fact and Conclusions of Law, filed April 27, 2005 and Order Vacating Earlier Order and Dismissing Case, same date.) As part of that decision, the court vacated the decision in *Stewart v. Gates.*

Plaintiffs appealed the judgment, including the denial of injunctive relief to pre-trial detainees for violations of federal and state constitutional rights. *Pierce v. County of Orange,* 526 F.3d 1190, 1195 (9th Cir. 2008). On May 15, 2008, the Ninth Circuit issued its amended opinion in the case, denying defendant's petition for *en banc* review at the same time. *Id.* The court ruled in plaintiffs' favor on their ADA claims, finding that the district court had erred in finding that the County was not in violation of the ADA. With respect to Plaintiffs' constitutional claims, the Court granted Plaintiffs injunctive relief under Section 1983 as to the provision of religious services and outdoor exercise to the class of detainees in administrative segregation and protective custody. As stated above, it should be noted that the parties had focused nearly all of their discovery, trial time and

PLAINTIFFS' MTN FOR ATTORNEYS FEES                6

briefing on only five of the fourteen *Stewart* orders: meal time, dayroom access, outdoor exercise, crowding in holding cells, and access to religious services. Thus, the Court found in plaintiffs' favor on two of the five litigated issues raised by the *Stewart* order. The Court found a "consistent denial of access to the chapel . . . and to religious advisors to those in administrative segregation" and that those in administrative segregation and protective custody were receiving no more than 90 minutes of outdoor exercise a week. *Id.*, at 1210. The Court held that both of these conditions were constitutionally impermissible and that Plaintiffs were entitled to an injunction against the County, prohibiting this conduct. *Id.*, at 1213. On August 26, 2008, this court entered a permanent injunction against the county on these two issues.

Plaintiffs now seek attorneys' fees for the work performed litigating their constitutional claims pursuant to 42 U.S.C. Section 1988 and C.C.P. 1021.5.

## III.  ARGUMENT

### A.  PLAINTIFFS ARE AS PREVAILING PARTIES UNDER § 1988

In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), the United States Court reaffirmed the "American Rule" that each party in a lawsuit shall bear its own attorneys' fees in the absence of an express statutory authorization to the contrary. Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, in response to *Alyeska*. Section 1988 is intended to ensure that the victims of civil rights violations will be able to attract competent counsel to vindicate their rights in court. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). It accomplishes that goal by making certain that a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Hensley*, 461 U.S. at 429 (quoting S.Rep. No. 94-1011, p. 4 (1976)). *See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986); *City of Riverside v. Rivera*, 477 U.S. 561, 575-76 (1986).

As the Ninth Circuit recently pointed out, Congress emphasized "the importance of attorneys' fees in cases seeking injunctive relief, where there is no monetary light at

the end of the litigation tunnel: 'if successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the Federal courts." *Moreno v. City of Sacramento*, No. 06-15-21, 2008 U.S.App. LEXIS 15951 (9th Cir. July 28, 2008)(citation omitted.)

The Supreme Court has established a comprehensive analytical framework for handling the situation where a plaintiff does not obtain complete relief in litigation. Where claims "upon which plaintiff failed to prevail [are] related to plaintiffs' successful claims," the court may elect not to exclude any of the hours spent on the unsuccessful claim depending on the "level of success" obtained in the overall litigation. *Hensley,* 461 U.S. at 435. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id*. When "a plaintiff has achieved only partial or limited success, [however,] the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. Nonetheless, a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee. *Id.* at 435 n.11; *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. Cal. 2005). Under these standards, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, at 435.

In the instant case, plaintiffs' operative complaint alleged five primary violations of detainees' constitutional rights: 1) Seating/Holding Cells; 2) Mealtime; 3) Access to Religious Services; 4) Access to Day Room and 5) Outdoor Exercise. (Fifth Amended Complaint, p. 8.) Plaintiffs devoted significant time and resource to these issues, separate and apart from the considerable time they spent working on the issues they raised under the ADA on behalf of disabled detainees. They prevailed in establishing violations on two of the five constitutional claims as well as all of their ADA claims.

