Dan Stormer, Esq. [S.B. #101967]
Virginia Keeny, Esq. [S.B. #139568]
Radhika Sainath, Esq. [S.B. #259318]
HADSELL STORMER KEENY
    RICHARDSON & RENICK LLP
128 North Fair Oaks Avenue
Pasadena, CA 91103-3645
Telephone: (626) 585-9600
Facsimile: (626) 577-7079

Barrett S. Litt, Esq. [S.B. # 45527]
LITT, ESTUAR, HARRISON
MILLER & KITSON, LLP
3435 Wilshire Blvd., 27th Floor
Los Angeles, CA 90010-12
Telephone: 213-386-3114
Facsimile: 213-251-5450

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRED PIERCE, TIMOTHY LEE CONN, MAX SANDERS, FERMIN VALENZUELA, LAURIE D. ELLERTSON, Individually, and as Class Representatives, and all those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF ORANGE, a Governmental Entity; MICHAEL S. CARONA, Individually, and DOES 1 through 200, Inclusive, <br><br> Defendants. | Case No: SACV01-00981-ABC (MLGx) <br><br> [Assigned to the Honorable Audrey B. Collins – Roybal Courtroom 680] <br><br> **TRIAL BRIEF** <br><br> FPTC: January 25, 2010 <br> Time: 10:00 a.m. <br> Crtrm: 680 <br><br> Discovery Cut-off: June 4, 2009 <br> FPTC: January 25, 2010 <br> Trial Date: February 9, 2010 |

trial brief.wpd

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    ORANGE COUNTY JAILS SEGREGATE INDIVIDUALS
            WITH DISABILITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

            1.    Men's Central Jail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            2.    Theo Lacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            3.    James Musick . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            4.    Women's Facilities . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    JAIL FACILITIES ARE INACCESSIBLE TO INDIVIDUALS
            WITH DISABILITIES EVEN THOUGH REASONABLE
            ACCOMMODATIONS EXIST. . . . . . . . . . . . . . . . . . . . . . . . . . 6

            1.    Men's Central Jail: Numerous Barriers and Inaccessible
                  Features Remain. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.    Intake Release Center: Numerous Barriers and Inaccessible
                  Features Remain. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            3.    Women's Central Jail. . . . . . . . . . . . . . . . . . . . . . . . . 11

            4.    Theo Lacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            5.    James Musick Facility . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.    DISABLED STILL LACK ACCESS TO PROGRAMS AND
            SERVICES EVEN THOUGH  REASONABLE
            ACCOMMODATIONS EXIST . . . . . . . . . . . . . . . . . . . . . . . . . 12

            1.    James Musick Facility . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    Theo Lacy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            3.    Men's Central Jail . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      E.    DEFENDANT CANNOT MEET ITS BURDEN BY SHOWING
            THE REQUESTED ACCOMMODATIONS REQUIRE A
            FUNDAMENTAL ALTERATION OR UNDUE BURDEN. . . . . . . . . . . 17

i

F.   DEFENDANT CANNOT SHOW THEY HAVE MADE
     REASONABLE ACCOMMODATIONS. . . . . . . . . . . . . . . . . . . . . . . . . 18

G.   INADEQUATE ADA NOTICE OF RIGHTS AND COMPLAINT
     PROCEDURE IN THE ORANGE
     COUNTY JAILS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*Alexander v. Choate*
    469 U.S. 287 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Armstrong v. Wilson*
    124 F.3d 1023 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Does 1-5 v. Chandler*
    83 F.3d 1150 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Pierce v. County of Orange*
    526 F.3d 1190 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

*Weinreich v. Los Angeles County Metropolitan Transport Authority*
    114 F.3d 976 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Zukle v. Regents of University Of California*
    166 F.3d 1041 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

*Yeskey v. Pennsylvania Department of Correctional*
    118 F.3d 168 (3rd Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

## FEDERAL STATUTES

28 C.F.R.
    §§ 35.106, 35.107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19
    § 35.150(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
    § 35.150(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
    § 35.150(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
    § 35.151(b)(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

42 U.S.C.
    § 12131(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 6
    § 12132. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Plaintiffs submit the following trial brief under Local Rule 16-10.

## I. INTRODUCTION

This lengthy and hard fought litigation was initiated in 1991 to challenge several unconstitutional conditions in the massive jail system operated by Orange County.  After protracted discovery battles, voluminous discovery and more than 65 depositions, six motions to dismiss, twelve separate motions for summary judgment, a bench trial and a successful published appellate decision, the Ninth Circuit found that plaintiffs had established ongoing violations by defendant Orange County and ruled in plaintiffs' favor on their claims under the American with Disabilities Act (ADA).   On August 26, 2008, this court also entered a permanent injunction against the County, directing that the County provide expanded access to outdoor exercise to all detainees and guaranteeing access to religious services and counselors.

