UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FRED PIERCE, et al.; | SACV 01-981 ABC (MLGx) |
| Plaintiffs, | ORDER RE: PLAINTIFFS' MOTIONS FOR ATTORNEY'S FEES AND COSTS; PLAINTIFFS' REQUEST TO TAX COSTS |
| v. | |
| COUNTY OF ORANGE, et al.; | |
| Defendants. | |

Pending before the Court are two motions for attorney's fees filed by Plaintiffs Fred Pierce, et al.: the first was filed on July 31, 2009 and supplemented on August 12, 2011 (Docket Nos. 665, 793); and the second was filed on August 12, 2011 (Docket No. 792). Defendants County of Orange, et al. (the "County") opposed the current motions on September 29, 2011 and Plaintiffs replied on October 7, 2011.  The Court found these matters appropriate for resolution without oral argument and vacated the hearing date.  (Docket No. 807.) Also pending is Plaintiffs' request to tax costs, referred to the Court by the Court Clerk to resolve prevailing-party and degree of success issues.  (Docket Nos. 783, 798.)  The Court rules as follows.

**BACKGROUND**

This case began in 2001, when Plaintiffs, representing a class of pre-trial detainees in Orange County jails, filed a lawsuit against the County under 42 U.S.C. § 1983 for violations of their Fourteenth Amendment due process rights for the County's operation of the County jails in an unconstitutional manner, including depriving detainees of opportunities for exercise and restricting their ability to practice religion.  The case also eventually encompassed allegations that the County was violating fourteen existing injunctions entered in Stewart v. Gates, 450 F. Supp. 583 (C.D. Cal. 1978) (the "Stewart injunctions"), which set standards for pre-trial detention in Orange County jails.  Plaintiffs also sought relief for the same injuries under, inter alia, the due process clause of the California Constitution.  In addition, Plaintiffs pursued claims under § 1983 for the denial of equal treatment for disabled detainees and claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and California law for non-compliant jail facilities and denial of access to programs and services available to non-disabled detainees.

After a six-day trial, the Court entered judgment in favor of the County on all of Plaintiffs' § 1983 claims and ordered that all fourteen Stewart injunctions be terminated pursuant to the Court's authority under the Prison Litigation Reform Act, 18 U.S.C. § 3626(b)(3) ("PLRA").  (Docket No. 574.)  The Court also found no ADA or equal protection violations.  Plaintiffs appealed.

The Ninth Circuit Court of Appeals issued a lengthy opinion, affirming in part, reversing in part, and remanding the case.  See Pierce v. County of Orange, 526 F.3d 1190 (9th Cir. 2008).  The court

affirmed the termination of twelve of fourteen <u>Stewart</u> injunctions and
the related judgment finding no constitutional violations on those
issues, but reversed the termination of two of them, which secured
inmates housed in administrative segregation some minimal access to
religious services and exercise. <u>Pierce</u>, 526 F.3d at 1196.  The court
also reversed the finding of no ADA violations, determining that the
ADA was violated "because of physical barriers that deny disabled
inmates access to certain facilities (bathrooms, showers, exercise and
other common areas), and because of disparate programs and services
offered to disabled versus non-disabled inmates." <u>Id.</u>  The court
remanded the two <u>Stewart</u> injunctions with instructions to this Court
to reinstate them and "enjoin violation under § 1983." <u>Id.</u> at 1213.
The court remanded the ADA claims for further proceedings,
particularly so that this Court could make further findings on the
appropriate relief to be granted. <u>Id.</u> at 1223.  In the meantime, the
Court of Appeals awarded interim fees to Plaintiffs of $143,472.60 for
prevailing on appeal. (Keeny Const. Decl., Ex. H.)

On August 26, 2008, this Court entered a permanent injunction
consistent with the Court of Appeals' ruling on the constitutional
claims. (Docket No. 621.)  The Court then held a bench trial on the
ADA claims over several days between February and June 2010 and issued
lengthy findings of fact and conclusions of law identifying wide-
spread violations of the ADA in the County's jail facilities and
detailing the specific injunctive relief needed to address those
violations. (Docket No. 752.)  After the parties conducted further
negotiations and discussed various issues with the Court, the Court
entered a final judgment and permanent injunction in the form of an
extensive, detailed "Amended Final Plan" on June 28, 2011, which

1 included oversight by a Court-appointed monitor.  (Docket Nos. 779,

2 780.)

3      After remand and after the injunction on the constitutional

4 claims was entered, but before further proceedings were held regarding

5 the ADA claims, Plaintiffs moved for an award of attorney's fees

6 pursuant to § 1988 and California Code of Civil Procedure section

7 1021.5 for work done on the <u>Stewart</u> orders.  (Docket No. 684.)  The

8 Court declined to award fees at that time, but ruled on several legal

9 issues related to the motion, namely that Plaintiffs were the

10 prevailing parties under § 1988 and section 1021.5, but that some

11 reduction may be necessary to reflect Plaintiffs' limited success on

12 those issues, and that the PLRA capped the hourly rates for fees

13 expended in litigating constitutional claims.  The Court declined to

14 decide what reduction was appropriate for Plaintiffs' limited success

15 and what portion of the fees expended to that point was attributable

16 to the constitutional claims (which are capped by the PLRA) and what

17 portion was attributable to the ADA claims (which are not capped).

18      Plaintiffs have renewed their prior motion for attorney's fees

19 for prevailing on the constitutional claims and have separately moved

20 for attorney's fees expended on the ADA claims both pre- and post-

21 appeal.

22                          **LEGAL STANDARDS**

23      The pending fees motions implicate the interaction among several

24 statutes providing for attorney's fees.  When a civil rights plaintiff

25 prevails on claims brought pursuant to § 1983, § 1988 provides for an

26 award of attorney's fees.  42 U.S.C. § 1988(b) ("[T]he court, in its

27 discretion, may allow the prevailing party, other than the United

28 States, a reasonable attorney's fee as part of the costs[.]").

                                    4

California Code of Civil Procedure section 1021.5 provides for
attorney's fees if a plaintiff achieves a "significant benefit" from
enforcing an "important right affecting the public interest."  Cal.
Code Civ. P. § 1021.5.  This is a prison reform case, however, so the
assessment of attorney's fees is affected by the PLRA, which was
passed in 1996 and changed the application of § 1988 to § 1983 claims
brought by prisoners.  See 42 U.S.C. 1997e(d); Martin v. Hadix, 527
U.S. 343, 349-50 (1999).  The PLRA limitations apply to plaintiffs
seeking to enforce judgments based upon constitutional violations.
See Webb v. Ada County, 285 F.3d 829, 834 (9th Cir. 2002) ("[I]t is
apparent that Congress intended that a plaintiff is entitled to fees
incurred in enforcing a judgment entered upon proof that the
plaintiff's constitutional rights had been violated.").  As relevant
here, the PLRA caps hourly rates for attorneys representing prisoner-
plaintiffs.  Martin, 527 U.S. at 349-50.  The Court previously ruled
that this cap applies in this case to all fees expended on Plaintiffs'
constitutional claims, even though Plaintiffs sought fees under both §
1988 and section 1021.5.

        The ADA also provides that the Court may award "a reasonable
attorney's fee, including litigation expenses, and costs," to the
"prevailing party," 42 U.S.C. § 12205, and "a prevailing plaintiff
under a statute so worded 'should ordinarily recover an attorney's fee
unless special circumstances would render such an award unjust.'"
Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir.
2002) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)).  The
PLRA limitations on hourly rates do not apply to claims brought by
prisoners under the ADA.  See Armstrong v. Davis, 318 F.3d 965, 974
(9th Cir. 2003).

1   Once a party is considered "prevailing," the Court must determine

2   the reasonable amount of fees by calculating the "lodestar," that is,

3   multiplying the number of hours reasonably spent by a reasonable

4   hourly rate.  <u>Hensley</u>, 461 U.S. at 433.  "The fee applicant bears the

5   burden of documenting the appropriate hours expended in the litigation

6   and must submit evidence in support of those hours worked."  <u>Gates v.</u>

7   <u>Gomez</u>, 60 F.3d 525, 534 (9th Cir. 1995) (quotation marks and citations

8   omitted).  Once that burden is carried, "[t]he party opposing the fee

9   application has a burden of rebuttal that requires submission of

10  evidence to the district court challenging the accuracy and

11  reasonableness of the hours charged or the facts asserted by the

12  prevailing party in its submitted affidavits."  <u>Id.</u> at 534—35.

13      After the "lodestar" is calculated, the Court may reduce the fee

14  based upon the "'results obtained.'"  <u>Hensley</u>, 461 U.S. at 434.  In

15  doing so, the Court must ask two questions: (1) "did the plaintiff

16  fail to prevail on claims that were unrelated to the claims on which

17  he succeeded?"; and (2) "did the plaintiff achieve a level of success

18  that makes the hours reasonably expended a satisfactory basis for

19  making a fee award?"  <u>Id.</u>; <u>see also</u> <u>Sorenson v. Mink</u>, 239 F.3d 1140,

20  1147 (9th Cir. 2001).  On the first question, the Court must determine

21  whether the claims "involve a common core of operative facts" or were

22  "based on related legal theories" because, in that case, "[m]uch of

23  counsel's time will be devoted generally to the litigation as a whole,

24  making it difficult to divide the hours expended on a claim-by-claim

25  basis."  <u>Hensley</u>, 461 U.S. at 435.  On the second question, the Court

26  "should focus on the significance of the overall relief obtained by

27  the plaintiff in relation to the hours reasonably expended on the

28  litigation."  <u>Id.</u>  "A plaintiff may obtain excellent results without

receiving all the relief requested." Sorenson, 239 F.3d at 1147.

DISCUSSION

## I.   THE PARTIES' POSITIONS[1]

This fee application is complicated because Plaintiffs' work was done both for constitutional and ADA claims and both pre- and post-appeal. First, Plaintiffs calculate that their attorneys spent 8,836 hours on pre-appeal work reasonably attributable to both their constitutional and ADA claims. (Keeny Const. Decl. ¶ 21.[2]) They arrived at that number by eliminating hours spent on the following: (1) all work attributable to individual Plaintiff Timothy Conn's claims, which were settled; and (2) all hours that were unnecessarily duplicative, did not significantly contribute to the prevailing claims, and were spent on claims on which Plaintiffs did not prevail.[3] Plaintiffs also excluded 327 hours spent exclusively on ADA claims because those hours would not be split with the constitutional claims (although they then added those hours back into the total pre-appeal work done on ADA claims, see footnote 20, infra).

Next, because hours spent on pre-appeal constitutional claims are capped by PLRA hourly rates and hours spent on pre-appeal ADA claims

---

[1]The parties have each objected to certain evidence offered by the other side. To the extent those objections are inconsistent with the Court's rulings here, they are OVERRULED.

[2]Virginia Keeny filed separate declarations for the work done on Plaintiffs' constitutional and ADA claims, so the Court will refer to each one as the "Keeny Const. Decl." and the "Keeny ADA Decl." Ms. Keeny filed a consolidated reply declaration, which the Court refers to as the "Keeny Reply Decl."

[3]Plaintiffs' counsel lists several types of matters eliminated from the total hours spent, which reflect a helpful self-assessment of the time that did not contribute to Plaintiffs' overall success. (Keeny Const. Decl. ¶¶ 19(c), 20.)

7

are not, Plaintiffs argue that a 50%/50% division between capped and
uncapped hours is reasonable under the circumstances.  Thus,
Plaintiffs seek 4,418 pre-appeal hours reasonably attributable to
their constitutional claims (id. ¶¶ 22—32),[4] which Plaintiffs argue
should be reimbursed at the maximum hourly rate allowed under the
PLRA, a contention the County does not meaningfully dispute.  Thus,
Plaintiffs claim the lodestar for pre-appeal constitutional claims is
$796,012.94.

Plaintiffs next argue that the reasonable number of hours for
their pre-appeal work on ADA claims should be 4,418, plus 327 hours
that were devoted solely to pre-appeal ADA claims.  They argue that
their counsel's current hourly rates, which range from $450 to $825
per hour for attorneys and $160 to $250 per hour for paralegals and
law clerks, are reasonable for those hours.  (Id. ¶ 70.)  Thus, they
claim the lodestar for work on their pre-appeal ADA claims is
$1,914,196.

Plaintiffs also claim that they spent 1,397.48 hours on post-
appeal work, all of which was devoted to ADA claims, and the lodestar
should be $594,088.  Plaintiffs seek a multiplier of 1.5 under state
law for all fees spent on ADA claims both pre- and post-appeal.