Here the claims on which plaintiffs did prevail under Section 1983 were closely related to the Section 1983 claims on which they did not prevail. For example,

PLAINTIFFS' MTN FOR ATTORNEYS FEES                8

plaintiffs' claim regarding denial of outdoor exercise to administrative segregation detainees, was closely related to their claim that those in administrative segregation did not receive sufficient day room access.  When depositions were taken or witnesses called to testify at trial, they were questioned about both of these issues.  The correctional experts who testified on behalf of both parties analyzed day room access and outdoor access together; their testimony necessarily compared access to these two types of recreation and discussed, at length, when one could substitute for the other; the types of exercise allowed in a dayroom; and whether dayroom could satisfy minimal constitutional requirements for exercise.  Thus, the issue of outdoor exercise was closely related to the issue of dayroom access.  While plaintiffs prevailed only on one of those claims, the time spent presenting the issue is so enmeshed with the time spent on the other that *Hensley* cautions against any discount.  Similarly, the outdoor exercise claim was also closely related to the issue of meal time and holding cells in that detainees and guards testifying about one issue also testified about the others.  There was virtually no witness deposed or called to testify at trial who was not questioned extensively about all five issues.  Put another way, there is no witness that either party called who testified about only one of the constitutional claims, or any pleading that addressed only one of the claims.[2]  Thus, it would be virtually impossible to segregate any particular piece of work or witness as having been solely attributable to the claims on which plaintiffs did not prevail.

**B.      PLAINTIFFS ARE ALSO PREVAILING PARTIES UNDER C.C.P.  § 1021.5**

Plaintiffs also seek fees under C.C.P. Section 1021.5, which provides, in pertinent part, that "[u]pon motion, a court may award attorneys' fees to a successful party … in

---

[2]  The only pleadings which were addressed exclusively to claims on which plaintiffs did not prevail were plaintiffs' oppositions to defendants' Motion for Summary Judgment No. 4 (Meal time); Motion for Summary Judgment No.  5 (Access to Visitors); Motion for Summary Judgment No. 7 (Lack of Seats in Holding Cells); and Motion for Summary Judgment No. 8 (Access to Dayroom).   Plaintiffs have excised all hours relating to this work from the submitted billing statements and are not seeking compensation for such work. (Keeny Decl., ¶ 42.)

any action which has resulted in the enforcement of an important right affecting the public interest if … a significant benefit … has been conferred on the general public … ." *See Olson v. Automobile Club of Southern California*, 42 Cal. 4th 1142 (2008).

In order to effectuate that policy, the Supreme Court has "taken a broad, pragmatic view of what constitutes a 'successful party.'" *Graham v. Daimler Chrysler Corp*., 34 Cal. 4th 553 (2004). Such fees are justified in many situations even without a final judgment.  See, e.g. *Press v. Lucky Stores, Inc*. (1983) 34 Cal.3d 311 (although their action had become moot, plaintiffs were awarded fees under § 1021.5 because they had achieved the relief they sought through preliminary injunction); *Woodland Hills Resident[s] Assn., Inc. v. City Council,* 23 Cal.3d 917, 938 (1979); *Folsom v. Butte County Assn. of Governments,* 32 Cal.3d 668, 685 (1982).  *See also Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004) (approving interim fees under C.C.P. Section 1021.5 of over $1 million against the City of Los Angeles).