The Ninth Circuit, anticipating that facts may have changed in the years since the trial was held in 2004, ordered the district court to conduct further fact-finding to determine what further relief is warranted under the ADA.  *Pierce v. County of Orange*, 526 F.3d 1190, 1226 (9th Cir. 2008).  Amazingly, none of the areas identified by the Ninth Circuit in *Pierce* have been modified *in any way* to make them accessible.  In fact, plaintiffs' expert discovered *new* physical accessibility issues in intake areas and holding cells–areas which all detainees must have access to.

Plaintiffs will prove during the course of this trial that defendant violated and continues to violate Title II of the ADA and the California Disabled Person's Act by excluding individuals with disabilities from participation in, or the benefits of, the services, programs and activities provided to inmates and pre-trial detainees in the jails. Specifically, the County violates the ADA by: a) housing the disabled in areas which have architectural barriers, preventing them from using the facilities; b) denying them the same access to educational, recreational and vocational services provided to non-disabled detainees; and c) segregating them with sick inmates, thereby stigmatizing them. Defendant has failed to offer any specific facts as to why or how ADA-compliant

modifications or accommodations produce an undue burden, require a fundamental

alteration or further legitimate security interests.  Instead, defendant continues to insist,

as it has for nearly a decade, that "no remedial measures are required," while

simultaneously suggesting it would rather cut services than accommodate disabled

detainees–a strikingly similar argument Southern schools boards made to fight racial

integration.

## II.  LEGAL ARGUMENT

### A.   LEGAL STANDARD

Title II of the ADA provides that: "No qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits

of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity."[1] 42 U.S.C. § 12132; *Pierce,* 526 F.3d at 1214. The

ADA not only prohibits public entities from discriminating against the disabled, it also

prohibits public entities from excluding the disabled from participating in or benefitting

from a public program, activity, or service "solely by reason of disability." *Weinreich v.*

*Los Angeles County Metro. Transp. Auth*., 114 F.3d 976, 978-79 (9th Cir. 1997) (*quoting*

*Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996)) (emphasis in original).  *See*

*also Alexander v. Choate*, 469 U.S. 287, 301-02, 83 L. Ed. 2d 661, 105 S. Ct. 712 (1985)

(internal citation omitted)). The elements of proof for the California Act and the ADA

are the same.

In ADA cases, the plaintiff bears the burden of establishing the elements of a

prima facie case, including, if needed, the existence of a reasonable accommodation that

---

[1]  The ADA defines a "qualified individual with a disability" to include anyone
with a disability: who, with or without reasonable modifications to rules, policies,
or practices, the removal of architectural, communication, or transportation
barriers, or the provision of auxiliary aids and services, meets the essential
eligibility requirements for the receipt of services or the participation in programs
or activities provided by a public entity.  42 U.S.C. §  12131(2).

2

1  would enable him to participate in the program, service or activity at issue.[2] *Pierce,* 526

2  F.3d at 1217, *citing Zukle v. Regents of Univ. Of California*, 166 F.3d 1041, 1046 (9th

3  Cir. 1999). The public entity then may rebut this "by showing that the requested

4  accommodation would require a fundamental alteration or would produce an undue

5  burden." *Pierce*, 526 F.3d at 1217.

6       Defendant continues its decade-long argument that remedial remedies are "not

7  required at all." *See* Memo of Contentions of Fact and Law ("Defendant's Memo") at 4.

8  However, the evidence will show that the Orange County jails are still grossly

9  noncompliant with the ADA, that alleged alternative methods of access are in fact, not

10  provided at all, and that there is no evidence of legitimate financial, administrative or

11  safety concerns that justifies housing the disabled in areas which have architectural

12  barriers, and denying them the same access to educational, recreational and vocational

13  services provided to non-disabled detainees.

14  **B.   ORANGE COUNTY JAILS SEGREGATE INDIVIDUALS WITH**

15  **DISABILITIES**

16  **1. Men's Central Jail**

17       All male detainees or post-sentenced inmates in the Orange County Jail system

18  who have mobility impairments which require the use of a wheelchair or walker are

19  housed in Ward C of the Men's Central Jail or, alternatively, in one of the Sheltered

---

21      [2] The ADA's broad language brings within its scope "'anything a public entity

22  does.'" *Yeskey v. Pennsylvania Dep't of Corr.*, 118 F.3d 168, 171 & n.5 (3d Cir.

23  1997), *aff'd* 524 U.S. 206, 141 L. Ed. 2d 215, 118 S. Ct. 1952 (1998) (quoting 28

24  C.F.R. Pt. 35, App. A, preamble to ADA regulations). This includes programs or

25  services provided at jails, prisons, and any other "'custodial or correctional

26  institution.'" *Id.* "Although 'incarceration itself is hardly a "program" or "activity"

27  to which a disabled person might wish access, "'mental health services and other

28  activities or services undertaken by law enforcement and provided by correctional

facilities to those incarcerated are "services, programs, or activities of a public

entity" within the meaning of the ADA. *Armstrong*, 124 F.3d at 1023-24 (quoting

*Crawford*, 115 F.3d at 483 (internal citation omitted) (alteration in original)); see

also *Yeskey*, 524 U.S. at 209.