With the exception of the PLRA-capped hourly rates, the County
vigorously disagrees with Plaintiffs' request.  First, it attacks the
hours spent on various grounds.  For example, the County requests that
an initial blanket 8.5% reduction be imposed for all claimed pre-

---

[4]Because there appears to be some disagreement on the hours at
various places in Plaintiffs' papers, the Court takes the total number
of claimed hours from the chart included both in Plaintiffs' brief and
in Ms. Keeny's declaration for the constitutional claims at paragraph
32.

appeal hours because one attorney — Richard Herman — improperly calculated his total hours at 716.15, when the total was 660.25. After this initial reduction, the County targets specific pre- and post-appeal billing entries for elimination for various reasons: (1) time entries were duplicative; (2) entries were vague and ambiguous; (3) time was "block billed"; (4) attorneys billed for performing clerical work; (5) attorneys billed for unsuccessful and unnecessary work; and (6) even for the work Plaintiffs claim to have excised, the billing entries are "replete" with instances where that work was not eliminated.[5]  Further, in the County's view, the proper split of pre-appeal hours spent on constitutional and ADA claims is not 50%/50%, but 75%/25%, so, of the compensable hours spent before appeal, three-quarters should be attributed to the PLRA-capped constitutional claims, while one-quarter should be attributed to the non-capped ADA claims.  The County then argues that the amount for the constitutional claims should be further reduced by 75% to reflect Plaintiffs' limited degree of success because Plaintiffs prevailed in the Ninth Circuit on only two of the 14 <u>Stewart</u> orders related to the constitutional claims.  The County also disputes the reasonableness of Plaintiffs' proposed hourly rates for work on the ADA claims and opposes any multiplier for that time.

In reply, Plaintiffs oppose the County's requests for major hours-specific reductions, such as the blanket 8.5% reduction, the 75%/25% split, and the 75% reduction for degree of success on the

---

[5]The County has created different charts listing the pre-appeal hours it claims must be eliminated based on each type of objection. (Cha Decl. ¶¶ 4—15, Exs. E—P.)  For post-appeal hours, the County simply included handwritten notations of objections next to Plaintiffs' time entries.  (Cha Decl., Ex. S.)

constitutional claims.  Plaintiffs also oppose the hour-specific

objections, although they concede that at least some hours can be

excised for the reasons the County identified.  Plaintiffs voluntarily

excised the following hours:

- A total of 625.7 hours for admittedly clerical work (Keeny
  Reply Decl. ¶ 7, Ex. 1);

- 91 hours for law clerk Jimmy Alamillo (<u>id.</u> ¶ 22);

- 6.2 hours for attorney Lisa Holder (<u>id.</u> ¶ 29);

- 7.7 hours for attorney Hernaldo Baltodano (<u>id.</u> ¶ 35);

- A total of 66 hours spent on dismissed Plaintiffs (<u>id.</u> ¶ 47,
  Ex. 2); and

- A total of 25.15 hours spent on post-appeal clerical work
  (<u>id.</u> ¶ 8, Ex. 3).

Otherwise, Plaintiffs maintain that their counsel's hourly rates for

the ADA claims are reasonable and a multiplier under state law is

justified for their ADA/disability claims.

## II.   FEES FOR WORK ON PRE-APPEAL CLAIMS

### A.   Hours-specific Reductions for Pre-Appeal Work

Because the County repeated nearly verbatim the same objections

to the pre-appeal hours spent on the constitutional and ADA claims,

the Court addresses them together below to determine the reasonable

number of hours spent on all pre-appeal work.

#### 1.   <u>Blanket Reduction of 8.5%</u>

The Court rejects the County's request to initially reduce all

hours spent by 8.5% because one attorney — Richard Herman — spent a

total of 660.25 hours, rather than 716.15 hours, because the County's

calculation is incorrect.  As Plaintiffs point out, Herman's time

records submitted in support of the original motion reflected total

hours of 716.15, voluntarily reduced by 59.9 hours to 656.25 hours

1   (that is, below the County's calculation).  (Docket No. 665, Herman

2   Decl., Ex. A.)  In the current supplemental request, Plaintiffs

3   further reduced those hours by 76 because those hours fell into the

4   categories Plaintiffs used to eliminate non-compensable hours, such as

5   time spent on Plaintiff Conn, on unsuccessful claims, and on only the

6   ADA claims.  Further, even if the County's numbers were accurate, this

7   minor calculation error would not justify a blanket 8.5% reduction for

8   the hours spent by all attorneys, law clerks, and paralegals.

9              2.   Work Before the Second Amended Complaint

10       The County claims that none of the work done before Plaintiffs

11  filed the Second Amended Complaint is compensable because, until that

12  point, Plaintiffs raised only unsuccessful issues related to

13  individual Plaintiff Pierce's personal and class claims for

14  overdetention, strip search, and overcrowding and Plaintiffs did not

15  mention the ADA until the Second Amended Complaint or assert any ADA

16  claims until the Fifth Amended Complaint.  The County submits a chart

17  that purports to identify 103.4 hours falling into that category.

18  (Cha Decl., Ex. I.)  Plaintiffs do not dispute the County's

19  characterization of the Second Amended Complaint, but argue that the

20  work up to that point was necessary for the claims on which they

21  ultimately prevailed.

22       In some circumstances, "time reasonably spent on pre-complaint

23  investigation, legal research and informal discovery relevant to

24  developing the theory of the case is properly recoverable[.]"  Lucas

25  v. White, 63 F. Supp. 2d 1046, 1058 (N.D. Cal. 1999).  Indeed, Federal

26  Rule of Civil Procedure 11 requires some pre-complaint investigation

27  to ensure claims are "warranted by existing law or a nonfrivolous

28  argument for extending, modifying, or reversing existing law or for

1   establishing new law" and are likely to have "evidentiary support."

2   Id. at 1059.

3       Here, most of the time entries identified by the County at least

4   arguably related to the overall strategy in the case and preparation

5   of the Second Amended Complaint and the litigation that followed.  For

6   example, Dan Stormer spent most of the 15.1 hours the County has

7   targeted on reviewing documents, conducting research, and making

8   calls, all of which could relate to broader issues than simply the

9   issues raised in the original or First Amended Complaints.  Similarly,

10  Richard Herman interviewed inmates and other witnesses regarding jail

11  conditions, researched issues raised by a motion to dismiss, prepared

12  for a Rule 26 conference, and discussed possible settlement, which is

13  all work that could have proved useful even after the Second Amended

14  Complaint was filed.  Thus, no deduction from these hours is warranted

15  for this reason.

16          3.   Duplicative, Unnecessary, and Excessive Work

17      The County identifies two categories of entries that it views as

18  duplicative, unnecessary, and excessive.  First, the County seeks to

19  reduce by two-thirds 379.65 hours spent on deposition summaries (see

20  Cha Decl. ¶ 6, Ex. G), including 91 hours spent by Jimmy Alamillo.

21  Second, the County seeks to reduce the time spent by Herman between

22  December 2002 and January 2004, and again between February and October

23  2004, to observe the litigation.  (Cha Decl. ¶¶ 4, 7, Exs. E, H.)

24  Although the County does not specify how many hours should be

25  eliminated for observation, Exhibits E and H identify Herman entries

26  totaling 49.7 hours, so the Court presumes that to be the number

27  targeted for reduction.  The County also seeks to eliminate the 17.9

28  hours Herman spent on publicity and media interactions (Cha Decl. ¶

                                    12

14, Ex. O) and to reduce from 40.9 hours to 30 hours the time Herman spent attending trial for four days.   The Court is not persuaded that these deductions are necessary.

First, this case involved over sixty depositions, so the 379.65 hours spent on summarizing them represents an average of roughly six hours per deposition, which is a reasonable amount of time to spend on this task.   Even so, Plaintiffs voluntarily cut 91 hours from that total from an admitted billing error with Alamillo, reducing the total hours sought to 288.65, or an average of around five hours per deposition.   No further deduction is warranted.[6]

Second, the County is wrong that Herman did nothing more than observe and monitor the litigation between December 2002 and October 2004.   His time entries reflect — and Plaintiffs' counsel attests — that he met with inmates, participated in litigation strategy, reviewed briefs, and communicated with opposing counsel and witnesses (Keeny Reply Decl. ¶ 23), so reducing the time he spent participating in the case and attending trial is not justified.   Moreover, public relations work undertaken by civil rights counsel is compensable, so long as it is "directly and intimately related to the successful representation of a client."   Davis v. City & County of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992), vacated in other part by 984 F.2d 345, 345 (9th Cir. 1993); cf. Gates v. Gomez, 60 F.3d 525, 535 (9th

_____

[6]The County also objects that the time entries do not identify whose deposition is being summarized.   This information is only useful to the extent the County would like to attack specific time devoted to a particular deposition (e.g., it would be unreasonable to spend 14 hours summarizing a 60-page deposition).   That is a waste of time for all involved: some depositions were surely longer than others, so the average time per deposition was reasonable and the Court finds no reason to parse the hours any more finely than that.

1  Cir. 1995) (rejecting compensation for an attorney's attendance at an
2  annual conference and for unspecified "media contact" because "[t]hese
3  are the kinds of activities that attorneys generally do at their own
4  expense.").  Herman's time entries for public relations work,
5  including calls to and interviews with the press, appear to be
6  "directly and intimately related to" this high-profile case
7  challenging the conditions in the Orange County jails.  Not only were
8  these contacts related to this specific litigation, but they may well
9  have been one way to pressure the County to change its policies to
10 ameliorate unconstitutional conditions.  This work is therefore
11 compensable.

12                  4.   Vague Billing Entries

13      The County has compiled a list of entries it believes are "vague"
14 and requests that the Court reduce the identified entries an average
15 of roughly 40%.  (Cha Decl. ¶ 7, Ex. H.)  This request is flawed in
16 two respects.  First, the County argues that these entries do not
17 provide enough information to determine whether the hours claimed were
18 "reasonably expended," but the County does not suggest, even by way of
19 example, what information was missing.  Any further detail might
20 compel Plaintiffs to reveal attorney-client privileged and work-
21 product-protected information or might put inmates at risk, which puts
22 Plaintiffs in the unenviable position of giving up fees in order to
23 preserve privileges and safety.  See Gates, 60 F.3d at 535
24 (recognizing the need to withhold inmate names and other information
25 in billing entries to prevent retaliation and preserve privileges).
26 Plaintiffs provided enough detail for the Court to identify at least
27 the "'general subject matter'" of the entries, and the County has not
28 carried its burden to demonstrate otherwise.  See Davis, 976 F.2d at

1542; see also Lytle v. Carl, 382 F.3d 978, 989 (9th Cir. 2004)

("Although the District claims that the records submitted by Lytle's

attorneys were not descriptive enough to support the hours claimed,

[p]laintiff's counsel . . . is not required to record in great detail

how each minute of his time was expended." (brackets and ellipsis in

original; internal quotation marks omitted)).

    Second, even if the Court were to agree that these entries are

vague, the County has provided no justification for an average 40%

reduction in the hours expended.  For a reduction of more than 10% — a

"haircut" — the Court must give a "specific explanation."  Moreno v.

City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008).  While the

County proposes eliminating some entries entirely, it does not explain

why many of the entries should be reduced, rather than eliminated,

when they have vague explanations.  For example, if an entry for 2.0

hours devoted to "research" is vague as the County contends, then why

should the Court award 1.2 hours for the same vague entry?  The

County's reduction appears to be arbitrary and the Court cannot

identify a cogent reason to impose it.  See id. at 1116 ("If opposing

counsel cannot come up with specific reasons for reducing the fee

request that the district court finds persuasive, it should normally

grant the award in full, or with no more than a haircut.").[7]

        5.   Block Billing

    The County has also compiled a list of entries it believes were

impermissibly "block billed" and, as with the claimed vague entries,

argues that each block-billed entry should be reduced by at least one-

_____

        [7]Plaintiffs agreed to strike 6.2 hours spent by Lisa Holder
closing out files, a clerical task, even though the County proposed
only a 2.1 hour reduction for this entry.  (Cha Decl., Ex. H at 158.)

third.  (Cha Decl. ¶ 4, Ex. E.)  The County argues that this block billing "makes it impossible for the Court to determine if any of the work performed overlapped with another attorney's work, if the amount of time purportedly spent on a given task was reasonable, or if it was relevant to the success or failure of the lawsuit."  (Opp. 7.)

"Block billing" is "'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007). Because the "fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked," the Court may reduce hours that have been block-billed "because block billing makes it more difficult to determine how much time was spent on particular activities."  Id. at 948.  To impose a reduction, however, the Court must "'explain how or why . . . the reduction . . . fairly balance[s]' those hours that were actually billed in block format."  Id. (ellipsis and brackets in original).