In the instant case, plaintiffs prevailed on two of their five constitutional claims, establishing the entitlement of detainees in administrative segregation to religious services and outdoor exercise and obtaining an injunction against the County.  The Ninth Circuit acknowledged that plaintiffs' claim for injunctive relief on behalf of administrative segregation detainees was based in part on the California Constitution. *See Pierce*, 526 F.3d at 1197 ("Attacking the same conduct, plaintiffs also allege due process violations under the California Constitution).  Because the California Constitution's due process protections for detainees parallel those established by the federal constitution (see, e.g. , *Sanchez v. County of San Diego*, 464 F.3d 916 (9th Cir. 2006); *Iraheta v. Superior Court*, 70 Cal.App.4th 1500, 1507, 83 Cal.Rptr.2d 471, 476 (1999) (indicating that California has never found a broader construction for due process under the California Constitution than what exists under the US Constitution), and plaintiffs brought these claims under both federal and state law, plaintiffs can seek fees

under either Section 1988 or Section 1021.5 for the constitutional claims they proved.[3]

The standards for determining whether a part was a "prevailing" party despite lack of success on all claims is substantially the same under state and federal law.  *See, e.g., Shaw v. City of Sacramento*, 250 F.3d 1289, 1294 (9th Cir. 2001); *Greene v. Dillingham Constr. N.A.*,101 Cal.App.4th 418 (2002); *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal.App.4th 440 (2000).

**C.    THE AMOUNT OF HOURS WORKED ARE REASONABLE**

In order to determine what constitutes a reasonable award, the Supreme Court has held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.  This  calculation, known as the lodestar amount, is "presumed to be the reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 897 (1984).[4]

 "[A party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Copeland v. Marshall*, 641 F. 2d 880, 904 (D.C. Cir. 1980)) (en banc); *see also Stanford Daily v. Zurcher*, 64 F.R.D. 680, 683 n.2 (1974) (finding no ground for exclusion of any of the attorneys' time in calculating reasonable attorneys' fees where "[t]he large number of hours expended by plaintiffs' attorneys was necessitated not only by their claims but also from a need to counter the defendants' numerous affirmative defenses to the complaint and various

---

[3] In *Katzberg v. Regents of Univ. of Cal.*, 29 Cal.4th 300, 306-07 (2002), the California Supreme Court held that plaintiffs may bring claims under the California Constitution for any due process violation because article I, section 7(a) of the Constitution is self-executing.  The trial court below, in denying defendants' motion for summary judgment of plaintiffs' state constitutional claims, expressly held that plaintiffs could seek injunctive and declaratory relief under the state constitution for any due process violations. (Order Granting in Part Defendant's Motion for Summary Judgment, dated November 2, 2004, at p. 7.)

[4]Paralegal work is remunerable under 42 U.S.C. § 1988. *See Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) (the term "attorney's fee" in § 1988 "cannot have been meant to compensate only work performed personally by members of the bar.").

motions")).  Plaintiffs had little choice but to pursue a labor-intensive strategy in light of Defendants' tactics in this case, by which they have fought virtually every pleading filed including bringing six motions to dismiss, repeatedly challenged class certification, required court intervention to allow plaintiffs to obtain ready access to class members after certification, filed twelve motions for summary judgment and required plaintiffs to take the depositions of scores of detainees to preserve their testimony for trial.

The declarations constitute sworn evidence that the attorneys actually expended the time for which compensation is sought.  "Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case. . . . "  *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738  (11th Cir. 1988). For a court to deny compensation, "it must appear that the time claimed is *obviously and convincingly excessive under the circumstances.*"  *Id.* (emphasis added). "The applicant need not detail how each minute was expended; rather counsel should identify "the general subject matter of his time expenditures." *Hensley,* at 437, n. 12.

As another court has put it, "a fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3rd Cir. 1990).  "However, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" *Id.,* at 1190.  In *Rode*, the court rejected the argument that billing entries such as "settlement" and "miscellaneous research, telephone conversations, and conferences concerning facts, evidence, and witnesses" were insufficiently specific.  892 F.2d at 1191, and n. 13. *See generally Davis v. City and County of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992)(rejecting argument that billing records were insufficiently specific, emphasizing that Supreme Court's decision in *Hensley* requires only that counsel "identify the general subject matter of his time expenditures").