Living Cells (one or two bed cells) which are down the hallway from Ward C, regardless of their medical condition or needs.  Ward C is also reserved for those detainees or post-sentenced inmates with severe medical needs or illnesses.  All male detainees with diabetes which requires monitoring are housed in Ward D of the Men's Central Jail. All visually impaired detainees are also automatically assigned to Ward D. Occasionally, male detainees with mobility impairments are placed in Ward D as overflow.

**2. Theo Lacy**

Theo Lacy houses its lowest security inmates in dorm-style housing, labeled Dorms A-D.  These individuals have been screened and selected as the least likely to be violent.  The inmates in Dorms A-D are often assigned to work crews within Theo Lacy, where they work on paint, kitchen and landscaping crews, supervised by non-peace officers who do not carry weapons.  The workers often use equipment to perform their jobs that are more easily used as a lethal weapon than a wheelchair, prosthetic or walker. For example, the landscaping crews use pruners, lawn mowers, shovels and rakes.  The kitchen crew uses knives; the paint crew uses ladders and extension poles.

Nonetheless, all male detainees or post-sentenced inmates who have mobility impairments that require the use of cane or crutch are assigned to Theo Lacy, Module O, which was constructed in 2001.  Those with crutches or canes may also be assigned to Ward C or D, or the Sheltered Living Cells in the Men's Central Jail.  All male detainees with a prosthetic limb (arm or leg) are housed in one of three places: Module O of Theo Lacy or in the Men's Central Jail in either Ward C or the Sheltered Living Cells which are adjacent to Ward C.  No male detainee or post-sentenced inmate who has a mobility impairment requiring the use of an assistance device (crutches, cane, walker, or wheelchair) or who has a prosthetic limb (arm or leg) is allowed to be assigned to any of the worker dorms or other low-security housing units at Theo Lacy.

/ / /

/ / /

### 3. James Musick

No detainees or post-sentenced inmate, male or female, who has a mobility impairment requiring the use of an assistance device (crutches, cane, walker, or wheelchair) or who has a prosthetic limb (arm or leg) is allowed to be assigned to James Musick.

### 4. Women's Facilities

As of July 23, 2009, when the County decided to temporarily close the Women's Central Jail, all female detainees were moved to Mod K in the IRC or to Musick. Female detainees in the IRC are assigned to Mod K, Sector 13 and 14. These sectors in the IRC have no accessible features and have never been modified for individuals with mobility or dexterity impairments, by Defendant's own admission. None of the women's housing or program areas at Musick have been made accessible to detainees with mobility or dexterity disabilities.

Orange County claims to have no female detainees with mobility or dexterity impairments as of September 3, 2009, the date of the 30(B)6 deposition in this case on the assignment and classification of detainees with medical conditions within the jail system. As of the date of 30(B)6 deposition, Orange County did not know where it would place a female detainee who came into the booking loop with a mobility impairment requiring use of a walker, cane, wheelchair or prosthetic limb. Orange County is in the early planning process of creating two "accessible cells" in the Sheltered Living area of the Men's Central Jail to house any female detainees who have mobility impairments and require the use of a wheelchair, cane, walker or prosthetic limb. This work has not been commenced as of October 2009.

Thomas Davis, Manager of the Sheriff's Department's Facilities Planning Project Execution Division, who was produced in response to Rule 30(B)(6) as the person most knowledgeable on the issue of new construction and the cost of modifications to make the jails compliant with the ADA, admitted that he is not aware of any plans to commence work on these cells, nor has he been given any time frame for implementation

1   of the work.

2   Because the planned accessible cells have not been created, Orange County is

3   planning on housing female detainees who come into the system with mobility

4   impairments in non-accessible cells with other female detainees in the IRC module

5   currently housing female detainees, or possibly housing them in Module O in Theo Lacy.

6   However, there is no cell in Module O at Theo Lacy where a female detainee would not

7   be fully visible to male detainees when she was in her cell, using the toilet or shower,

8   sleeping or using the day room because Module O has an open floor plan where every

9   cell is fully visible to an exterior guard station and all other inmates in the cell block at

10  all times.