A reduction for block-billed hours may not be appropriate if "individual tasks are specified" and the entries are "detailed enough for the Court to assess the reasonableness of the hours billed." Campbell v. Nat'l Passenger R.R. Corp., 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010).  Even if a reduction is warranted, courts generally impose only a 5% to 20% reduction for those hours block-billed.  See, e.g., Welch, 480 F.3d at 948 (approving 20% reduction of hours block-billed); Robinson v. Plourde, 717 F. Supp. 2d 1092, 1100 (D. Haw. 2010) (15% reduction); Synagro Techs., Inc. v. GMP Haw., Inc., Case No. Civ. 04-0509 SPK/LEK, 2007 WL 851271, at *13 (D. Haw. Mar. 15,

2007) (5% reduction).

The Court has reviewed the entries challenged for block billing and finds them to be sufficiently detailed to give the Court an accurate sense of the tasks performed during each billed period.[8] This detail undermines the County's arguments that these block-billed entries prevent it from determining which tasks were relevant to winning claims and whether the tasks overlapped with other attorneys' work. Nevertheless, as with all block billing, these entries run the risk that the time spent was inflated, even if only slightly, and do not allow the Court to precisely determine whether the time devoted to each individual task was reasonable. See Welch, 480 F.3d at 948 (citing report by the California Bar Association that block billing "'may increase time by 10% to 30%'" and noting that block billing

---

[8]The example from paralegal Anne Golden's November 21, 2004 entry for 8.5 hours is a model of the detail included in these billing entries:

> Looked up rules for exhibits on Court web[site] and printed rules; helped Rob find some documents from exhibit list; called Orange County jail to see if inmates I'm visiting tomorrow are still in jail; spoke with Bryan and VK re: Landry's declaration and going to jail tomorrow; wrote Landry's declaration from survey and deposition, double-checked medications on-line, double-checked declaration to make sure it didn't contradict survey [or] deposition; made copies of depositions and surveys to bring to jail tomorrow; printed 2 copies of all declarations to bring with me to jail; reviewed exhibits copied by Rob, checked on exhibit list what has been copied; filed exhibits; wrote e-mail to VK re: my work today and assignments for tomorrow; made spreadsheet of Landry's contradictions between deposition and survey; changed font size of all declarations and made several editorial changes for declarations to bring to jail

(Cha Decl., Ex. E at 56—57.)

presents difficulty in determining reasonableness).  The Court believes that a 5% reduction in the hours identified is the deepest cut justified here.  See Moreno, 534 F.3d at 1112 (allowing up to a 10% cut "without a more specific explanation").[9]

### 6.  Clerical Tasks

The County has created a nearly 60-page chart identifying a total of 980.7 hours it believes were devoted solely to clerical work and should not be compensated as part of a fee award.  (Cha Decl. ¶ 5, Ex. F.)  Plaintiffs do not dispute that purely clerical work is not compensable at attorney or paralegal rates.  See Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Davis, 976 F.2d at 1536.  In fact, Plaintiffs agreed that 625.7 hours of the hours identified by the County — a surprising 64% — can properly be cut as non-compensable clerical work, which includes all the challenged time entries for nine attorneys and paralegals.  (Keeny Reply Decl. ¶ 7, Ex. 1.)

Plaintiffs argue that the remaining 355 hours were devoted to more than just clerical tasks, and the Court agrees.  Other than for those individuals whose total identified time was eliminated, Plaintiffs did not identify the precise entries they believe involved more than just clerical work, which somewhat hampers the Court's ability to assess Plaintiffs' position.  Nevertheless, the Court has

---

[9]The 5% cut results in the following deductions for each time keeper listed in Exhibit E of the Cha declaration: 12.65 hours for Anne Golden; .37 hours for Dan Stormer; 12.8 for Hernaldo Baltodano; 2.7 for Lisa Holder; .9 for Lauren Teukolsky; .25 for Marco Simons; 14.58 for Virginia Keeny; and 1.84 for Richard Herman.  (Cha Decl., Ex. E.)  The deduction for Golden was taken from a total of 78.9 hours identified because Plaintiffs conceded that 8.7 hours was not compensable.  Likewise, the deduction for Baltodano was taken from a total of 101.9 hours identified because Plaintiffs conceded that 7.7 hours was not compensable.

reviewed the challenged entries and finds that, overall, compensation

for 355 hours of non-clerical work is reasonable.  For example,

Plaintiffs seek compensation for time spent taking calls from inmates

and performing pre-trial preparation, including coordinating inmate

movements, locating witnesses, preparing notes of new information from

inmates, compiling trial documents and exhibits, and designating

deposition testimony for trial.  (Keeny Reply Decl. ¶ 41, Ex. 1.)

Moreover, substantial time was devoted to performing "data entry"

related to an inmate survey overseen by a survey expert, UCLA

researcher Nadareh Pourat, which required accurate analysis and entry

of the data.  (Keeny Reply Decl. ¶ 42.)

     Plaintiffs have demonstrated that these tasks were more than

simply non-compensable "clerical" work and the individual entries

devoted to these tasks likely add up to approximately 355 hours.

Given Plaintiffs' significant voluntary cuts and the Court's review of

the challenged entries, the Court finds that the remaining 355 hours

were reasonably expended on compensable tasks.  The Court therefore

imposes the reductions per attorney, law clerk, and paralegal found in

Exhibit 1 to the Keeny Reply declaration.

          7.  Unsuccessful Motions and Oppositions

     The County has compiled time entries it believes were devoted to

unsuccessful motions and oppositions filed by Plaintiffs, including:

(1) two of twelve motions for summary judgment granted in the County's

favor, such as dismissal of Defendant Carona and dismissal of money

damages claims under the PLRA[10]; (2) a successful motion to decertify

---

[10]Plaintiffs already excised work done on five of the twelve
summary judgment motions to reflect the lack of success, including
those involving Defendant Carona and the damages issues.  (Keeny

the class; (3) a successful motion for sanctions filed by the County, which included a grant of attorney's fees against Plaintiffs; (4) one motion in limine filed by Plaintiffs; and (5) fifteen requests for writs of habeas corpus, ten of which were granted and five of which were denied as untimely.  (Cha Decl. ¶¶ 12—13, Exs. M, N.)  Except for the motion for sanctions, the time identified by the County is compensable because Plaintiffs were ultimately prevailing parties on their constitutional claims.

It is well-settled that a prevailing plaintiff may be compensated for lost battles along the way to winning the war: "[A] plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage."  Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991) ("Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war."); see also Hensley, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.").  Work is not compensable only if the "'relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury upon which the relief granted is premised.'"  O'Neal v. City of Seattle, 66 F.3d 1064, 1069 (9th Cir. 1995).  Thus, time spent unsuccessfully opposing motions or requests on the way to prevailing in a case may be compensable.  See Cabrales, 935 F.32d at 1053 (unsuccessful opposition to petition for writ of

Const. Decl. ¶ 19(c)(iii).)

certiorari); O'Neal, 66 F.3d at 1069 (unsuccessful motion for class certification, which was not considered a "claim," but a method of pursuing relief).

Here, the County does not argue that the identified unsuccessful motions and oppositions were unrelated to the claims on which Plaintiffs prevailed.  In fact, most of them did not even involve discrete "claims," but rather issues over the proper defendants (such as Defendant Carona), proper remedies (e.g., damages), the propriety of a class action, and the scope and presentation of evidence (e.g., the motion in limine and unsuccessful writs of habeas corpus).  As in O'Neal, then, all this work is compensable.

Plaintiffs' time spent unsuccessfully opposing the motion for sanctions, however, cannot be part of Plaintiffs' fee award. According to Plaintiffs, the motion was brought because attorney Herman violated various Court orders, which Plaintiffs characterize as "discovery infractions" (Mot. 20 n.10) and do not appear to be related to the substance of Plaintiffs' claims.  (Docket No. 152.)  Moreover, as a result of the motion, Herman was ordered to pay $1,450 in attorney's fees to the County.  To suggest that the County should now reimburse Plaintiffs for the fees expended in unsuccessfully defending that motion would render the County's award fleeting, now that Plaintiffs have prevailed in the lawsuit.  Therefore, Plaintiffs are not entitled to recover fees for 40.4 hours spent on defending the motion for sanctions.[11]

---

[11]The deductions for each time keeper included in the County's Exhibit N are as follows: 6.7 hours for Dan Stormer; 15.3 hours for Hernaldo Baltodano; 0.1 hours for Tami Galindo; 6.1 hours for Virginia Keeny; 6.1 hours for Bryan Miller; 4.1 hours for Mayling Kao; and 2.0 hours for Richard Herman.  (Cha. Decl., Ex. N.)

8.   <u>Dismissed or Unsuccessful Parties</u>

The parties agree that time spent pursuing claims for Plaintiffs Ellertson and Pierce, as well as Plaintiff Conn in his individual capacity, should not be part of Plaintiffs' fee award.  Plaintiffs have already reviewed their counsel's time records and excised work falling into those categories.  (Keeny Const. Decl. ¶ 19(a), (c)(i)—(ii).)  The County has identified further entries that it believes should be eliminated, for a total of 98.1 hours.  (Cha Decl. ¶ 9, Ex. J.)

Plaintiffs largely agree with the reductions for the Hadsell & Stormer firm and Richard Herman, but object to the County's proposed further reductions for the Litt, Estuar, Harrison, Kitson firm because many of the entries mentioning "Pierce" refer to this case generally, not to Plaintiff Pierce individually.  Some examples can be found in entries by Bryan Miller, including "MK re Pierce meeting," "DI-Pierce assignments - discovery," and "BSL, PJE - Strategy Pierce."  (Cha Decl., Ex. J at 188.)  Plaintiffs have compiled their own chart identifying hours from the County's chart they agree should be excised, for a total of 66 hours.  (Keeny Reply Decl. ¶ 47, Ex. 2.)

After reviewing the records, the Court agrees with Plaintiffs that the proposed additional reduction of 66 hours is reasonable, given that many of the entries appear to relate to the case as a whole and some of the time spent with Plaintiff Conn related to class-based claims, not individual claims.  The Court therefore imposes the reductions per attorney, law clerk, and paralegal found in Exhibit 2

to the Keeny Reply declaration.[12]

9.   Time Spent on Discovery

The County challenges time Plaintiffs spent on discovery related to deposing 65 inmates when only two were administrative segregation inmates.[13]  The Court declines to impose any deduction for this work because the County has not identified any specific entries it believes were excessive and has not explained why deposing 65 inmates in a case of this magnitude was unreasonable in order to ascertain the conditions of the jails.

The County also challenges 1,437.55 hours Plaintiffs spent preparing a survey that the Court ultimately deemed inadmissible at trial.  (Cha Decl. ¶ 10, Ex. K.)  Plaintiffs claim that Judge Taylor expressed openness to any evidence related to conditions in the jails, so they conducted a survey to determine jail conditions.  (Keeny Const. Decl. ¶ 25.)  That involved retaining an expert to devise a survey and a statistician to determine a significant sample size, and having law clerks and legal assistants travel to the Orange County jails, gain access to inmates, conduct approximately 440 surveys on jail conditions, and input the data into a manageable database.  (Id.) Accessing inmates was time-consuming, Plaintiffs explain, because inmates had restricted access to phones, attorneys could not call into the jails, non-attorneys could not ordinarily visit inmates, each

---

[12]Plaintiffs did not respond to the County's identification of entries totaling 49.9 hours related to dismissed Plaintiffs Graham, Morgan, and Sanders.  (Cha Decl. ¶ 11, Ex. L.)  The Court therefore imposes the reductions in the amounts per attorney, law clerk, and paralegal identified in the County's Exhibit L.

[13]The two Stewart orders on which Plaintiffs prevailed applied to administrative segregation inmates.  See Pierce, 526 F.3d at 1208.

meeting took considerable time to arrange, and the members of the
class were constantly changing as detainees were processed to prison
or released. (Keeny Reply Decl. ¶ 10.)  In Plaintiffs' view, then,
the most efficient way to determine the magnitude of violations was a
survey, so they hired a survey expert, UCLA researcher Nadareh Pourat,
to craft a reliable survey. (Keeny Reply Decl. ¶ 11.)

Despite these efforts, the 440 declarations from individual
inmates and the survey results were excluded from trial. (Keeny Reply
Decl. ¶ 13.)  Nevertheless, Plaintiffs' expert testified at trial in
great detail how he believed the survey was reliably created and
conducted, and the Court permitted him to rely on the results in
testifying as to jail conditions. (Keeny Reply Decl. ¶ 15, Ex. 4.)
Even the County's expert suggested during cross-examination that this
type of evidence could be more useful in prison litigation than
anecdotal testimony from inmates. (Id.)  Plaintiffs appealed the
decision to exclude the survey evidence and the Ninth Circuit
affirmed, but on the ground that Plaintiffs were not prejudiced
because the substance of the survey came into the record by way of
Plaintiffs' expert. Pierce, 526 F.3d at 1201.