The Ninth Circuit has recently analyzed the question of what fees are compensable where litigation has spanned many years and the losing party contends that hours should

be stricken because the work performed over the course of the litigation is "duplicative." *Moreno,* 2008 U.S.App. LEXIS 1595.  The court opined that legal work is often *necessarily duplicative* as legal research is brought current or issues are raised again and again over protracted litigation:

> [D]etermining whether work is unnecessarily duplicative is no easy task. When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations and promulgated and amended.  A lawyer also needs to get up to speed with the research previously performed.  All this is duplication, of course, but it is *necessary* duplication; it is inherent in the process of litigating over time. . . . There is no reason why the lawyer should perform this necessary work for free. . . . . By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Id.,* *5-6.  *Moreno* further advises that the district court may impose a small reduction to account for unnecessary duplication but that it can be no greater than 10 percent – "a haircut" – without a detailed analysis and justification cutting anything more than 10%. Where the plaintiffs have already cut their fee application by some percentage to reflect their own judgment of a reasonable fee, the court in *Moreno* cautioned against any substantial reduction by the district court.  Id., at *7.

**D.     THE HOURLY RATES ARE REASONABLE**

Plaintiffs' counsel are entitled to recover fees at their customary hourly rate under C.C.P. Section 1021.5.  *Northwest Energetic Services LLC v. California Franchise Bd.* 159 Cal.App.4th 841, 870-71 (2008).  With respect to claims for fees under Section 1988, the Prison Litigation Reform Act ("PLRA") now caps attorneys' fees at "150% of the hourly rate established under section 3006A of title 18" for work done on claims for damages.  In Los Angeles County, the PLRA cap is 150% of $100 per hour for attorneys (all levels of experience). (Keeny Decl., ¶9.)    Thus, plaintiffs have alternatively used a

PLAINTIFFS' MTN FOR ATTORNEYS FEES                    13

rate of $150 for attorney hours.  (*Id*..)[5]

In *Blum v. Stenson*, 465 U.S. 886, 895 & n.1 (1984), the Supreme Court explained that "reasonable fees under § 1988 are to be calculated according to the prevailing market rates in the relevant community."  Ordinarily, the reasonable rate is determined based on the legal market in the community where the district court sits.  *See Davis v. Mason County*, 927 F.2d 1473, 1488 (1991).  In this case, the district judge, Judge Taylor, sat in the United States District Court for the Central District of California in Orange County.  Even if there is some difference in the rates between the Orange County and Los Angeles, where the principal courthouse for the Central District is located, Plaintiffs are nonetheless entitled to Los Angeles rates.  A prevailing plaintiff is entitled to rates "outside the forum" "'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree or experience, expertise, or specialization required to handle the case properly'"  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)(quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).

Here, the evidence demonstrates that local counsel capable of handling this major class action litigation through trial and appeal were unavailable.  Barry Litt, one of the foremost prison condition litigators in the state has submitted a declaration attesting to the scarcity of attorneys in Orange County who are capable of handling significant civil rights class actions such as this.  Litt Decl., at ¶27; Michelle Reinglass, an extremely experienced and active member of the Orange County Bar, has submitted a declaration attesting to the lack of attorneys in Orange County who could litigate such a matter.

---

[5]The PLRA, however, is silent on paralegal rates. The one district court to address the question of appropriate rates for paralegals under the PLRA has held that while the PLRA  prohibits paralegal rates in excess of 150% of attorney rates, the PLRA permits any lesser rate which would be considered reasonable under 42 U.S.C. § 1988(b). *Hudson v. Dennehy*, 2008 U.S. Dist. LEXIS 29754 (D. Mass., Apr. 11, 2008). In *Hudson*, the court awarded paralegal rates of $100 per hour. *Hudson*, at 23. This court has previously approved paralegal rates of $220 to $245 per hour in *Love v. The Mail on Sunday*, CV 05-7798 ABC (PJWx) (Order, at 17, lns. 2-3, attached as Exhibit D to Keeny Decl.). Thus, plaintiffs herein seek paralegal and law clerk rates of $150 as well.