11  **C.   JAIL FACILITIES ARE INACCESSIBLE TO INDIVIDUALS WITH**

12  **DISABILITIES EVEN THOUGH REASONABLE ACCOMMODATIONS**

13  **EXIST**

14  The County completed its transition plan, required by the ADA, in August 2000,

15  eight years after the deadline set by the regulations for such plans and five and a half

16  years after the *deadline* for completion of structural modifications.  *Pierce*, 526 F.3d at

17  1223 (9th Cir. 2008).[3]  Under the regulations, "a qualified individual with a disability (an

18  individual for whom reasonable modifications may be required, 42 U.S.C. §12131(2))

19  must not be excluded from or denied the benefits of a public entity's services, programs

20  or activities because the entity's facilities are inaccessible or unusable." *Id*. at 1215.  A

21  public entity must "make reasonable modifications in policies, practices or procedures

22  when the modifications are necessary to avoid discrimination on the basis of disability,

23  unless the public entity can demonstrate that making the modifications *would*

24

25

26   [3] An entity with more than fifty employees, such as Orange County, must develop

27   a "transition plan," setting forth the steps that must be taken to complete any
     planned structural changes.  28 C.F.R. 35.150(d)(1); *Pierce,* 526 F.3d at 1216.
     The deadline for making any structural changes required by the regulations was

28   January 26, 1995.  28 C.F.R. 35150(c); *Pierce*, 526 F.3d at 1216.

*fundamentally alter the nature of the service, program or activity." Id.* (emphasis added). [4]

Peter Robertson, a recognized expert on accessibility and compliance of correctional facilities with the ADA, conducted an inspection of the five original jail facilities (Men's Central Jail, Intake Release Center, Women's Central Jail, Theo Lacy, and Musick) on August 26, 2009. His written report, which included photographs, revealed and enumerated many areas of the jails which were inaccessible to individuals with disabilities, a conclusion affirmed by the Ninth Circuit on appeal. *Pierce*, 526 F.3d at 1218 ("Mr. Robertson identified various specific architectural barriers and features that are out of compliance with the ADA.  These findings are clearly supported by the record.")

A renewed jail inspection was conducted on July 8 and 9, 2009 by plaintiffs' counsel and their new accessibility expert, Logan Hopper.  The 2009 jail inspection confirmed that none of the areas identified by the Ninth Circuit in *Pierce v. County of Orange* as being inaccessible to individuals with mobility impairments had been modified in anyway to be made accessible.  Moreover, Mr. Hopper noted that these non-complying conditions make daily usage of the facilities extremely difficult for

---

[4] "[A]ny part of a public entity's facility constructed *after January 26, 1992*, must be designed and constructed 'in conformance with the Uniform Federal Accessibility Standards ('UFAS')(41 C.F.R. Pt. 101-19.6, App.A), or with the Americans with Disabilities Act Accessability Guidelines for Buildings and Facilities ('ADAAG')(28 C.F.R. Pt. 36, App.A).'" *Pierce*, 526 F.3d at 1216. ADAAG explicitly applies to local jail facilities.  ADAAG, Federal Register, Vol., 63, No. 8 (January 13, 1998), Section 12.  ADAAG enumerate many steps a jail facility must take to remove structural barriers and to make its programs physically accessible to people with disabilities, including making at least two percent of the total number of cells or holding cells fully compliant with minimum accessibility requirements in terms of doors, toilets and bathing facilities, beds, drinking fountains, fixed seating and fixed benches.  ADAAG, Federal Register, Vol., 63, No. 8 (January 13, 1998), Section 12.  "To the maximum extent possible, any part of a public entity's facility altered after January 26, 1992, 'in a manner that affects or could affect [its[ usability,' must also be altered in conformance with one of these accessibility standards." *Pierce*, 526 F.3d at 1215; Section 35.151(b)(c).

individuals with difficulties, and many find it nearly impossible to perform necessary daily functions and engage in basic activities under these conditions.

**1. Men's Central Jail: Numerous Barriers and Inaccessible Features Remain**

In the Men's Central Jail, Mr. Hopper noted numerous physical barriers to individuals with disabilities, each of which could be modified or removed to make the facility fully accessible to individuals with disabilities.

For example, only two of the 24 barriers relating to physical accessibility identified by Mr. Robertson had been corrected in anyway.  The showers are not accessible in Ward C and Ward D as they have a twelve inch cement barrier over which an inmate must climb or be lifted, non-compliant grab bars, inappropriate transfer chairs, and non-compliant shower head and controls.  Disabled inmates are required to lift other disabled inmates (including those  who are in wheelchairs) over this barrier and into the shower, and to assist them with showering, posing a significant health and safety risk to all inmates involved.

The state of the showers was determined by Mr. Hopper to present "a serious hazard to anyone with upper or lower body mobility impairments."  The showers can be modified without undue expense to make them fully accessible and safe for usage by individuals with disabilities.

Ward C and Ward D had numerous other physical barriers to accessability for mobility and dexterity impaired detainees, including toilets without proper grab bar placement and without adequate floor and maneuvering space, toilet flush valves that were too high to use, an inaccessible urinal, inaccessible telephones, tables, and seating areas.  All of these barriers can be modified without undue expense to make these areas of the jail fully accessible.

The only dayroom available to the 40 or so disabled detainees who are housed in the small locked one and two man "Sheltered Living" cells contains 12 separate violations, which would pose differing barriers to the wide range of disabilities that would need to be accommodated in this room.  All of these barriers can be modified

1   without undue expense to make these areas of the jail fully accessible.  Mr. Hopper
2   estimated that the total cost of repairs to make the dayroom accessible was in the range
3   of $10,000.