Because Plaintiffs' expert relied on the survey in forming his
opinions and testifying, the Court is satisfied that the time spent on
the survey is compensable, even though the survey results were not
admitted as direct evidence. Even the Ninth Circuit implicitly
recognized that the exclusion of the survey results did not render the
survey entirely valueless when it found Plaintiffs were not prejudiced
by its exclusion. Thus, the Court will not reduce Plaintiffs'

counsel's hours for work on the survey.[14]

## B.  Split Between Pre-Appeal Constitutional and ADA Claims

In the 2009 briefing on fees for Plaintiffs' constitutional claims, Plaintiffs proposed the 50%/50% split and the County did not oppose that division.  At that time, the Court declined to rule on the issue.  (Docket No. 684 at 26 n.11.)  Here, Plaintiffs again propose the 50%/50% division, but the County now argues that a 75%/25% split is appropriate, with 75% attributed to Plaintiffs' constitutional claims.  This is not surprising, given that attributing a larger portion of work to the constitutional claims would result in lower overall fees in light of the PLRA hourly-rate caps.

The Court finds that Plaintiffs' proposed 50%/50% split is appropriate.  Without delving into the minutiae of the work done prior to the appeal, there are several benchmarks that demonstrate that the work done was roughly evenly divided between the constitutional and ADA claims.  For example, much of the work done preparing for trial was directed at both the constitutional and ADA claims, such as motions in limine, trial subpoenas for inmates, motions relating to deposition versus live testimony, motions relating to trial time, and the compiling of exhibits, witness lists, and other pretrial documents.  Likewise, Plaintiffs' opening statement was generally

[14]The County argues that only 8% of the survey (12 out of 153 questions) was directed to Administrative Segregation inmates, so the hours spent on the survey were excessive.  The County does not identify which 12 questions those are or how much time should be deducted for this work, opting instead to derisively label the survey "little more than a fee sucking black hole."  (Opp. 10.)  However, Plaintiffs have demonstrated that more than just 8% of the survey was relevant to the claims of Administrative Segregation inmates.  (Keeny Reply Decl. ¶ 16.)  All the work done on the survey arguably contributed to Plaintiffs' success, so it is compensable.

split evenly between the ADA and constitutional issues (Keeny Const. Decl. ¶ 29); roughly half of the live testimony presented during the first trial was devoted to ADA issues (id. ¶ 30); and plaintiffs' closing trial brief was almost evenly split between the ADA and constitutional issues (Keeny Reply Decl. ¶ 17).  Indeed, even the Ninth Circuit's substantive analysis of the issues in its published opinion was evenly divided between the ADA and constitutional claims (approximately 17 pages each).  The Court is satisfied that the 50%/50% split fairly approximates the division of work between the ADA and constitutional claims before the appeal and remand.

**C.   Hourly Rates**

1.   PLRA-Capped Rates for Constitutional Claims

As the Court previously ruled, the PLRA caps hourly rates at no more than "150 percent of the hourly rate established under section 3006A of Title 18 for payment of court appointed counsel."  42 U.S.C. § 1997e(d)(3).  At the time of the Court's initial fees ruling in 2009, the parties agreed that the rate under section 3006A in Los Angeles County was $100 per hour, so the cap on hourly fees at that time was $150 an hour (150% of $100).  Since then, that rate has increased to 150% of $125, or $187.50 per hour.  All of Plaintiffs' attorneys (and some senior paralegals) charge more than that per hour, so they request the full $187.50 as their hourly rate, and a lesser $150 to $175 per hour for more junior paralegals and law clerks. (Keeny ADA Decl. ¶¶ 33—37.)[15]  The County does not meaningfully dispute these rates and the Court finds them reasonable here for

---

[15]Paralegal rates are also subject to the PLRA rate caps.  Perez v. Cate, 632 F.3d 553, 557 (9th Cir. 2011).

Plaintiffs' constitutional claims.

2.   Reasonable Rates for Pre-Appeal Work on ADA Claims

The fee applicant bears the burden of producing satisfactory evidence, in addition to affidavits of counsel, demonstrating that proposed hourly rates are reasonable, that is, that they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1986); see also Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).  The Court may use either historical or current rates, but using current rates "may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable; the district court must look to the 'totality of the circumstances and the relevant factors, including delay in payment.'"  D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1384 (9th Cir. 1990), overruled on other ground by City of Burlington v. Dague, 505 U.S. 557, 565 (1992).

Plaintiffs propose using their current hourly rates for pre-appeal work, which range from $450 to $825 per hour for attorneys and $160 to $250 per hour for paralegals and law clerks.  (Keeny ADA Decl. ¶ 70.)  In 2008, the Ninth Circuit approved then-current hourly rates for the attorneys, law clerks, and paralegals who worked on the

appeal,[16] but Plaintiff seeks reimbursement at current rates, which would compensate for the delay in payment. D'Emanuele, 904 F.2d at 1384. The rates for each pre-appeal and post-appeal attorneys, law clerks, and paralegals are set out in Attachments A and B to this Order and the Court need not reprint them here.

Plaintiffs have submitted substantial evidence that the rates they seek are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895 n.11. First, Barrett Litt, named partner of the Litt, Estuar, and Kitson firm, submitted a declaration providing substantial detail about his 42 years of experience litigating complex civil cases, including civil rights cases. (Litt Decl. ¶¶ 3—13.) In fact, in 2005, Judge Marshall in this District explained that Mr. Litt was "widely known as one of the foremost civil rights attorneys in California, having a particular expertise in civil rights class actions and other complex multi-party civil rights cases, especially law enforcement class actions." (Id. ¶ 12(d) (quoting attorney's fees order at Docket No. 185 at 9 in Gamino v. County of Ventura, Case No. 02-9785 CBM (Ex)).) He also frequently provides support for fee requests in other cases, including in a case heard by this Court, Lauderdale v. City of Long Beach, Case No. 08-979

---

[16]The following chart reflects the approved 2008 hourly rates and current hourly rates for the attorneys who worked on the appeal:

| Attorney | 2008 Approved Rate | 2011 Rate |
|---|---|---|
| Keeny, Virginia | $550.00 | $625.00 |
| Stormer, Dan | $725.00 | $825.00 |
| Litt, Barrett | $750.00 | $850.00 |
| Miller, Bryan | $490.00 | $625.00 |
| White, Julia | $200.00 | $250.00 |
| Other Paralegals | $175.00 | $175.00-$225.00 |
| Kao, Mayling | $150.00 | $160.00 |

ABC (JWJx).  (Litt Decl. ¶ 13.)  In his declaration, he set forth significant reliable evidence that the hourly rates sought in this case are in line with the rates charged by many large Southern California law firms, as well as boutique civil rights firms like those handling Plaintiffs' case here (id. ¶¶ 23–26); and they are in line with awards in similar cases, including Gamino and Lauderdale (id. ¶¶ 28–29).

Second, Virginia Keeny, partner of the Hadsell & Stormer firm, submitted a declaration explaining her 23 years of experience litigating complex class action and civil rights cases.  (Keeny ADA Decl. ¶¶ 26–30.)  She detailed the significant background and experience of each attorney, law clerk, and paralegal who worked on this case to demonstrate that the rates sought are reasonable in the case.  (Id. ¶¶ 31–52.)

Finally, Plaintiffs submit declarations from Peter J. Eliasberg, the Legal Director at the American Civil Liberties Union Foundation of Southern California ("ACLU"), and Paula D. Pearlman, the Executive Director of the Disability Rights Legal Center ("DRLC") (located at Loyola Law School), both of whom corroborated that the hourly rates sought are in line with the rates charged in Southern California by similar attorneys for similar work.  For example, Mr. Eliasberg explained that, as part of his position, he researches prevailing rates in the community for similar civil rights legal work and has found "little, if any difference between the fees sought and awarded to smaller or solo civil rights firms and larger business firms which occasionally do pro bono civil rights and public interest work because the skill and experience of the attorneys in question is comparable," and may even be greater.  (Eliasberg Decl. ¶ 7.)  Without recounting

the detail provided by Mr. Eliasberg, based on his extensive experience, he opined that the rates sought by the attorneys with the Hadsell & Stormer firm fall within the rates charged in Southern California by similarly skilled attorneys for similar work.  (Id. ¶¶ 9—18.)  Likewise, Ms. Pearlman stated that she has similarly extensive experience in civil rights litigation (Pearlman Decl. ¶¶ 4—7) and similarly monitors fee awards in civil rights cases (id. ¶ 8—9), and she indicated that the rates charged by Hadsell & Stormer attorneys fell in line with rates the DRLC attorneys would charge for their own work (id. ¶¶ 10—11).

The County offers several challenges to the reasonableness of Plaintiffs' proposed rates, none of which is persuasive.  For example, the County relies heavily on Camarillo v. City of Maywood, Case No. CV 07-3469 ODW (SHx), 2011 WL 3665028, at *9 (C.D. Cal. Aug. 22, 2011), which involved a settled civil rights case in which the plaintiffs' proposed attorney hourly rates were reduced by 25% and paralegal rates were set at $125/hour.  In that case, however, the court was clearly unimpressed by both the "troublesome litany of ineffective lawyering" and the limited monetary recovery obtained in the settlement, id. at *6, whereas in this case, Plaintiffs' counsel's performance was impressive and the injunctive and monitoring relief obtained after two bench trials and an appeal was sweeping.

Moreover, the plaintiffs in Camarillo substantiated their requested rates only by their own declarations and a declaration from Barry Litt, which the Court found was insufficient to demonstrate the reasonableness of the rates sought.  Id. at *8.  Particularly, the court found Mr. Litt's declaration unpersuasive because he relied on confidential sources for rate information; he merely listed rates

without describing the type of work that commanded those rates; he relied almost exclusively on rates from large national law firms, some of which did not have offices in Los Angeles; he did not include rates from any solo practitioners; and he relied only on his own experience to set paralegal rates.  Id. at *8—9.  In his declaration to this Court, while Mr. Litt still relied in small part on some confidential information and on a few firms with offices in Northern, rather than Southern, California, he shored up many of the other issues identified in Camarillo by, for example, incorporating the rates of comparable civil rights firms (Litt Decl. ¶ 24)[17], listing specific matters in which similar rates were approved (id. ¶¶ 28—29), and including paralegal rates from other law firms (id. ¶ 25(h)).  Unlike in Camarillo, then, the Court finds that Mr. Litt's declaration credibly supports Plaintiffs' hourly rates here.  And even apart from Mr. Litt's declaration, Plaintiffs have offered the persuasive declarations of Mr. Eliasberg and Ms. Pearlman to substantiate Plaintiffs' requested rates, which was additional evidence not before the Court in Camarillo.

     The County further argues that, using the 2008 rates approved by the Ninth Circuit as a baseline, the 2011 rates sought by Plaintiffs represent too steep an increase from 2008, which, by the County's calculation, was an average of 19.8%.  (Riggs Decl. ¶¶ 2, 7.)  The County proposes that the rates should have increased by no more than

---

[17]This Court has previously concluded that a firm's size is not relevant to considering the reasonableness of hourly rates without evidence that the work done by attorneys at smaller firms is meaningfully different from the work done by attorneys at large firms. See Cruz ex rel. Cruz v. Alhambra Sch. Dist., 601 F. Supp. 2d 1183, 1195 (C.D. Cal. 2009).  The County did not present that evidence here.

1   2.5% in 2009, 2.7% in 2010, and a projected 2.7% in 2011, based upon

2   the 2009 and 2010 National Law Journal articles tracking the increases

3   in the "average firmwide billing rate — a combination of associate and

4   partner rates" over those two years.  (Id. ¶¶ 3—5, Exs. A, B.)  For

5   the attorneys who did not work on the appeal, the County calculates

6   their 2008 rates by taking their 2011 rates and subtracting 19.8% and

7   then increasing those projected 2008 rates by 2.5%, 2.7%, and 2.7%.

8   (Id. ¶¶ 7—8.)

9       This approach is flawed for several reasons.  First, the National

10  Law Journal statistics were based on an average year-to-year increase

11  to approximate inflation, and it is not an accurate measure of an

12  individual attorney's year-to-year increase in prestige and

13  experience.  For example, if the average rate in 2009 for all fifth-

14  year associates at all firms surveyed was $400 per hour, then,

15  according to the National Journal, the average rate in 2010 for all

16  fifth-year associates rose 2.5% to $410 per hour.  But any individual

17  fifth-year associate at any one law firm who billed at $400 in 2009

18  would be a sixth-year associate in 2010, and could very well charge 5%

19  or 10% or even more above what he or she charged in 2009, particularly

20  if he or she gained significant experience during that year.  See

21  Armstrong v. Brown, 805 F. Supp. 2d 918, 921 (N.D. Cal. 2011)

22  (rejecting identical argument under ADA because the average rise in

23  hourly rates "reflects only the across-the-board rise in firms'

24  overall rates, not the increase in individual attorneys' hourly rates

25  for the additional experience the individuals accrued over the two-

26  year period.").