PLAINTIFFS' MTN FOR ATTORNEYS FEES          14

Reinglass Decl., ¶ 12. By contrast, the law firms of Hadsell Stormer Keeny Richardson & Renick LLP (formerly Hadsell & Stormer, Inc.), and Litt Estuar, *et al.* have specialized expertise in civil rights litigation.  Keeny Decl. ¶¶ *passim*; Litt Decl., ¶ 4-10. Accordingly, Plaintiffs are entitled to attorneys' fees at Los Angeles market rates.

In determining the prevailing market rate, the Court should pay "close attention" to "the fees charged by 'lawyers of reasonably comparable skill, experience, and reputation.'" *Davis*, 976 F.2d at 1545-46 (quoting *Blum*, 465 U.S. at 895).  In this case, the attached declarations of Virginia Keeny, Barry Litt, Peter Eliasberg, and Michelle Reinglass demonstrate that the hourly rates requested by Plaintiffs for each attorney and paralegal are in line with the market rates in the Los Angeles legal community for similar services performed by attorneys of comparable skill, experience, and reputation.  *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").[6]

Plaintiffs are requesting compensation for Dan Stormer, one of the leading civil rights lawyers in Southern California at the rate of $775 per hour.  (Keeny Decl., ¶9-16.) They are also seeking compensation for Barry Litt, another leading civil rights attorney in California with considerable experience litigating jails conditions cases, as well as other civil rights matters. His rate is $750 per hour. (Litt Decl., ¶2-17.) Mr. Herman, another experienced civil rights attorney who was actively involved in many phases of the litigation, has an hourly rate of $500.  The bulk of the legal writing and discovery practice was done by two attorneys: Virginia Keeny at the Hadsell firm, and Bryan Miller at the Litt Firm, for whom rates of $550 and $505 per hour, respectively, are sought.  (Keeny Decl., ¶2-9; Litt Decl., ¶25).

Rates billed by other lawyers in the Los Angeles market who have similar

---

[6] Because this litigation has taken almost seven years, Plaintiffs are entitled to a fee award at current, rather than historic rates. *See*, *e.g.*, *Gates v. Deukmejian*, 987 F.2d 1392, 1406-07 (9th Cir. 1992).

PLAINTIFFS' MTN FOR ATTORNEYS FEES                15

experience and do civil litigation demonstrate that $750 and 775 per hour is eminently reasonable for Mr. Litt and Mr. Stormer.  A lawyer with similar experience from Quinn Emanuel (1982 graduate) would be billed at $700; Dewey & LeBoeuf $730 for a 1974 graduate; and $520-785 at Manatt Phelps & Phillips. (Litt Decl., ¶21-23.)  See also Eliasberg Decl., ¶9-14 and Exhibits 1-4 thereto.  Plaintiffs's request for Ms. Keeny and Mr. Miller to be compensated at the rates of $550 and $505 respectively is also reasonable.  Both have stellar records and considerable experience litigating civil rights cases.  (See Keeny Decl., ¶2-9; and Litt Decl.,  ¶25.) Ms. Keeny is a 1988 graduate of Stanford Law School, a magna cum laude graduate of Harvard College, a former senior trial litigator with the EEOC, and a recipient of the ACLU's pro bono litigation award in 2006.  (Keeny Decl., ¶3.)  Mr. Miller is a 1994 graduate from UC Hastings College of Law, where he was a public interest scholar and externed for Justice Jerome Smith of the First District Court of Appeal.  In 1995, he was awarded the Steven Wiley award for Pro Bono services.  At the Litt firm, he litigated a variety of civil rights cases, including a significant jail conditions case against the CDC.  (Litt Decl., ¶ 25.)   Their rates are fully in line with the basic market rates in Southern California for attorneys of their background and experience.   Reinglass Decl.,  ¶11,13; Eliasberg Decl., ¶9-14.

Plaintiffs also seek compensation for the amount of time billed by various associates (at varying rates as set forth in the attached declarations) and law clerks and paralegals who served on the case at the rates of $150 through $235, depending on experience. Their rates are well within the range of rates billed for associates and paralegals with their level of experience.