4         The rooftop recreation area – the only area where male detainees in the Men's
5   Central Jail can obtain outdoor exercise (as required by law) – has many inaccessible
6   features.  The bathroom attached to the main exercise area is completely inaccessible as
7   it is reached by a narrow stairway and the lavoratory and sinks are not modified in
8   anyway to accommodate those with disabilities.

9         Although the jail has created a separate exercise area on the roof for those in
10  protective custody or total separation classifications, and installed an accessible toilet
11  with grab bars in that area, the jail staff does not permit individuals with disabilities to
12  use that area.  An alternative accommodation to building a new bathroom would be to
13  allow disabled detainees to use the bathroom area which is used by those in protective
14  custody and to create a protocol directing deputies to allow disabled detainees to use that
15  facility.

16        The ramp in the exercise area is too steep (slope of 10%) and lacks edge
17  protections and adequate handrails, posing a safety risk and making it inaccessible to
18  individuals with mobility impairments.  All of these barriers can be modified without
19  undue expense to make these areas of the jail fully accessible.

20        The phone and water fountain on the roof remain inaccessible but can be modified
21  without undue expense. Mr. Hopper noted that there were no alternate exercise apparatus
22  for individuals with disabilities, which would allow them to exercise in the same manner
23  as non-disabled detainees.  Such regular and targeted physical activity is crucial for the
24  health of persons with disabilities.

25        Lastly, the class room facilities used at the Men's Central Jail have many
26  inaccessible  features, including bathrooms which are not accessible to individuals with
27  mobility/dexterity impairments.
28  / / /

**2. Intake Release Center: Numerous Barriers and Inaccessible Features
Remain**

In the Intake Release Center (IRC), Mr. Hopper noted numerous physical barriers
to individuals with disabilities, each of which could be modified or removed to make the
facility fully accessible to individuals with disabilities.

For example, of the 14 barriers to accessibility in Mod J (used to house detainees
in protective custody) noted in Robertson's original report, none had been corrected.
Likewise, none of the court transfer cells, which detainees are placed in for hours while
they await transfer to and from court, have been made accessible on either the male or
female side of the loop.  Therefore, the 24 male cells and 10 female cells, which are
equipped with toilets and sinks, remain inaccessible to anyone with a mobility or
dexterity impairment.  All of these barriers can be modified without undue expense to
make these areas of the jail fully accessible.

None of the interviewing windows used to obtain vital information from
individuals during the booking process or other working surfaces were accessible (as
they all had inaccessible counter heights, and lacked knee and maneuvering space). All
of these barriers can be modified without undue expense to make these areas of the jail
fully accessible.

Only two cells, one for men and one for women, had any accessible features and in
both instances the toilet, sink, flush valve and toilet paper dispenser were not installed
correctly to make them fully accessible.  All of these barriers can be modified without
undue expense to make these areas of the jail fully accessible.  None of the cells, toilet
facilities, showers or common day areas in any of the housing modules in the IRC
provided any appreciable degree of accessibility, meaning that if any inmates with
physical disabilities are housed there, they would find "everyday functioning in such an
inaccessible environment to be almost impossible and potentially hazardous."

Female detainees are currently housed in either Section 13 or 14 of Module K of
the IRC, neither of which have any accessible cells for individuals with mobility or

dexterity impairments, nor has the outdoor recreation, phones, bunks  or shower areas available to these two sectors been modified in anyway to make them accessible for individuals with disabilities. All of these barriers can be modified without undue expense to make these areas of the jail fully accessible.

### 3. Women's Central Jail

If and when this jail is reopened for occupancy, significant modifications will need to be completed as none of the barriers to accessibility in the Women's Central Jail noted in Robertson's original report had been corrected.

### 4. Theo Lacy

None of the housing units at Theo Lacy, except for the Medical Unit, "Module O," have any accessible features for inmates, even though many were built during periods when UFAS and ADAAG would have required that a percentage of the housing areas be accessible.

Module O, where all disabled detainees are segregated, is also the area reserved for individuals who are ill, perpetuating the stereotype, disapproved by the ADA, that people with disabilities are medically sick and unable to participate in ordinary activities.  The only accessible showers in all of Module O are located in its "medical area" and in that area only one ward had a shower which would allow for wheelchair usage; even that shower had controls and grab bars that do not meet the accessibility standards.   The remainder of the showers in Module O, although required to be used by individuals with mobility and dexterity impairments, were not fully accessible.  All of these barriers can be modified without undue expense to make these areas of the jail fully accessible.  The dayrooms used by detainees in Module O had numerous inaccessible features.

### 5. James Musick Facility

Each of the housing units at James Musick has numerous inaccessible features, including steps, slopes exceeding the maximum gradients, and inaccessible toilets, sinks, and showers.  Musick's housing facilities could be made accessible to many types of

mobility disabilities with relatively minor, cost-effective and well placed physical improvements, even for many wheelchair users.