27      Second, Mr. Riggs, the attorney at the County's law firm who

28  provided these calculations, did not provide sufficient evidence to

32

substantiate his opinion that the proposed adjusted rates are reasonable rates in the community for attorneys with similar skill and experience.  He testified that he had reviewed "many opinions, orders, and declarations which have been filed in cases in the Central District of California within the last ten years, including cases filed under the Americans with Disabilities Act, cases alleging violations of civil rights, and class action lawsuits" — which must amount to scores of attorney's fees awards — and yet cited only two of those cases (including <u>Camarillo</u>) to support his opinions.[18]  This limited evidence, based upon a flawed methodology, does not undermine Plaintiffs' persuasive showing that the rates they seek are reasonable.[19]

Finally, relying again on <u>Camarillo</u>, the County argues that Plaintiffs' proposed rates should be reduced by a blanket 20% by taking into account "(1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained." <u>Camarillo</u>, 2011 WL

---

[18]Plaintiffs in contrast cited two complex civil rights cases in which several attorneys involved in this case were awarded fees at similar rates.  <u>See</u> <u>Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles</u>, Case No. CV 07-3072 AHM (FMMx) (C.D. Cal. June 24, 2009) (Docket No. 111 at 10 (approving Barrett Litt's rate of $800 per hour in 2009); <u>Wang v. Chinese Daily News</u>, Case No. CV 04-1498 CBM (JWJx) (C.D. Cal. October 3, 2008) (Docket No. 875 at 5—7 (approving 2008 rates of $800 for Dan Stormer; $575 for Virginia Keeny; $425 for Cornelia Dai; $350 for Sanjukta Paul; $375 for Josh Piovia-Scott; and $225 for Ben Stormer)).

[19]Notwithstanding the County's cursory challenge, the Court also finds sufficient support for Plaintiffs' requested rates of $160 to $250 for paralegals and law clerks.  The Ninth Circuit approved rates between $150 and $200 for paralegals in 2008 and the court in <u>Wang</u> approved $225 per hour for Ben Stormer, finding that the median rate for paralegals in Los Angeles in 2008 was $195.

3665028, at *6 (citing <u>Campbell v. Nat'l Passenger R.R. Corp.</u>, 718 F.
Supp. 2d 1093, 1098 (N.D. Cal. 2010) and <u>Cabrales v. County of Los
Angeles</u>, 864 F2d 1454, 1464 (9th Cir. 1988), <u>cert. granted & judgment
vacated</u>, 490 U.S. 1087 (1989)).   The County once again argues that the
results were unimpressive here because the case was not complex and
Plaintiffs did not add their ADA claims until the Fifth Amended
Complaint, they lost at the first trial, and they prevailed on only
two constitutional claims.   Just as these issues did not justify a
substantial reduction in the hours expended, they do not justify
reducing Plaintiffs' hourly rates.   This was a legally and factually
complex ADA case arising in the context of prison administration that
Plaintiffs resoundingly won by persisting in appealing an adverse
judgment, obtaining a reversal, and successfully taking the claims to
a bench trial.   After that trial, they won extensive injunctive relief
mandating physical and administrative changes to the Orange County
jail system and imposing a monitor to oversee the jails, all of which
can be used as a model for future cases.   Plaintiffs' proposed hourly
rates reasonably reflect the factors outlined in <u>Camarillo</u> and the
Court will not reduce them.

### D.   Lodestar Calculation for Pre-Appeal Work

Based on the PLRA-capped rates, the Court calculates the lodestar
for pre-appeal work on the constitutional claims at $725,971.22.   The
Court calculates the lodestar for pre-appeal work on ADA claims at

$1,821,557.13.[20]   Those calculations are set out in Attachment A to this Order.[21]

**E.   Reduction for Degree of Success on Constitutional Claims**

The County argues that the lodestar for Plaintiffs' pre-appeal constitutional claims should be reduced by 75% to reflect Plaintiffs' limited success on those claims.  The Court may reduce the lodestar based upon the "'results obtained.'"  Hensley, 461 U.S. at 434.  In doing so, the Court must ask two questions: (1) "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?"; and (2) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  Id.; see also Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001).

On the first question, the Court must determine whether the claims "'involve a common core of operative facts'" or were "'based on related legal theories.'"  Sorenson, 239 F.3d at 1147.  This question is disjunctive: "related claims involve a common core of facts or are based on related legal theories."  Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis in original).  This standard is lenient; in

---

[20]There were 327 hours Plaintiffs identified that were devoted solely to pre-appeal ADA claims, which the County did not separately challenge.  Therefore, to calculate an accurate lodestar for pre-appeal ADA claims, the Court divided in half the total pre-appeal hours attributed to both constitutional and ADA claims, and then added those 327 hours to the 50% devoted to the ADA claims.  That calculation is reflected in Attachment A.

[21]Although Plaintiffs' initial submission listed hours for Barbara Hadsell, Nora Palmer, and Marco Simons (Keeny Const. Decl., Ex. A), Plaintiffs omitted those individuals from their lodestar calculation (Mot. 19—22; Keeny Const. Decl. ¶ 32).  The Court likewise has not included any hours for those time keepers in its calculations in Attachment A.

Webb, for instance, the court concluded that the plaintiff's "numerous legal theories against several defendants" were related because they "arose out of a common core of facts and a common course of conduct: Plaintiff's arrest, detention, and prosecution." Id. at 1169; see also McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009) (finding all claims related because they arose out of a single arrest).  Likewise, in Sorenson, the court found that the plaintiffs' claims challenging the administration of Social Security benefits were related, even though the eventual settlement agreement did not include all requested relief and all requested changes to the program, because the plaintiffs' claims "[a]ll focused on improving Oregon's disability determination system."  239 F.3d at 1147.

On the second question, attorney's fees "must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit."  McCown, 565 F.3d at 1103.  The Court "'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation'"; "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and "excellent results" does not require the plaintiff to recover all the relief requested. Sorenson, 239 F.3d at 1147.  Thus, the court refused to reduce the fees in Sorenson because the case "'represent[ed] eight years of sustained legal effort . . . to bring about a common good,' namely the improvement of the disability determination system in Oregon," an "excellent result."  Id.  In contrast, in Webb, the court found a reduction appropriate because the plaintiff sued several defendants, but prevailed against only one.  330 F.3d at 1168.

Moreover, "[i]n setting a reasonable fee award . . ., the district court should consider whether, and to what extent, [the plaintiff's] suit benefitted the public." <u>McCown</u>, 565 F.3d at 1105. That includes "whether the plaintiff has affected a change in policy or a deterrent to widespread civil rights violations," or whether there was a "public benefit of deterring unconstitutional conduct by law enforcement officials." <u>Id.</u>

Before assessing either step, the Court must resolve the parties' dispute over how to measure Plaintiffs' success here.  The County contends that there were 14 orders in the <u>Stewart</u> injunction at issue in this case, and Plaintiffs prevailed on only two.  In contrast, Plaintiffs argue that only five orders in the <u>Stewart</u> injunction were actually litigated, and Plaintiffs prevailed on two of them. Plaintiffs are correct, as reflected by the Ninth Circuit's opinion.

While the County accurately notes that 14 <u>Stewart</u> orders existed and Plaintiffs prevailed on only two of them, <u>Pierce</u>, 526 F.3d at 1206—08, "[f]or nine of the <u>Stewart</u> orders, the County's showing of compliance was not contested," which left only five contested, <u>id.</u> at 1206 (noting that the parties presented conflicting evidence on two <u>Stewart</u> orders related to seating in holding cells and adequate meal times and affirming dissolution of those orders); <u>id.</u> at 1208—14 (addressing the parties' conflicting evidence on three <u>Stewart</u> orders related to religious services, exercise for inmates, and day-room access and affirming dissolution of the day-room order, but reversing dissolution of the religious services and exercise orders).  Moreover, the County does not dispute that, although Plaintiffs briefed the legal issues related to all the injunctions at the Court's direction when the <u>Stewart</u> and <u>Pierce</u> cases were consolidated, Plaintiffs

37

1   conducted no discovery and offered no evidence at trial on the

2   uncontested Stewart orders.  (Keeny Reply Decl. ¶ 49.)  Thus, the

3   Court's "degree of success" assessment will be based upon Plaintiffs'

4   prevailing on maintaining two of the five Stewart orders actually

5   litigated by the parties.

6        1.   Relatedness

7        The County does not meaningfully dispute that the five Stewart

8   orders adjudicated by the Ninth Circuit shared a common core of facts

9   and were based on related legal theories.  Those orders addressed (1)

10  seating in holding cells; (2) meal times; and for administratively

11  segregated inmates, (3) access to religious services; (4) access to

12  exercise; and (5) access to the use of a day room.  Pierce, 526 F.3d

13  at 1206, 1208.  Like the plaintiffs' challenges in both Webb and

14  Sorenson, all of these claims arose in the same factual context of the

15  Orange County jail system, challenged related policies, procedures,

16  customs, and training implemented by the County, and implicated the

17  same Eighth and Fourteenth Amendment, California state law, and PLRA

18  issues.[22]  Moreover, Plaintiffs have demonstrated that most of the

19  work done on these claims was indivisible because most of the

20  witnesses addressed all these issues at once and it would have been

21  impossible to attribute that work to specific issues.[23]  Therefore,

22

23

24      [22]Even the Ninth Circuit began the section of the opinion on the
25  constitutional issues with an overview of the law, which was
    applicable to all the Stewart orders.  Pierce, 526 F.3d at 1204—06.

26
        [23]Plaintiffs removed from their lodestar any time spent reviewing
27  lunchroom logs and tapes of inmates in the booking loop, which was
    time that would have been devoted to unsuccessful mealtime and holding
28  cell seating claims.  (Keeny Const. Decl. ¶ 43—44.)

1  the Court finds that no reduction is warranted on the ground that any

2  unsuccessful claims were unrelated to successful ones.[24]

3        2.   Degree of Success

4        The parties' primary dispute revolves around Plaintiffs' degree

5  of success.  As discussed above, Plaintiffs prevailed on only two of

6  the five Stewart orders actually litigated, and the County argues that

7  a substantial reduction is warranted.  In the Ninth Circuit's order

8  granting fees for appellate work, the court reduced Plaintiffs'

9  proposed lodestar by 40% for only limited success on appeal, even

10 after Plaintiffs reduced their own lodestar calculation by 25%.

11 (Keeny Const. Decl., Ex. H at 38.)  The court found that Plaintiffs

12 achieved "limited results" when they succeeded in maintaining the two

13 Stewart orders, although it also noted that those victories "affect[]

14 all pretrial detainees in Orange County, will deter unconstitutional

15 conduct by jail officials, and vindicate important constitutional

16 rights," and Plaintiffs therefore "achieved a significant public

17 benefit."  (Id. at 36.)  Importantly, however, the court found

18 Plaintiffs' success was limited not only because Plaintiffs only

19 prevailed on two Stewart orders, but also because a "significant part"

20 of Plaintiffs' time was spent on "unsuccessful claims regarding the

21 jurisdiction of the court," "the district court's management of the

22 case, and state law claims that were unrelated to and did not

23 contribute to the successful conditions of confinement claims."  (Id.

24 at 37.)

25

26

27        [24]In the Ninth Circuit's interim fee award, the court also found
   that the Stewart orders were related.  (Keeny Const. Decl., Ex. H at

28 27.)

                                    39

Consistent with the Ninth Circuit and despite the significant
public benefit Plaintiffs achieved by prevailing on two Stewart
orders, this Court finds that some reduction is appropriate to reflect
Plaintiffs' limited success on their constitutional claims.
Plaintiffs argue that the three Stewart claims they lost — seating in
holding cells, meal times, and day room usage — were relatively minor
issues, given that the seating issue merely involved inmates sitting
on the floors of holding cells in the booking loop for limited periods
of time and involved the County allegedly cutting a few minutes off
meal times, rather than any claims that inmates were not being fed or
were being given unsanitary food.  (Keeny Const. Decl. ¶¶ 40—43.)
Despite Plaintiffs' post-judgment gloss, Plaintiffs pursued these
claims in this Court and on appeal, suggesting that they were not as
insignificant as they would have the Court believe.  Moreover,
although this case "'represent[ed] [many] years of sustained legal
effort . . . to bring about a common good,'" as recognized in
Sorenson, only limited common good was achieved, as found by the Ninth
Circuit.