**E.   THE LODESTAR CALCULATION PROPERLY ELIMINATES WORK PERFORMED ON NON-CONSTITUTIONAL CLAIMS AND DISCOUNTS TOTAL FEES CLAIMED TO REFLECT DEGREE OF SUCCESS ON THE MERITS**

In the instant case, plaintiffs' counsel has gone through the time records of all counsel who worked on the case to ascertain which of the work performed related solely to the constitutional claims.  (As the claims brought under the ADA have yet to reach final resolution, plaintiffs are not seeking reimbursement at this time for *any work* related

to prosecution of the claims on behalf of disabled detainees.)  Those records are attached hereto as Exhibits to the Keeny, Litt and Herman Declarations.  After excising any billing entries that related solely to the ADA claims, Plaintiffs' counsel also excised all hours relating to the oppositions to the summary judgment motions which related to claims under Section 1983 on which plaintiffs did not prevail, as well as certain billing entries which were unnecessarily duplicative or not sufficiently connected to the core litigation issues.  (Keeny Decl.¶42.)

    With respect to the remaining hours, those hours could not be discreetly segregated into work on "ADA" related claims or constitutional claims.  For example, the sixty five depositions explored all conditions in the jail and key jail policies, and bore equally on the federal and state constitutional claims brought on behalf of the administrative segregation detainees, as well as on claims brought by the disabled under the ADA.  The extensive work on the class certification motion went to both ADA and Section 1983 claims, as did the work on the motions in limine; pre-trial motions; jail survey; motions to compel; efforts to obtain attendance of witnesses at trial; and many of the motions for summary judgment.  (Keeny Decl., ¶43.)

    Because the work performed advanced both the ADA and constitutional claims, plaintiffs have attributed only one half of each attorney's and legal assistant's hours to the constitutional claims.  The other half of the work is attributable to the ADA claims and will be submitted as part of a later fee application, depending on the final outcome of the ADA claims.  Plaintiffs, therefore, have totaled each attorney and parelegal's time on the case (after line item deductions had been made which are reflected in the submitted bills), and calculated 50% of each of those individuals' total hours.  After making these initial calculations, plaintiffs took this figure and then made an across the board 25% "cut"  of each attorneys' hours to reflect the fact that plaintiffs did not prevail on all of the constitutional claims.  (Keeny Decl., ¶43.)

    The following table sets forth the total amount of hours, reduced amount of hours, regular hourly rate, and total fees claimed for each attorney or paralegal who worked on this case.  (Keeny Decl., ¶44.)

PLAINTIFFS' MTN FOR ATTORNEYS FEES                17

| Attorney | Year of Grad. | Reg. Rate | Hours spent on 1983 Claims (50% of total) | Hours after 25% reduction | Total Fee (reduced hours at regular rate) | PLRA Total (Reduced hours at PLRA cap rate of $150 per hour for attorneys; $150 for paralegals/law clerks) |
|---|---|---|---|---|---|---|
| Virginia Keeny | 1988 | $550 | 561.45 | 421 + 37 hrs (atty. fee appl.) | $251,900 | $68,700 |
| Dan Stormer | 1974 | $775 | 109.85 | 82.38 | $63,844.5 | $12,357 |
| Lisa Holder | 2000 | $400 | 157.1 | 117.8 | $47,120 | $17,670 |
| Hernaldo Baltodano | 2002 | $375 | 252.8 | 189.6 | $71,100 | $28,440 |
| Patrick Dunlevy | 1992 | $550 | 2.6 | 1.95 | $1072.50 | $292.50 |
| Jim Lewis | 1992 | $550 | 12.97 | 9.72 | $5,346 | $1,458 |
| Cornelia Dai | 1999 | $425 | 18.75 | 14.06 | $5,975.50 | $2,109 |
| Lauren Teukolsky | 2000 | $400 | 98.15 | 73.61 | $29,444 | $11,041 |
| Bryan Miller | 1994 | $505 | 872 | 654 | $330,270 | $98,100 |
| Barrett Litt | 1969 | $750 | 19.25 | 14.44 | $10,828.12 | $2,166 |
| Paul Estuar | 1993 | $525 | 17.25 | 12.93 | $6,788.25 | $1,939.50 |
| Robert Kitson | 1995 | $490 | 27.2 | 20.4 | $9996 | $3,060 |
| G. Harrison | 1992 | $550 | 10.25 | 7.68 | $4,224 | $1,152 |
| Richard Herman | 1972 (admitted) | $500 | 328.00 | 246.0 | $123,000 | $36,900 |
| Julia White (Senior Paralegal) | 23 years exp | $235 | 5.45 | 4.10 | $963.50 | $615 |
| Delia Ibarra | 2002 | $375 | 151.7 | 113.8 | $42,675 | $17,070 |