For example, the terrain at Musick is relatively level, making many of the housing, program and service areas generally accessible or modifiable for individuals with mobility impairments. The Musick facility has received numerous upgrades (installation of ramps, for example) to make parts of its facilities jail accessible to employees and the public, but has not made any modifications for inmate housing areas. Nonetheless, the County has informed plaintiffs that they do not intend to make any part of Musick, including the parts currently under construction, accessible to detainees or inmates with mobility or dexterity impairments.

## D.   DISABLED STILL LACK ACCESS TO PROGRAMS AND SERVICES EVEN THOUGH  REASONABLE ACCOMMODATIONS EXIST

Title II regulations required that the County complete a self-evaluation regarding the availability of programs, services and activities offered by the jails, which the County has not done despite this omission being noted by the Ninth Circuit in *Pierce*. 526 F.3d at 1223.  The regulations allow public entities to use a variety of methods to make existing facilities "readily accessible," including the reassignment of services to accessible buildings, and the alteration of existing facilities and the construction of new facilities.  28 C.F.R. 35.150(b)(1).  The regulations provide that "a public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance . . . .  In choosing among available methods for meeting the requirements of this section, a public entity shall give priority to those methods that offer services, programs and activities to qualified individuals with disabilities *in the most integrated setting appropriate." Id* (emphasis added).

### 1. James Musick Facility

At the time of the original trial of this matter in 2004/2005, the Ninth Circuit determined that Theo Lacy and Musick offered a variety of programs, services, and activities which were not available to inmates in the Men's Central Jail and the Women's

1   Central Jail.  *Pierce*, 526 F.3d at 1221.  Those programs, services and activities included

2   vocational, recreational and community work projects, softball, volleyball, pool tables

3   and indoor and outdoor recreation facilities.  *Id.*

4       Specifically, the Ninth Circuit determined non-disabled detainees had the

5   possibility of access to these programs offered exclusively at Musick, whereas disabled

6   detainees – "solely by virtue of their status as disabled – have no possibility of access to

7   the superior services offered outside of the Central Jail Complex."  *Id.* Furthermore, the

8   Court found that as of 2005, the County "had no plan to make any of its services

9   available at Musick or Theo Lacy accessible to disabled detainees housed in the Central

10  Jail." *Id*.

11      The disparity between services offered at Musick and the Central Jail Complex

12  remains stark to the current time: inmates at the Musick Facility are allowed to

13  participate in numerous vocational classes not offered at any of the other facilities,

14  including welding, horticulture, floral arrangement, stained glass-making, painting,

15  woodwork, and sewing; they have access to softball, volleyball and soccer fields; in

16  addition to unsupervised job opportunities on site, including gardening, painting and

17  repairs; and access to community work projects like sewing for disabled veterans. Over

18  forty separate programs are offered at Musick, including numerous educational

19  programs.

20      Detainees and inmates at Musick also have very extensive use of the green

21  outdoor spaces surrounding their dorms, which are equipped with picnic tables,

22  phones and areas for recreation.  By contrast, the disabled detainees confined to the

23  Men's Central Jail, IRC and Theo Lacy have no access at all to green outdoor space and

24  much less extensive use of any outdoor space.

25      Likewise, detainees and inmates at Musick also have nearly continual access to

26  their dayrooms (which are open to the bunk areas).  By contrast, the disabled detainees

27  confined to Sheltered Living cells in the Men's Central Jail or locked cells in Mod O in

28  Theo Lacy have very limited access to their dayrooms, sometimes no more   than two

1   hours per day.  Day rooms and outdoor recreation areas are the only locations where

2   inmates can make phone calls and exercise.

3        Because it would be difficult to make some of the types of programs available to

4   detainees at Musick available at the MCJ or the IRC (extensive vocational classes

5   requiring special work rooms, extensive outdoor recreation opportunities, work

6   programs, and regular and unrestricted access to the out of doors), those with disabilities

7   who are minimum risk inmates can be housed at Musick through simple modifications to

8   some of the housing dorms.

9        **2. Theo Lacy**

10       Detainees in Module O at Theo Lacy (which would include detainees with

11   mobility and dexterity impairments) are denied all access to the outdoor recreation

12   facilities located at Theo Lacy, which is called the "Green Sector."  The Green Sector

13   includes a large baseball field, volleyball court, horseshoe court, and a large grass area.

14   All non-disabled detainees at Theo Lacy are allowed to exercise in the Green Sector for

15   at least three hours per week, and have access to soft ball, volleyballs, soccer and

16   horseshoe equipment.

17       Moreover, the head of Theo Lacy, Lt. Krueger, admitted at deposition that there

18   was no logistical or safety reason why detainees with disabilities could not be offered

19   access to the green area.  Instead, detainees in Module O are restricted to exercising in an

20   interior room approximately 30' by 40' with a single basketball hoop.  Orange County

21   can easily accommodate the needs of the disabled for equal recreational opportunities by

22   giving them equal access to the Green Sector for outdoor recreation.