Further, the County points out that Plaintiffs were ultimately
unable to pursue a damages class action, as affirmed by the Ninth
Circuit.  See Pierce, 526 F.3d at 1200.  Plaintiffs respond that the
damages claims were unimportant and they had "always assumed this
action was one for injunctive relief" (Keeny Reply Decl. ¶ 50), but
again, the Court discounts Plaintiffs' after-the-fact argument that
the damages class action was unimportant, given that they appealed
that issue.  While the damages class action may have been a related
claim, see O'Neal, 66 F.3d at 1069, the fact that Plaintiffs failed to

1   obtain a significant form of relief justifies some reduction for their

2   limited success.

3      However, the Court finds that the same 40% reduction as imposed

4   by the Ninth Circuit is not warranted here because several factors on

5   which the Ninth Circuit relied are not present here.  Instead, the

6   County relies only on the fact that Plaintiffs prevailed on only two

7   of five disputed <u>Stewart</u> orders and that Plaintiffs did not

8   successfully pursue a damages class in seeking a reduction for

9   Plaintiffs' limited success.  Therefore, the Court finds that a 30%

10   reduction reasonably reflects Plaintiffs' limited success on their

11   constitutional claims.

12      Thus, the Plaintiffs are entitled to $508,179.85 as reasonable

13   fees for work done on their constitutional claims.

14   **III. <u>FEES FOR WORK ON POST-APPEAL CLAIMS</u>**

15      Plaintiffs also seek reimbursement for the post-appeal work done,

16   which was all devoted to ADA claims.  Based on their counsel's current

17   hourly rates, Plaintiffs calculate the post-appeal lodestar at

18   $594,088.  (Keeny ADA Decl. ¶ 71.)  The County seeks deductions from

19   Plaintiffs' requested post-appeal hours for some of the same reasons

20   as the pre-appeal hours.  Without much explanation, the County

21   presented those objections by handwriting various objections and

22   deductions in the margins next to each objected-to time entry.  (Cha

23   Decl. ¶ 19 (describing comments on Exhibit S as "hand-noted and

24   highlighted Post-Appeal Deductions").)  The County also objects to the

25   hourly rates, but for the reasons above, the Court rejects those

26   arguments.  Thus, the Court briefly discusses the hours-specific

27   objections below and calculates the lodestar.

28

### A.   Hours-specific Reductions

#### 1.   Duplicative, Unnecessary, and Excessive Work

The County objects to apparently duplicative post-appeal time entries between December 10 and 30, 2008, which total 28.2 hours. (Cha Decl., Ex. S at 400—01.)  Plaintiffs explain that this was the result of a computer "glitch" and the 28.2 duplicated hours were not included in their initial calculation of the total hours spent on the post-appeal ADA claims, which was confirmed by their accountant.  (See Dee Decl.)  No reduction is therefore warranted.

#### 2.   Vague Billing Entries

The County noted many time entries that it believes are "vague" and suggests deductions from those entries, but the Court has reviewed the noted entries and finds, for the most part, they sufficiently describe the tasks performed.  To the extent that a few of them could use more detail, the County has not explained why the "vagueness" of those entries justifies a partial, rather than full, deduction.  See Moreno, 534 F.3d at 1112.  No further deduction is warranted.

#### 3.   Block Billing

The County challenges certain post-appeal time entries as block billed.  Unlike for the pre-appeal entries, however, no reduction is warranted for the post-appeal entries because there was no block billing; rather, almost all of the challenged entries simply contain a significant period of time spent on related tasks.  For example:

- On June 24, 2008, Virginia Keeny spent 7 hours on preparation for "joint case management conference statement; conference with [Dan Stormer] re: same; research issues for joint status conference statement" (Cha Decl., Ex. S at 394);

- On July 18, 2008, Virginia Keeny spent 4 hours on preparation for "status conference re: discovery; status

conference; prepare plaintiff's statement re remaining issues" (id. at 395);

- On January 11, 2010 Ben Stormer spent 3 hours on the telephone "attempting to contact witnesses" (id. at 418) and on January 13, 2010 he spent 8 hours "[p]reparing documents to be used at trial as exhibits in Sanction Program as well as photos" (id.); and

- On February 2, 2010, attorney Radhika Sainath spent 9.5 hours on "[t]rial preparation: meet with VK [Virginia Keeny], Ben Stormer, prepare trial brief, trial preparation, research" (id. at 421), and Ben Stormer spent 8 hours "[p]reparing documents and exhibits for trial," "[p]reparing photos, deposition exhibits," and "[p]reparing and loading photos into Sanction" (id.).

The Court finds that no further reduction is warranted for any alleged post-appeal block billing.

4.   Clerical Tasks

The County attacks some post-appeal entries as devoted only to non-compensable clerical tasks, and Plaintiffs acknowledge that 25.15 hours can be subtracted for purely clerical work.  (Keeny Reply Decl. ¶ 8, Ex. 3.)[25]  The rest, they argue, are compensable because that work was properly done by attorneys or paralegals/law clerks.  The Court has reviewed the challenged entries and finds that Plaintiffs' proposed reduction is reasonable and no more hours should be deducted as clerical work.  Thus, the Court deducts only the 25.15 hours identified by Plaintiffs.  (Id.)

**B.   Lodestar Calculation for Post-Appeal Work**

The Court calculates the lodestar for post-appeal work on ADA claims at $589,686.75, as set out in Attachment B to this Order.

_____

[25]In Exhibit 3, Plaintiffs identify total time to be reduced, but do not indicate which entries for each individual should be eliminated.  Nevertheless, the Court has briefly reviewed all the challenged entries and finds Plaintiffs' proposed reduction reasonable.

43

## IV.   MULTIPLIER UNDER STATE LAW FOR ADA/DISABILITY CLAIMS

Plaintiffs seek a 1.5 multiplier of the pre-appeal and post-appeal lodestar calculations for their ADA claims pursuant to their companion state-law disability claim under Civil Code section 54. While the Supreme Court has disapproved of the use of a contingency multiplier under federal fee-shifting statutes, see City of Burlington v. Dague, 505 U.S. 557, 565 (1992), and has otherwise cautioned against enhancing the lodestar absent "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee," see Perdue v. Kenny A. ex rel. Winn, __ U.S. __, __, 130 S. Ct. 1662, 1673 (2010), the Ninth Circuit has permitted the use of a contingency-fee multiplier if the plaintiff has prevailed on co-extensive state-law claims, see Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995).

The imposition of a multiplier accounts for the "unique circumstances of the case" and is guided by several factors, including: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." Amaral v. Cintas Corp. No. 2, 163 Cal. App. 4th 1157, 1216 (2008) (citations and internal quotation marks omitted; brackets in original).  In the end, "[t]he purpose of such adjustment is to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the

fair market rate for such services." Id. (citations and internal quotation marks omitted).

Here, Plaintiffs request a 1.5 multiplier of a nearly $2.4 million lodestar for work on their disability claims alone (amounting to an additional $1.2 million) on the grounds that this case dragged on for more than a decade, the work was demanding and the legal issues challenging, the results were excellent, and an enhancement would encourage other public interest suits. However, no multiplier is warranted. The Court agrees with Plaintiffs that this case was taxing, given that it continued for more than ten years and the factual and legal issues were complex, but those factors are already included in the Court's lodestar: the Court has already compensated Plaintiffs for the delay in payment and risk of loss by accepting Plaintiffs' counsel's current hourly rates, which were at least commensurate (if not on the high end) of reasonable rates of the most talented attorneys in the community. Further, while the substantial multiplier requested would encourage public interest suits, the substantial attorney's fees award Plaintiffs' counsel has earned will do so as well.

The County has also raised two arguments that counsel against further enhancing the lodestar here. First, after Plaintiffs prevailed on their ADA claims in the Ninth Circuit and the case was remanded, Plaintiffs no longer faced any contingency risk that they would not be entitled to a substantial fee award for both pre-appeal and post-appeal work, so there is no need to reward Plaintiffs' counsel for continuing to litigate a case in which they were already entitled to fees, just like any other fee-paying client. Plaintiffs respond that the Court should not focus on the contingency risk of

this particular case, but on "contingency cases <u>as a class</u>," <u>see</u>
<u>Beasley v. Wells Fargo Bank</u>, 235 Cal. App. 3d 1407, 1419 (1991)
(emphasis in original), <u>overruled on other grounds by</u> <u>Olson v. Auto.</u>
<u>Club of S. Cal.</u>, 42 Cal. 4th 1142, 1151 (2008), because "[a] lawyer
who both bears the risk of not being paid and provides legal services
is not receiving the fair market value of his work if he is paid only
for the second of these functions," <u>Ketchum v. Moses</u>, 24 Cal. 4th
1122, 1133 (2001) (internal quotation marks omitted).  But after the
appeal, Plaintiffs' counsel no longer bore <u>any</u> risk of not being paid,
so the lodestar fully compensates for the work done.  Likewise, while
there was a contingency risk at the outset of the case in 2001, that
risk is subsumed in the lodestar for the pre-appeal work, which fully
compensated Plaintiffs for all the work performed on ADA claims during
that time at substantially higher 2011 rates.

Second, the County points out that the fee award in this case
"would not be paid out of a common fund or be borne by a private
wrongdoer, but would ultimately fall upon the shoulders of California
taxpayers," weighing against enhancing the lodestar.  <u>Nw. Energetic</u>
<u>Servs., LLC v. Cal. Franchise Tax Bd.</u>, 159 Cal. App. 4th 841, 881
(2008).  Plaintiffs are certainly correct that this factor does not
alone prevent an enhancement in cases where there is an issue of
intentional discrimination by the public entity and the entity chooses
to defend its conduct though lengthy and complex litigation, but that
is true only if the contingency and delay-of-payment factors would
otherwise justify a multiplier.  <u>See</u> <u>Horsford v. Bd. of Trustees of</u>
<u>Cal. State Univ.</u>, 132 Cal. App. 4th 359, 400 (2005).  Here, because
the contingency and delay factors are subsumed in the lodestar for the
pre-appeal work and do not justify a multiplier, the fact that an

enhancement would be borne by taxpayers also weighs against enhancing the lodestar here.

Thus, the Court finds that the lodestar fully compensates for Plaintiffs' counsel's work on the disability claims in this case and no multiplier is warranted.

**V.   FEES EXPENDED IN BRINGING FEES MOTIONS**

Plaintiffs also request $14,973.65 in fees for filing the initial and supplemental motions for attorney's fees and costs related to their constitutional claims and $55,372.50 in fees for filing the motion related to their ADA claims.[26]   The County has not opposed these requests.   Plaintiffs are therefore entitled to "fees on fees" and the Court finds $70,346.15 to be a reasonable lodestar for the substantial briefing and supporting documents required for this complex request.   See Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 981—82 (9th Cir. 2008).

**VI.   COSTS**

Plaintiffs seek reimbursement for both taxable costs and nontaxable costs.   Under Federal Rule of Civil Procedure 54(d)(1), a prevailing party is entitled to taxable costs other than attorney's fees, but those costs are limited to the categories listed in 28 U.S.C. § 1920.   See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441—42 (1987); see also Local Rule 54-4 (listing categories

---

[26]Plaintiffs seek the following fees for time spent on the motions: $11,598.65 for the initial and supplemental briefs on the constitutional claims (Keeny Const. Decl. ¶¶ 50—51); $3,375 for the reply brief on the constitutional claims (Keeny Reply Decl. ¶ 51); $19,090 for the Hadsell and Stormer firm's work on the initial brief for the ADA claims (Keeny ADA Decl. ¶ 76); $24,712.50 for the Litt Estuar firm's work on the initial brief for the ADA claims (Litt Decl. ¶ 14, Ex. C); and $11,570 for reply brief on the ADA claims (Keeny Reply Decl. ¶ 52).

of taxable costs).  Nevertheless, the federal fee-shifting statutes at issue here enable a prevailing party to recover non-taxable litigation expenses not included in § 1920 that "'would normally be charged to a fee paying client.'"  Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (permitting recovery for litigation expenses under § 1988); see also 42 U.S.C. § 12205 (including "litigation expenses" and "costs" as part of reasonable attorney's fee under the ADA).

Plaintiffs' application to tax costs was initially filed with the Court Clerk, but referred to the Court in light of the parties' dispute over Plaintiffs' prevailing-party status and degree of success (Docket No. 783, 798), while their request for non-taxable costs was properly filed with this Court as part of their fees motions.  Below, the Court addresses Plaintiffs' request for non-taxable litigation expenses.  The Court also rules on the prevailing-party and degree of success issues raised by Plaintiffs' request for taxable costs, but refers that request back to the Court Clerk to fix the amount of taxable costs within the guidelines the Court sets here.