| Ian Barlow | 2nd Year UCLA law student | $225 | 61.5 | 46.12 | $10,377 | $6,918 |
|---|---|---|---|---|---|---|
| Norma Molina (paralegal) | N/A | $175 | 1.5 | 1.125 | $196.87 | $168.75 |
| Tami Galindo (paralegal) | N/A | $175 | 4.25 | 3.18 | $556.5 | $477 |
| Anne Golden | N/A | $175 | 425.42 | 319 | $55,825 | $47,850 |
| Dunia Sinnreich (paralegal) | N/A | $175 | 3.3 | 2.47 | $432.25 | $370.50 |
| Sonia Guizar | N/A | $175 | 6.7 | 5.02 | $878.5 | $753 |
| Mayling Kao (Paralegal) | N/A | $150 | 484 | 363 | $54,450 | $54,450 |
| Ben Stormer (law clerk) | J.D. Rec'd 2002 | $175 | 233.65 | 175.2 | $30,660 | $26,280 |
| Robert Peterson (law clerk) | 2ND Year UCLA | $175 | 95.1 | 71.33 | $12,482.75 | $10,699.50 |
| Maryam Judar (Law Clerk) | 2nd Year UCLA | $175 | 74.25 | 55.68 | $9,744 | $8,352 |
| Katherine McFarlane (law clerk) | 1st Year Loyola | $175 | 31.75 | 23.81 | $4,166 | $3,175.5 |
| Guillermo Mayer (law clerk) | 2nd Year law student | $175 | 11.30 | 8.48 | $1,484 | $1,272 |
| Peter Fang (legal asst.) | N/A | $175 | 130.87 | 98.15 | $17,176.25 | $14,722.5 |
| Jimmy Alamillo (legal asst.) | N/A | $175 | 75 | 56.25 | $9,843.75 | $8,437.5 |
| Donald Coates (legal asst.) | N/A | $175 | 132.87 | 99.65 | $17,438.75 | $14,947.5 |

| Judd Gartenberg (legal asst.) | N/A | $175 | 11 | 8.25 | $1,443.75 | $1,237.5 |
|---|---|---|---|---|---|---|
| Ulysses Aguayo | N/A | $175 | 51.2 | 38.4 | $6,720 | $5,760 |
| Alexei Offill-Klein | N/A | $175 | 81.37 | 61.02 | $10,678.5 | $9,153 |
| Samangi Mudalige | N/A | $175 | 156 | 117 | $20,475 | $17,550 |
| Anthony Leon | N/A | $175 | 107.37 | 80.5 | $14,087.50 | $12,075 |
| TOTAL | | | 4823 | 3654 | **$1,283,663.74** | **$547,719.25** |

## F.   PLAINTIFFS' LITIGATION EXPENSES ARE RECOVERABLE.

Fed. R. Civ. P. 54(d)(1) provides that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ."  The types of costs that may be awarded under Rule 54(d) are limited to those listed in 28 U.S.C. § 1920.  *Crawford Fitting Co. v. J. T. Gibbons*, Inc., 482 U.S. 437, 441-42 (1987), *superseded by statute on other grounds as stated in Fernando v. Hotel Nikko Saipan*, 1992 U.S. Dist. LEXIS 10228, at *3 (D. N. 1992).  Local Rule 54-4 lists the items taxable as costs.  Plaintiffs have submitted concurrently herewith a request for one half of the costs ordinarily recoverable under Rule 54-4.