23       Theo Lacy has on its grounds a large building dedicated to providing vocational,

24   educational and other programs to detainees at Theo Lacy.  This building is called

25   the "Inmate Programming Building."  All non-disabled detainees and inmates

26   housed in Dorms A-H (approximately 700 men) are provided these programs and

27   services at this building.  However, detainees in Module O are denied all access to the

28   "Inmate Programming Building," even though the building is wheelchair accessible and

trial brief.wpd                              14

has an accessible bathroom in it.  Thus, disabled detainees are denied all access to the

building and the programs and services provided therein.

The programs and services offered to non-disabled detainees at the Inmate

Programming Building include: AA classes (English and Spanish); Software

Applications; Substance Abuse; GED instruction; ESL; Government Classes; Great

Escape (substance abuse program); Food Service Classes; Narcotics Anonymous; AIDS

Education; Re-Entry Services; Domestic Violence Classes; Parenting; Health, Workforce

Preparation and others.

By contrast, detainees with mobility impairments at Theo Lacy (who are housed

exclusively in Module O) are allowed to receive programs and services only in the two

tiny classrooms in that module. During the jail inspection, one of the two classes in

Module O's classrooms had no desks in it.  The other could accommodate 4-5

individuals at most.  Defendant's "person most knowledgeable" about modifications

within the jails, admitted that he has never seen a computer in either classroom in

Module O, the only classrooms in which the disabled are allowed in that entire jail

facility.  Documents produced by defendant describing all of the services they offer at

Theo Lacy reveal that over the past year, the only services or programs provided to

individuals who are housed in Module O at Theo Lacy are religious services.

Thus, those with disabilities at Theo Lacy have not been offered *any of the classes*

set forth  above.  They have not been offered any vocational, educational, or

rehabilitative classes, in stark contrast to the host of offerings at the Inmate Programming

Building, from which they are categorically excluded due to their status as

"disabled detainees."

Moreover, there is no logistical or safety reason why detainees with disabilities

could not be allowed to take programs and classes at the Inmate Programming Building.

Orange County can easily accommodate the needs of the disabled to equal educational

and program opportunities by giving them equal access to the Inmate Programming

Building and the wealth of courses provided there.

Individuals with disabilities are also categorically excluded from two specific programs which are offered to non-disabled detainees: the "Community Work Program," and the "Phoenix House New Start Program."

Theo Lacy has many minimum security housing units, including 7 dorm style units housing 100 men each (Dorms A-H, excluding E), and octagonal shaped buildings, consisting of 6 sectors, each holding double or multiple bunk cells. Theo Lacy was "substantially renovated in the late 1990s." *Pierce,* 526 F.3d at 1221, n. 37. Dorms A-D in Theo Lacy (minimum security dorm style housing) underwent a major renovation to their living spaces in 2003 as well, costing over $2 million. Each open dorm at Theo Lacy has its own guard station attached and is subject to constant visual and video surveillance, as well as regular security checks by guards.  Each open dorm at Theo Lacy is built around a central grassy courtyard where detainees can go outside and make phone calls or eat at the picnic tables.  Detainees in the open dorms at Theo Lacy have very liberal dayroom access and have much more than the two hours per day in the day room provided nearly all disabled detainees. The non-disabled individuals housed in these open dorms often have access to the day room 12 hours per day.

### 3. Men's Central Jail

 Individuals who are housed in the Sheltered Living cells in the MCJ because they have mobility impairments (e.g. wheelchair, prosthetic, cane or walker), are  required to stay locked in their small cells for all but two hours a day, when they are permitted to go to the day room.  This contrasts with most dorm-like cells in the Men's Central Jail, Theo Lacy, IRC and Musick, used by non-disabled detainees, where detainees often have a dayroom attached to their cells and are allowed to go into the dayroom (where there are phones, showers, television, games and books) for many hours per day (in some case 6 a.m. to 11 p.m.).   The policy of giving disabled detainees in Sheltered Living day room for only two hours per day, while allowing open ended dayroom to non-disabled detainees, violates the requirement that jails provide equal benefits and services to detainees with disabilities.

Moreover, the only day room available to detainees who are housed in the Sheltered Living Cells of the MCJ is approximately 8' x 11', provides no room for exercise, and is less well equipped with games, magazines and books than the dayrooms provided to nondisabled detainees. Moreover, detainees with mobility/dexterity impairments in Ward C, D and Sheltered Living are regularly denied the ability to participate in roof, chapel or educational classes, while non-disabled detainees are offered the ability to recreate and participate in religious and educational programs.