### A.    Non-Taxable Litigation Expenses

Plaintiffs request $150,864.92 in non-taxable "out-of-pocket" expenses incurred pre-appeal and $14,810.82 incurred post-appeal for photocopying, document scanning and printing, and making video copies; electronic legal research; postage and delivery charges; travel and parking; facsimiles; messengers; and records fees and copying.  (Keeny ADA Decl. ¶ 72, Ex. D; Litt Decl. ¶ 19, Ex. D.)  Plaintiffs also seek $9,566.19 in costs for reporters' transcripts that were originally included in their application to tax costs, but were withdrawn and submitted directly to the Court.  (Keeny ADA Decl. ¶ 73.)  Finally, Plaintiffs seek $77,470 in expert fees expended related to Plaintiffs'

ADA claims, which include the fees for Plaintiffs' expert witnesses Peter Robertson (ADA expert witness at the first trial) and Logan Hopper (ADA expert witness at second trial); Plaintiffs' portion of fees for the County's ADA expert, Michael Gibbons; and 50% of the fees for expert witnesses MacMinimon and Pourat, who were experts on both ADA and constitutional issues.  (Keeny ADA Decl. ¶ 75, Ex. E.)

### 1.   "Out-of-Pocket" Expenses

The County does not dispute that Plaintiffs may recover their "out-of-pocket" expenses in the categories sought.  See Davis v. City & County of San Francisco, 976 F.2d 1536, 1556 (9th Cir. 1992) (affirming that "out-of-pocket" expenses like "travel, courier and copying costs" are reimbursable), vacated in other part by 984 F.2d 345, 345 (9th Cir. 1993); see also Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 580 (9th Cir. 2010).  Rather, the County challenges Plaintiffs' request for these expenses on only two grounds: (1) computer-based research costs must be reduced by 25% to account for overhead; and (2) Plaintiffs should not recover $134,227.11 spent on messengers, facsimiles, postage and other deliveries, and photocopying because those costs were inadequately documented.

Generally, "computerized research costs can, in appropriate circumstances, be recovered in addition to the hourly rates of attorneys," but only "if separate billing for such expenses is 'the prevailing practice in the local community.'"  Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Redlands Ins. Co., 460 F.3d 1253, 1258—59 (9th Cir. 2006).  Courts are split on whether some portion of electronic research expenses should be considered "overhead" costs that are not charged to fee-paying clients.  See Cairns v. Franklin Mint Co., 115 F. Supp. 2d 1185, 1189 (C.D. Cal.

2000) (describing split and subtracting 25% from research costs for overhead), aff'd 292 F.3d 1139 (9th Cir. 2002).  Nevertheless, in order to be fully reimbursed for computerized research costs, Plaintiffs must demonstrate that these costs would "ordinarily be treated as reimbursable in a private attorney-client relationship," Davis, 976 F.2d at 1557, or be considered the "prevailing practice in the local community,'" Redlands Ins., 460 F.3d at 1259.  See also Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex, Case No. C 04-4146 MMC, 2007 WL 2317583, at *1 (N.D. Cal. Aug. 10, 2007) (ordering reimbursement for full cost of electronic research because plaintiff demonstrated "that each cost it seeks herein was billed to the client").

Here, Plaintiffs have not come forward with any evidence that all electronic research costs are ordinarily billed to the client as the prevailing practice in the community without any deduction for overhead.  Therefore, a 25% reduction in research fees is appropriate.  Plaintiffs seek $4,900.24 for pre-appeal research expenses and $397 for post-appeal research expenses, so the Court deducts $1,225.06 from the pre-appeal expenses and $119.60 from the post-appeal expenses.

Next, the County challenges the specificity of the expenses for photocopying, document scanning and printing, and making video copies; postage and delivery charges; facsimiles; messengers; and records fees and copying.  The Hadsell & Stormer firm's records of expenses for these categories are mostly broken down by month and by category and the Litt firm's records are broken down by day for each expense incurred.  The Court will not require litigants to spend the enormous time and energy required to specify the purpose of each copy made or package delivered, but a more precise breakdown is required than what

was provided in the records from the Hadsell & Stormer firm.

Therefore, a 25% deduction from the inadequately documented costs from

the Hadsell & Stormer firm is warranted, which would adequately

address the risk implicit in the County's contention that some

expenses may have been improperly included in Plaintiffs' requests.

See Fabi Constr. Co. v. Sec'y of Labor, 541 F.3d 407, 414 (D.C. Cir.

2008) (reducing costs and expenses by 25% because they were

"inadequately detailed."). That results in a deduction of $21,042.01

from pre-appeal costs and $2,918.72 from post-appeal costs.[27]

Thus, the Court awards $149,618.44 for pre-appeal "out-of-pocket"
expenses and $11,772.50 for post-appeal "out-of-pocket" expenses.

### 2.   Reporters' Transcripts

Plaintiffs originally sought $9,566.19 in taxable costs for

reporters' transcripts, but they withdrew that request because the

only taxable transcript costs are for transcripts "requested by the

Court or prepared pursuant to stipulation." Local Rule 54-4.5. In

the briefing on the taxable costs, the County objected to certain

entries and sought to deduct $2,983.07. The Court finds the following

deductions are warranted[28]: (1) $167.90 for transcripts from July 26

---

[27]The components of that deduction from the Hadsell & Stormer
firm's requested pre-appeal costs are $15,339.88 from photocopying,
document scanning and printing, and making video copies; $259.59 from
postage and delivery charges; $2,395.75 from facsimiles; $1,574.58
from messengers; and $1,472.21 from records fees and copying. The
components from the Hadsell & Stormer firm's requested post-appeal
costs are $2,399.43 from photocopying, document scanning and printing,
and making video copies; $225.36 from postage and delivery charges;
$205 from facsimiles; $223.25 from messengers; and $70.68 from records
fees and copying.

[28]Plaintiffs' withdrawal of these costs from their application to
tax costs resulted in Plaintiffs' failure to substantively respond to
the County's objections that some documentation for these costs was

1   and 28, 2004, because no proceedings were held on those dates; (2)

2   $300 for a transcript from June 3, 2004 because no invoice was

3   submitted; and (3) $100.43 for a transcript from December 10, 2004

4   because no invoice was submitted.  The Court will not deduct $2,308.50

5   for transcripts from February 9, 10, and 16, 2010 billed by court

6   reporter Lisa Gonzalez, which the County contends duplicated charges

7   included in the $3,565.35 billed by court reporter Katherine Stride

8   for those same dates.  If the County had conducted even a cursory

9   review of the minutes from the trial held on February 9, 10, and 16,

10  2010, it would have realized that Ms. Stride reported the morning

11  sessions and Ms. Gonzalez reported the afternoon sessions, so these

12  charges are not duplicative.  (Docket No. 697, 698, 699.)  The same is

13  true for allegedly duplicative $106.24 charges from John Turman and

14  Deborah Parker: the minutes from the trial on December 7, 2004 reflect

15  that both Mr. Turman and Ms. Parker reported the trial that day, so

16  this entry is not duplicative.  The Court therefore awards $8,997.86

17  for costs of reporter's transcripts.

18              3.   Expert Witness Fees

19       Plaintiffs are entitled to recover the fees for expert witnesses

20  pursuant to the ADA.  See Lovell v. Chandler, 3030 F.3d 1039, 1058

21  (9th Cir. 2002).  The County does not argue otherwise; instead, it

22  claims that Plaintiffs should recover no expenses for experts because

23  Plaintiffs failed to supply invoices to justify the full $77,470 in

24  expert witness fees sought.  But, as Plaintiffs point out, the

25  invoices attached as Exhibit E to the Keeny ADA Declaration contain

26  the invoices substantiating the nearly $100,000 in expert witness

27  _____

28  inadequate.

costs, $77,470 of which is properly attributable to Plaintiffs' ADA claims.[29]   Therefore, Plaintiffs are entitled to reimbursement of $77,470 in expert witness fees.

> ### 4.   Reduction of Pre-appeal Costs for Degree of Success

As with attorney's fees, the Court may also consider the degree of success in awarding litigation expenses under fee-shifting statutes.   See McCown v. City of Fontana, 565 F.3d 1097, 1103 n.2 (9th Cir. 2009) ("Although costs do not necessarily track fees . . . we note that the district court has discretion to reduce unreasonable costs."); Mendez v. County of San Bernardino, 540 F.3d 1109, 1129—30 (9th Cir. 2008) (reversing award of fees and costs and directing district court to recalculate both in light of degree of success). Consistent with the Court's 30% reduction of fees for Plaintiffs' degree of success on the constitutional claims, the Court will also impose a 30% reduction on one-half of Plaintiffs' pre-appeal "out-of-pocket" expenses and pre-appeal reporter's transcripts[30], which results in reductions of $22,442.77 and $268.50 respectively.[31]

---

   [29]Relying on its apportionment arguments for Plaintiffs' attorney's fees, the County also briefly argues that Plaintiffs should recover only 25%, rather than 50%, of the fees for the experts who related to both the ADA and constitutional claims.  For the same reasons already discussed, the Court finds Plaintiffs' apportionment appropriate.

   [30]This reduction does not apply to Plaintiffs' requested expert witness fees, which were sought only for expert fees related to ADA claims.

   [31]The compensable transcript fees of $1704.56 incurred by the Litt firm were incurred pre-appeal, so the Court has subtracted 30% from half that amount, or $255.68.  Only one compensable transcript cost of $85.49 was incurred by the Hadsell & Stormer firm pre-appeal, so the Court subtracts 30% of half that amount, or $12.82.

1          5.   <u>Total for Non-Taxable Litigation Expenses</u>

2      Plaintiffs are therefore entitled to non-taxable litigation

3  expenses in the amount of $225,147.53.

4      **B.   Taxable Costs**

5      Pursuant to the parties' stipulation, the Court must also address

6  the prevailing-party and degree of success issues raised in

7  Plaintiffs' application to recover taxable costs.  Under Rule

8  54(d)(1), the "prevailing party" is presumed to be entitled to an

9  award of costs.  <u>Ass'n of Mex.-Am. Educators v. California</u>, 231 F.3d

10 572, 591 (9th Cir. 2000) (en banc).  The "prevailing party" is simply

11 the party "in whose favor judgment is rendered," and it is not

12 "necessary for a party to prevail on all of its claims to be found the

13 prevailing party."  <u>San Diego Police Officers' Ass'n v. San Diego City</u>

14 <u>Employees' Retirement Sys.</u>, 568 F.3d 725, 741 (9th Cir. 2009).

15 However, if a judgment is mixed, "it is within the discretion of a

16 district court to require each party to bear its own costs," and the

17 Court may apportion costs on successful and unsuccessful claims.

18 <u>Amarel v. Connell</u>, 102 F.3d 1494, 1523 (9th Cir. 1996).  Moreover,

19 like non-taxable litigation expenses, the Court may reduce an award of

20 taxable costs to reflect only partial success.  <u>See</u> <u>Barber v. T.D.</u>

21 <u>Williamson, Inc.</u>, 254 F.3d 1223, 1234 (10th Cir. 2001).

22     Both the Ninth Circuit and this Court have already ruled that

23 Plaintiffs are the prevailing parties on both their constitutional

24 claims (<u>see</u> Keeny Const. Decl., Ex. H (Ninth Circuit Fee Order);

25 Docket No. 684 at 10—11) and their ADA claims (Docket No. 780 (Final

26 Judgment deeming Plaintiffs the prevailing parties)), so they are

27

28

unquestionably entitled to costs pursuant to Rule 54(d).[32]  However, consistent with the reductions for both attorney's fees and non-taxable litigation expenses related to Plaintiffs' constitutional claims, the Court finds that a 30% reduction of one-half of Plaintiffs' pre-appeal costs is necessary to reasonably approximate the degree of Plaintiffs' success on their constitutional claims.  The Court therefore refers the application back to the Court Clerk with directions to tax costs for Plaintiffs and, once the taxable costs are determined, divide the pre-appeal costs in half and deduct 30% from one-half of those costs.

**CONCLUSION**

The Court awards Plaintiffs the following:

- $508,179.85 in reasonable fees for work done on constitutional claims (see Attachment A hereto);

- $1,821,557.13 in reasonable fees for pre-appeal work done on ADA claims (see Attachment A hereto);

- $589,686.75 in reasonable fees for post-appeal work done on ADA claims (see Attachment B hereto);

- $70,346.15 in fees for bringing the fees motions; and

- $225,147.53 in litigation expenses.

The Court REFERS the pending application to tax costs to the Court Clerk to tax costs consistent with the directions in this Order.