In addition to attorneys' fees and costs recoverable under Rule 54-4, Plaintiffs are entitled to recover their out-of-pocket expenses normally billed to fee-paying clients. *See Harris v. Marhoefer,* 24 F. 3d 16, 19 (9th Cir. 1994) (under federal fee-shifting statutes, out-of-pocket expenses normally billed to a client are recoverable as part of fees award); *Calderon v. Witvoet*, 112 F.3d 275 (7th Cir. 1997) (travel and meal expenses are recoverable as part of attorneys' fees to prevailing party); *Missouri v. Jenkins*, 491 U.S. 274, 285-89, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989); *Herold v. Hajoca Corp*., 864 F.2d 317, 323 (4th Cir. 1988).  Electronic research fees are ordinarily recoverable. *See InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 22-23 (1st Cir. 2004); see also *In*

*re Mulberry Phosphates, Inc.*, 151 B.R. 948 (Bankr. M.D. Fla. 1992) (holding that litigation expenses such as clerical expenses, postage, express mail services, and computer time do not constitute overhead when the firm uses a "user fee billing system," as is the case here, in which the firms bill clients only for specific expenses related to services performed on behalf of the client). (Keeny Decl., ¶50). Plaintiffs have incurred costs and related non-taxable litigation expenses consisting of $70,583.60 in charges for which they seek reimbursement.[7] (Keeny Decl., ¶50.)   Those costs are broken down as follows and represent ½ of the actual costs incurred:

|  | Hadsell Firm | Litt Firm | Total/Both Firms |
|---|---|---|---|
| Photocopying | $30,190 | $18,804 | $48,994 |
| Facsimile service | $4,732 | $556.25 | $5,288.25 |
| Computer-aided Research | $685 | $895 | $1580 |
| Delivery/messenger charges | $3,164 | $2872 | $6036 |
| Postage | $366.50 | $370.4 | $736.9 |
| Travel/meals | $5,469 | $1,745 | $7,214 |
| Video copying |  | $269.45 | $269.45 |
| Parking |  | $140 | $140 |
| Express Mail | $325 |  | $325 |
| Total | $44,931.50 | $25,652.10 | $70,583.60 |

---

[7] The related litigation expenses reasonably include: (1) travel expenses, including lodging, car rental and meals. *Keith v. Volpe*, 643 F. Supp. 37, 43 (C.D. Cal. 1985); *Thornberry v. Delta Airlines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982); (2) photocopying expenses and messenger service, *Thornberry*, 676 F.2d at 1244; (3) postage, *Volpe*, 643 F. Supp. at 43; *Connor v. Winter*, 519 F. Supp. 1337, 1345 (S.D. Miss. 1981); (4) express mail, *Connor*, 519 F. Supp. at 1345; (5) telephone charges, *Volpe*, 643 F. Supp. at 43; *Thornberry*, 676 F.2d at 1244; and (6) computer-aided research, *Wehr v. Burroughs Corp.*, 619 F.2d 276, 284 (3rd Cir. 1980). Plaintiffs are not seeking expert costs.

## IV.  CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court grant attorneys' fees in the amount of $1,283,663.74, litigation expenses in the amount of $70,583.60, as well as all further fees reasonably expended on this matter. Plaintiffs also request that the court separately consider and grant the motion for costs submitted pursuant to Local Rule 54-4.

Respectfully Submitted,

DATED: September 8, 2008

HADSELL STORMER KEENY
RICHARDSON & RENICK, LLP

By    /s/-Virginia Keeny
Virginia Keeny
Attorneys for Plaintiffs

PLAINTIFFS' MTN FOR ATTORNEYS FEES                22