**E.   DEFENDANT CANNOT MEET ITS BURDEN BY SHOWING THE REQUESTED ACCOMMODATIONS REQUIRE A FUNDAMENTAL ALTERATION OR UNDUE BURDEN**

Defendant cannot meet its burden of showing that ADA compliance would result in undue financial and administrative burdens, as Defendant has submitted no written statement by the head of the Orange County jails indicating available resources to make jails ADA compliant.   Instead, defendant's Memo of Contentions suggests that it will continue to use general and formulaic allegations in lieu of specifying actual facts to support its claim.

Where personnel of a public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with Section 35.150(a) of this part would result in such alteration or burdens.  The decision that compliance would result in such alteration or burdens must be made by the head of the public entity or his designee after considering all resources available for use in the funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion.  28 C.F.R. 35.150(a)(3); *Pierce*, 526 F.3d at 1215.

The County has not made any effort to assess the cost of making any of the architectural barriers identified in *Pierce v. Orange County* accessible and ADA compliant.  Instead of specifying actual facts, defendant makes vague allegations of

"budgetary constraints," "financial difficulties" and a "likelihood" that some class would be eliminated. Furthermore, the "person most knowledgeable" produced by the County on the issue of the cost of modifications to bring the jails into compliance with the ADA did not have an estimate of the cost of any modification proposed by the plaintiffs' expert in 2004 (Robertson report), or identified by the Ninth Circuit in *Pierce v. Orange County*. Ron Bihner, the person identified as most knowledgeable about actual modifications made over the years to the jails, admitted that the cost to make a cell accessible (by installation of an accessible toilet, sink and grab bars) is approximately $5,000; the cost of making a shower accessible is approximately $4-5000 (assuming a large enough space).

## F.    DEFENDANT CANNOT SHOW THEY HAVE MADE REASONABLE ACCOMMODATIONS

Plaintiffs' original expert, Peter Robertson, recommended a number of structural and non-structural accommodations, which, as a matter of law, met plaintiffs' prima facie requirement of showing "the existence of . . . reasonable accommodation[s] that would enable them to make use of the facilities. *Pierce*, 526 F.3d at 1219. Plaintiffs' current expert, Logan Hopper, has also recommended a number of reasonable accommodations which would enable mobility and dexterity-impaired inmates to make use of the facilities. Nonetheless, defendant continues to propose a number of "accommodations" which are not only unreasonable, but unlawful. A court may consider, with deference to the views of facility administrators, a detention or correctional facility's legitimate interests in maintaining security and order in operating an institution in a manageable fashion. *Id.* However, if a correctional facility has done nothing to attempt to make services equally accessible to the disabled at its several facilities, it has not come up with a good faith accessibility plan, and hence the court need be less deferential. *Id.* at 1221.

For example, Title XV of the California Code of Regulations prohibits inmates from assisting each other with personal care or needs. In other words, requiring other disabled detainees to assist a disabled detainee to use a shower or restroom facility, in

lieu of making structural modifications, is an unreasonable and inadequate curative method. *Id.* at 1219.

Moreover, a correctional facility can maintain "inaccessible bathrooms, sinks, showers, and other fixtures in the housing areas and common areas assigned to mobility and dexterity impaired detainees" *only* if it demonstrates some legitimate rationale for maintaining these services in an inaccessible state. *Id.* at 1220. Vague assertions that an accommodation might be costly "cannot be construed as a legitimate basis for failing to comply with the ADA (whether through structural modifications or other reasonable methods)." *Id.*

Defendant has not provide any evidence of a legitimate rationale for maintaining such inaccessible fixtures other than vague assertions of costliness.

## G.   INADEQUATE ADA NOTICE OF RIGHTS AND COMPLAINT PROCEDURE IN THE ORANGE COUNTY JAILS

The Orange County Jails still do not have any procedure by which they inform all detainees and inmates of their rights under the ADA, as required by the federal regulations. 28 C.F.R. §§35.106, 35.107.  Additionally, the Orange County Jails do not have in place any grievance procedure  for detainees with disabilities, as required by the federal regulations.  28 C.F.R. §§ 35.106, 35.107.

## H.   THIS COURT HAS THE ABILITY TO ORDER BROAD INJUNCTIVE RELIEF

The Ninth Circuit in *Pierce* granted the district court broad powers to "order remedial measures as required to make the County's provision of programs and services, when viewed in their entirety, accessible to mobility- and dexterity-impaired inmates." *Pierce*, 526 F.3d at 1226.  Specifically, this court has the ability to order broad injunctive relief so that 1) disabled prisoners may adequately access "bathrooms,  showers, exercise areas, day rooms, dining rooms, cells and all other areas to which [they] should have

/ / /

/ / /

1  access" and 2) the "County's provision of programs and services, when viewed in their

2  entirety, [are] accessible to mobility- and dexterity-impaired inmates. *Id.*

3

4  DATED: February 2, 2010                    Respectfully submitted,

5                                             HADSELL STORMER KEENY
                                                  RICHARDSON & RENICK LLP
6

7
                                             By   s - Virginia Keeny
8                                                 Virginia Keeny
                                             Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28