---

[32]The County argues that costs should nevertheless be denied because this case was "close and complex."  See Mex.-Am. Educators, 231 F.3d at 593.  However, Mexican-American Educators dealt with whether a prevailing defendant in a publicly significant civil rights case should be awarded "extraordinarily high" costs to be paid by individuals and non-profit organizations with limited resources.  See id.  Moreover, there is a presumption in favor of costs to the prevailing party and the County has not demonstrated that complexity alone is sufficient to overcome that presumption in this case.

Plaintiffs are ORDERED to lodge a proposed Order consistent with the Court's award no later than 10 days from the date of this Order.

       IT IS SO ORDERED.

       DATED:      March 2, 2012            _____
                                                    AUDREY B. COLLINS
                                            UNITED STATES DISTRICT JUDGE

# ATTACHMENT A

| Name | Total Hours Originally Sought | Hours Initially Reduced by Plaintiffs (incl. hours spent only on ADA claims) | Hours Reduced by Plaintiffs in Reply and by Court | Total Hours | 50% for Const. Claims | Hourly Rate | Total Fees | 50% for ADA Claims | Hours Added for Only ADA Claims | Total Prepeal ADA Hours | Hourly Rate | Total Fees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Hadsell & Stormer** | 6167.85 | (642.15) | (739.11) | 4786.59 | 2393.30 | | $432,242.16 | 2393.30 | 159.00 | 2552.30 | | $963,680.38 |
| Aguayo, Ulysses | 102.95 | (0.50) | (65.45) | 37.00 | 18.50 | $175.00 | $3,237.50 | 18.50 | | 18.50 | $175.00 | $3,237.50 |
| Alamillo, Jimmy | 153.50 | | (125.75) | 27.75 | 13.88 | $175.00 | $2,428.13 | 13.88 | | 13.88 | $175.00 | $2,428.13 |
| Balhodano, Reinaldo | 661.70 | (165.80) | (148.30) | 347.61 | 173.80 | $187.50 | $32,587.97 | 173.80 | 6.90 | 180.70 | $450.00 | $81,316.13 |
| Coates, Donald | 293.75 | (28.00) | (30.50) | 235.25 | 117.63 | $175.00 | $20,584.38 | 117.63 | | 117.63 | $175.00 | $20,584.38 |
| Cu, Eric | 8.40 | (8.40) | | 0.00 | 0.00 | $0.00 | $0.00 | 0.00 | | 0.00 | $0.00 | $0.00 |
| Dai, Cornelia | 37.50 | | (0.90) | 36.60 | 18.30 | $187.50 | $3,431.25 | 18.30 | | 18.30 | $525.00 | $9,607.50 |
| Dunleavy, Patrick | 5.20 | | | 5.20 | 2.60 | $187.50 | $487.50 | 2.60 | | 2.60 | $625.00 | $1,625.00 |
| Fang, Peter | 261.75 | | (82.50) | 179.25 | 89.63 | $175.00 | $15,684.38 | 89.63 | | 89.63 | $175.00 | $15,684.38 |
| Galindo, Tami | 8.50 | | (1.30) | 7.20 | 3.60 | $175.00 | $630.00 | 3.60 | | 3.60 | $175.00 | $630.00 |
| Gartenberg, Judd | 22.05 | | | 22.05 | 11.03 | $175.00 | $1,929.38 | 11.03 | | 11.03 | $175.00 | $1,929.38 |
| Golden, Anne | 850.85 | | (86.75) | 764.11 | 382.05 | $175.00 | $66,859.19 | 382.05 | | 382.05 | $175.00 | $66,859.19 |
| Gravitt, Kaitlin | 2.00 | (2.00) | | 0.00 | 0.00 | $0.00 | $0.00 | 0.00 | | 0.00 | $0.00 | $0.00 |
| Guizar, Sonia | 13.60 | (0.20) | (10.50) | 2.90 | 1.45 | $175.00 | $253.75 | 1.45 | | 1.45 | $175.00 | $253.75 |
| Holder, Lisa | 344.80 | (30.60) | (29.53) | 284.68 | 142.34 | $187.50 | $26,688.28 | 142.34 | | 142.34 | $500.00 | $71,168.75 |
| Judar, Maryam | 148.50 | | | 148.50 | 74.25 | $187.50 | $12,993.75 | 74.25 | | 74.25 | $200.00 | $14,850.00 |
| Keeny, Virginia | 1312.10 | (239.40) | (26.88) | 1045.82 | 522.91 | $187.50 | $98,045.63 | 522.91 | 152.10 | 675.01 | $625.00 | $421,881.25 |
| Lah, Andrew | 7.70 | (7.70) | | 0.00 | 0.00 | $0.00 | $0.00 | 0.00 | | 0.00 | $0.00 | $0.00 |
| Leon, Anthony | 225.50 | (18.45) | (188.05) | 19.00 | 9.50 | $175.00 | $1,662.50 | 9.50 | | 9.50 | $175.00 | $1,662.50 |
| Lewis, Jim | 25.95 | (3.50) | | 22.45 | 11.23 | $175.00 | $2,104.69 | 11.23 | | 11.23 | $175.00 | $2,104.69 |
| Mayer, Guillermo | 44.00 | (21.40) | | 22.60 | 11.30 | $175.00 | $1,977.50 | 11.30 | | 11.30 | $200.00 | $2,260.00 |
| McFarlane, Katherine | 63.80 | (0.30) | | 63.50 | 31.75 | $175.00 | $5,556.25 | 31.75 | | 31.75 | $200.00 | $6,350.00 |
| Molina, Norma | 3.00 | (0.20) | (1.10) | 1.70 | 0.85 | $175.00 | $148.75 | 0.85 | | 0.85 | $175.00 | $148.75 |
| Mudalige, Samangi | 319.00 | (7.00) | (29.25) | 282.75 | 141.38 | $175.00 | $24,740.63 | 141.38 | | 141.38 | $175.00 | $24,740.63 |
| O'Rielly, Alex | 162.75 | | | 162.75 | 81.38 | $175.00 | $14,240.63 | 81.38 | | 81.38 | $175.00 | $14,240.63 |
| Peterson, Robert | 190.20 | | | 190.20 | 95.10 | $175.00 | $16,642.50 | 95.10 | | 95.10 | $200.00 | $19,020.00 |
| Richardson, Anne | 0.50 | | | 0.50 | 0.25 | $187.50 | $46.88 | 0.25 | | 0.25 | $0.00 | $0.00 |
| Sinnreich, Dunia | 7.50 | (0.90) | | 6.60 | 3.30 | $175.00 | $577.50 | 3.30 | | 3.30 | $175.00 | $577.50 |
| Stormer, Ben | 475.10 | (8.10) | | 467.00 | 233.50 | $175.00 | $40,862.50 | 233.50 | | 233.50 | $175.00 | $40,862.50 |
| Stormer, Dan | 226.70 | (7.00) | (11.47) | 208.24 | 104.12 | $187.50 | $19,522.03 | 104.12 | | 104.12 | $825.00 | $85,896.94 |
| Teukolsky, Lauren | 289.00 | (92.70) | (0.90) | 195.40 | 97.70 | $187.50 | $18,318.75 | 97.70 | | 97.70 | $500.00 | $48,850.00 |
| **Litt, Estuar** | 3298.40 | (535.20) | | 2763.20 | 1381.60 | $187.50 | $244,402.50 | 1381.60 | 135.90 | 1517.50 | | $710,089.25 |
| Barlow, Ian | 122.10 | (67.90) | | 55.20 | 27.60 | $187.50 | $5,175.00 | 27.60 | 12.20 | 39.80 | $225.00 | $8,955.00 |
| Estuar, Paul | 34.50 | (2.20) | | 32.30 | 16.15 | $187.50 | $3,028.13 | 16.15 | | 16.15 | $625.00 | $10,093.75 |
| Harrison, G. | 20.50 | | | 20.50 | 10.25 | $187.50 | $1,921.88 | 10.25 | | 10.25 | $625.00 | $6,406.25 |
| Ibarra, Delsa | 303.40 | (11.60) | | 291.80 | 145.90 | $150.00 | $21,885.00 | 145.90 | 0.40 | 146.30 | $475.00 | $69,492.50 |
| Kao, Mayling | 988.20 | (187.00) | (126.60) | 781.20 | 390.60 | $150.00 | $58,590.00 | 390.60 | 45.20 | 435.80 | $160.00 | $69,728.00 |
| Kitson, Robert | 54.40 | (1.20) | | 53.20 | 26.60 | $187.50 | $4,987.50 | 26.60 | | 26.60 | $625.00 | $16,625.00 |
| Litt, Barrett | 38.50 | (1.90) | (0.20) | 36.60 | 18.30 | $187.50 | $3,431.25 | 18.30 | 0.40 | 18.70 | $850.00 | $15,895.00 |
| Miller, Bryan | 1744.90 | (263.40) | (35.80) | 1481.50 | 740.75 | $187.50 | $138,890.63 | 740.75 | 77.70 | 818.45 | $625.00 | $511,531.25 |
| White, Julia | 10.90 | | | 10.90 | 5.45 | $187.50 | $1,021.88 | 5.45 | | 5.45 | $250.00 | $1,362.50 |
| **Other** | | | | | | | | | | | | |
| Herman, Richard | 716.15 | (190.00) | (23.34) | 526.15 | 263.08 | $187.50 | $49,326.56 | 263.08 | 32.50 | 295.58 | $500.00 | $147,787.50 |

Lodestar for Const. Claims hours expended x PLRA hourly rates) $725,971.22

Lodestar for Const. Claims hours expended - 30% for degree of success) $508,179.85

Lodestar for ADA Claims (hours expended x reasonable hourly rates) $1,821,557.13

# ATTACHMENT B

| Name | Total Hours Originally Sought | Hours Reduced by Plaintiffs in Reply and by Court | Total Hours | Hourly Rate | Total Fees | Lodestar (hours expended x reasonable hourly rates) |
|---|---|---|---|---|---|---|
| Hadsell & Stormer | 1397.48 | (25.15) | 1372.33 | | $589,686.75 | $589,686.75 |
| Anaya, Yuritzy | 11.10 | (5.90) | 5.20 | $175.00 | $910.00 | |
| Cervantez, Mary | 0.50 | | 0.50 | $175.00 | $87.50 | |
| | | | | | | |
| Chau, Amy | 1.20 | | 1.20 | $200.00 | $240.00 | |
| Dai, Cornelia | 1.80 | | 1.80 | $525.00 | $945.00 | |
| Ellis, Lincoln | 3.00 | | 3.00 | $200.00 | $600.00 | |
| Farina, Nina | 57.80 | | 57.80 | $200.00 | $11,560.00 | |
| Ferreira, Mara | 4.50 | | 4.50 | $175.00 | $787.50 | |
| Galindo, Tami | 6.90 | (4.80) | 2.10 | $175.00 | $367.50 | |
| Gaytan, Fernando | 0.30 | | 0.30 | $450.00 | $135.00 | |
| Hadsell, Barbara | 0.67 | | 0.67 | $775.00 | $519.25 | |
| Harrap, Booker | 8.00 | | 8.00 | $175.00 | $1,400.00 | |
| Ibrahim, Nagwa | 82.30 | | 82.30 | $325.00 | $26,747.50 | |
| Keeny, Virginia | 545.91 | | 545.91 | $625.00 | $341,193.75 | |
| Molina, Hector | 3.10 | (3.10) | 0.00 | $175.00 | $0.00 | |
| Molina, Norma | 10.40 | (5.60) | 4.80 | $175.00 | $840.00 | |
| Paar, Lydia | 1.25 | | 1.25 | $175.00 | $218.75 | |
| Petti, Vanessa | 7.10 | (5.30) | 1.80 | $175.00 | $315.00 | |
| Ramirez, Bianca | 3.45 | (0.45) | 3.00 | $175.00 | $525.00 | |
| Riley, Laura | 9.50 | | 9.50 | $200.00 | $1,900.00 | |
| Sainath, Radhika | 328.80 | | 328.80 | $300.00 | $98,640.00 | |
| Sawat, Sireen | 8.00 | | 8.00 | $200.00 | $1,600.00 | |
| Scott, Josh Piovia | 17.20 | | 17.20 | $450.00 | $7,740.00 | |
| Sevilla, Jenny | 5.00 | | 5.00 | $175.00 | $875.00 | |
| Stormer, Ben | 204.70 | | 204.70 | $225.00 | $46,057.50 | |
| Stormer, Dan | 45.30 | | 45.30 | $825.00 | $37,372.50 | |
| Wakefield, Georgina | 8.00 | | 8.00 | $200.00 | $1,600.00 | |
| Yuzna, Zoe | 21.70 | | 21.70 | $300.00 | $6,510.00 | |